UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN HARRISON, | : | |
| | : | Civil Action No. |
| Plaintiff | : | 3:03 CV 0873 (RNC) |
| v. | : | |
| | : | |
| VERIZON WIRELESS SERVICES, LLC, | : | |
| | : | |
| Defendant. | : | JULY 27, 2004 |

### VERIZON WIRELESS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER COMPELLING DISCOVERY

Pursuant to *Fed. R. Civ. P.* 37(a) and *D. Conn. L. Civ. R.* 37(a)(3), defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"), through its undersigned counsel, hereby submits this memorandum of law in support of *Verizon Wireless' Motion for Order Compelling Discovery and for Expenses and Sanctions* dated July 27, 2004 ("*Motion to Compel*"), wherein Verizon Wireless has requested an order compelling the plaintiff, John Harrison ("Harrison" or "Plaintiff"), to produce certain settlement-related documents in response to Requests for Production 1 and 2 ("Request 1" and "Request 2," respectively) of *Defendant Verizon Wireless' Second Set of Requests for Production Propounded to Plaintiff, John Harrison* dated November 17, 2003 ("*Verizon Wireless' Second RFP*"). As required by *D. Conn. L. Civ. R.* 37(a)(2), Verizon Wireless submits the *Affidavit of William E. Murray in Support of Verizon Wireless' Motion to Compel* of even date herewith ("*Murray Aff.*") (attached hereto as **Exhibit A**), which establishes that Verizon Wireless' counsel has conferred with counsel for Harrison in a good faith effort to resolve by agreement the issues presented herein without the intervention of the Court, but has been unable to reach such a resolution.

**ORAL ARGUMENT REQUESTED**

I.  **STATEMENT OF FACTS.**

   A.  **This Action.**

Harrison filed this action on May 16, 2003, originally naming Verizon Wireless, LLC as defendant.  Thereafter, on consent, Harrison sought to amend his complaint and substitute Cellco Partnership d/b/a Verizon Wireless as the defendant in lieu of Verizon Wireless, LLC. Harrison's motion to substitute was granted on August 27, 2003, and the Court ordered that the proposed amended complaint, dated August 4, 2003 (the "*Amended Complaint*"), be the operative complaint in this matter.

Harrison claims to have been the victim of identity theft and claims damages as a result of various credit and other accounts the impostor created in his name.  In the *Amended Complaint*, Harrison asserts claims against Verizon Wireless for violation of the *Fair Credit Reporting Act* (the "*FCRA*"), 15 *U.S.C.* § 1861 *et seq.* (First Cause of Action), defamation (Second Cause of Action), intentional infliction of emotional distress (Third Cause of Action) and violation of the *Connecticut Unfair Trade Practices Act*, ("*CUTPA*"), *Conn. Gen. Stat.* § 42-110a *et seq.* (Fourth Cause of Action).  All Harrison's claims against Verizon Wireless are based upon allegations that (1) Verizon Wireless failed to employ reasonable procedures to prevent the impostor from obtaining cellular telephone accounts using Harrison's name and personal identifiers (*see Amended Complaint*, ¶13); Verizon Wireless, thereafter, failed to perform a reasonable investigation of Harrison's dispute regarding the accounts purportedly obtained by the impostor (*see id.*, ¶¶ 40-43); and (3) Verizon Wireless willfully and maliciously provided inaccurate information to various credit reporting agencies and falsely represented the status of Harrison's debt (*see id.*, ¶¶ 46-50, 52-55 & 59).

As a result of Verizon Wireless' purportedly wrongful conduct, Harrison claims his allegedly "flawless" credit history (*see id.*, ¶ 2) was damaged and that, as a result, (1) Bank One, USAA Federal Savings Bank and First USA denied him credit (*see id.,* ¶¶ 33-34, 49 & 63); (2) First USA, MBNA and Citibank reduced his existing credit lines (*see id.*, ¶¶ 35, 37, 49 & 63); (3) checks he had written against his existing but reduced credit lines bounced (*see id.*, ¶ 35); and (4) Citibank closed one of Harrison's existing credit accounts (*see id.*, ¶ 36). Harrison further claims that Verizon Wireless' conduct caused him "emotional distress, embarrassment, shame, stress, worry, humiliation, and anxiety," and, ultimately, caused him to lose his job. *See id.*, ¶¶ 53-54.

### B. The Equifax Action.

Just three days after he filed this action, Harrison filed a lawsuit in this court against credit reporting agency, Equifax Credit Information Services, Inc. (hereinafter, "Equifax"), which action was captioned *Harrison v. Equifax Credit Information Services, Inc.*, Civil Action No. 3:03cv872 (AWT) (hereinafter, the "Equifax Action"). As can be seen from the *Complaint* in the Equifax Action (hereinafter referred to as the *"Equifax Complaint"* and attached hereto as **Exhibit B**), as in this present action, Harrison sought recovery against Equifax for violation of the *FCRA* (First Cause of Action), defamation (Second Cause of Action), intentional infliction of emotional distress (Third Cause of Action) and violation of *CUTPA* (Fourth Cause of Action).

In the Equifax Action, Harrison claimed his purportedly "flawless" credit history was ruined by the acts and/or omissions of Equifax – a position that is inconsistent with his claim in this action, i.e. that his credit history was damaged by Verizon Wireless. *Compare Equifax*

*Complaint*, ¶ 2 *with Amended Complaint*, ¶ 2.[1]  Indeed, contrary to his allegations in this action, in the Equifax Action, Harrison claimed that it was the acts and/or omissions of <u>Equifax</u> that caused (1) USAA Federal Savings Bank, Citibank and MBNA to deny him credit (*see Equifax Complaint*, ¶¶ 47 & 48); (2) MBNA to reduce the credit limit on his existing credit card account (*see id.*, ¶ 36); and (3) Citibank to close his existing credit card account (*see id.*, ¶ 34).  In the Equifax Action, Harrison also claims that it was <u>Equifax's</u> conduct – and not that of Verizon Wireless that caused him "emotional distress, embarrassment, shame, stress, worry, humiliation, and anxiety," and, ultimately, the loss of his job. *See id.*, ¶¶ 52-53.[2]

### C. The JBC Action.

On or about August 2003, Harrison filed an action in this court against JBC & Associates, P.C. ("JBC"), a law firm and collection agency, which action was captioned *Harrison v. JBC & Associates, P.C.*, Civil Action No. 3:03cv1385(JBA) (hereinafter, the "JBC Action").  In the complaint in the JBC Action (the "*JBC Complaint*"), Harrison claimed, *inter alia*, that JBC's attempts to collect debts incurred by the imposter in Harrison's name caused Harrison "to suffer emotional distress, stress, embarrassment and humiliation."  *See JBC Complaint*, ¶ 13.

### D. The Settlement of the Equifax Action and Verizon Wireless' Requests for Production.

As is clearly reflected in the *Agreed Motion to Dismiss* dated December 9, 2004 filed in the Equifax Action (attached hereto as **Exhibit C**), Harrison and Equifax entered into a

---

[1] With the exception of the names of the defendants, the language of paragraph 2 of the *Equifax Complaint* and paragraph 2 of the *Amended Complaint* are virtually identical.

[2] Except for the names of defendants, the allegations of paragraphs 52 and 53 of the *Equifax Complaint* are almost identical to the allegations of paragraphs 53 and 54 of the *Amended Complaint*.

settlement of the claims asserted by Harrison in the Equifax Action on or about December 9, 2003. Upon information and belief, Harrison also settled the claims he asserted in the JBC Action on or about March 15, 2004. *See JBC Action Notice of Dismissal*, Feb. 25, 2004 (attached hereto as **Exhibit D**); *see also Objections to Defendant's Second Set of Requests for Production*, Dec. 4, 2003, Ans. to Req. 2 (the "*Objection*") (attached hereto as **Exhibit E**).

Since the damages sought by Harrison in the Equifax Action are virtually identical to those he claims were attributable to Verizon Wireless in this action, Verizon Wireless sought the production of the settlement agreement between Harrison and Equifax by propounding the following request for production:

> 1. Copies of any and all documents concerning any agreements, contracts and/or releases by or between you and Equifax Credit Information Services, Inc., including but not limited to any settlement agreements and/or contracts entered into or executed in connection with the action captioned *John Harrison v. Equifax Credit Information Services, Inc.*, Civil Action No. 3:03-cv-00872-CFD, which action is or was pending in the United States District Court for the District of Connecticut.

*Verizon Wireless' Second RFP*, Request 1 (attached hereto as **Exhibit F**). In addition, in order to ensure that it obtained copies of any other settlement agreements Harrison may have entered into with other parties he claimed caused damages to his purportedly "flawless" credit history or caused him emotional distress – including any settlement agreement reached in the JBC Action – Verizon also propounded the following request for production:

> 2. Copies of any and all documents concerning any agreements, contracts and/or releases by or between you and any other person in connection with any litigation to which you have been a party at any time during the last five years or in connection with any claim you have asserted against another person at any time during the last five years.

*Id.*, Req. 2.[3]

Harrison did not produce one single document in response to the aforementioned requests for production. Instead, he asserted the following objection to request for production 1:

> Objection. Plaintiff objects to this request as the information requested is protected by a confidentiality clause in the settlement agreement between Equifax Credit Information Services, Inc. and Plaintiff. Plaintiff further objects as this request is not likely to lead to the discovery of admissible evidence. To the extent that Defendant wishes to learn to what extent Plaintiff's injuries were caused by multiple tort feasors [sic], the jury can apportion the percentage responsibility of the various defendants and apply to Verizon its percentage of responsiblity for Plaintiff's harm. The amount received in settlement from third parties is irrelevant to that equation.

*Objection*, Ans. to Req. 1. Likewise, in response to request for production 2, Harrison asserted the following objection:

> Objection. Plaintiff objects to this request as the information requested is protected by a confidentiality clause in the settlement agreement in Plaintiff's cases between Equifax Credit Information Services, Inc. and JBC Associates, P.C. Plaintiff further objects as this request is not likely to lead to the discovery of admissible evidence. To the extent that Defendant wishes to learn to what extent Plaintiff's injuries were caused by multiple tort feasors [sic], the jury can apportion the percentage responsibility of the various defendants and apply to Verizon its percentage of responsiblity for Plaintiff's harm. The amount received in settlement from third parties is irrelevant to that equation. Plaintiff also objects to this request as overbroad in that the events that gave rise to this and related suits did not occur until 2001.[4]

*Objection*, Ans. to Req. 2.

---

[3] Indeed, as this Court is undoubtedly aware, Harrison instituted at least two other actions in this court making similar claims as this action and seeking the same damages. Both of these cases have now been consolidated with this action. While Verizon Wireless is not aware of any other actions filed in this district, there may be other actions Harrison instituted in foreign jurisdictions or claims that were settled prior to filing suit for which Harrison made similar claims and sought the same damages he is seeking herein.

[4] Verizon Wireless is willing to tailor this request to seek the documents requested only for the period of time from January 1, 2001 to the present in order to vitiate Harrison's overbreadth objection.

### E. Good Faith Efforts to Resolve Discovery Dispute.

By letter dated January 23, 2004, counsel for Verizon Wireless communicated its position that the documents sought in its *Second Set of RFP* were relevant and required to be produced. *See Murray Aff.*, ¶ 7; *Letter from W. Murray to S. Poriss*, Jan. 23, 2004 (**Exhibit 1** to *Murray Aff.*). On February 10, 2004, counsel for Verizon Wireless had a telephone conference with counsel for Harrison in an attempt to try to reach an agreement with respect to Harrison's objections to the aforementioned requests for production. During that conversation, counsel for Harrison indicated that Harrison would not willingly produce the requested documents and that counsel for Verizon Wireless would have to move the Court for an order compelling their production. *See Murray Aff.*, ¶ 8.

As is set forth below, the documents requested in *Verizon Wireless' Second RFP* are clearly relevant to the issues of causation and damages and may contain other information that is both material and relevant to the issues that will be litigated in this case. Accordingly Harrison should be compelled to respond to *Verizon Wireless' Second RFP*.

### II. ARGUMENT.

*Fed. R. Civ. P.* 26(b) permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ." *Fed. R. Civ. P.* 26(B)(1). Relevance is broadly defined in the context of discovery to include all materials that "appear[] reasonably calculated to lead to the discovery of admissible evidence." *Id*; *see also Bank Brussels Lambert v. Chase Manhattan Bank*, No. 93 Civ. 5298 (LMM) (RLE), 1996 U.S. Dist. LEXIS 1790, *6 (S.D.N.Y. Feb. 20, 1996) (citing *Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (attached hereto as **Exhibit G**). Generally, "[s]ettlement agreements are discoverable; no

heightened showing of relevance need be made in order to justify the discovery of a settlement agreement." *Collister Alley Music, Inc. v. Warner Bros. Records, Inc.*, No. 96 Civ. 1762 (LMM) (HBP), 1997 U. S. Dist. LEXIS 5346, *3 (S.D.N.Y. Apr. 22, 1997) (attached hereto as **Exhibit H**); *see also Kissner v. Inter-Continental Hotels Corp.*, No. 97 Civ. 8400, *2 (SWK KNF), 1999 WL 92607 (S.D.N.Y. Feb. 22, 1999) ("Settlement-related information, including settlement agreements, are governed by the same rule [*Fed. R. Civ. P.* 26] and are discoverable without a heightened showing of relevance." (quoting *Griffin v. Mashariki*, 1997 WL 756914, *1 (S.D.N.Y. Dec. 8, 1997) (internal quotation marks omitted)) (attached hereto as **Exhibit I**).

In fact, in circumstances similar to those present in this case, a number of courts in this circuit and other circuits have considered the discoverability of settlement agreements and information relating thereto, have found them relevant and have ordered their production. *See, e.g., Bank Brussels Lambert*, 1996 U.S. Dist. LEXIS 1790; *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003) (holding relevancy of settlement agreement between plaintiff and insurer "self-evident" where plaintiff sought recovery from defendant of losses sought from insurer and where settlement "concern[ed] the very facts underlying the parties' dispute; noting that, the "settlement agreement . . . goes to the heart of [the] action" and, by the very nature of its claim, plaintiff "effectively concede[d] the relevancy of the settlement agreement to the instant matte."); *Channelmark Corp. v. Destination Prod. Int'l*, No. 99 C 214, 2000 WL 968818 (N.D. Ill. 2000) (information regarding defendant's settlement agreement with third party relevant where facts underlying settlement similar to facts underlying plaintiff's claims) attached hereto as **Exhibit J**); *Bank Brussels Lambert*, 1996 U.S. Dist. LEXIS 1790 (after considering the language of *Fed. R. Civ. P.* 26 and *Fed. R. Evid.* 408, ordering production

of copies of settlement and joint prosecution agreements in which plaintiffs settled claims amongst themselves and agreed to pursue litigation against other parties).

Indeed, in *Simmons Foods, Inc. v. Willis*, No. 97-4192-RDR, 2000 WL 204270, *7 (D. Kan. Feb. 8, 2000) (attached hereto as **Exhibit K**), the court found a settlement agreement between the plaintiff and a third party relevant and ordered the third party to answer discovery regarding the settlement agreement and its terms. There – as in the present case – the plaintiff entered into a settlement agreement with a third party it claimed was responsible for the same damages it was seeking from the defendant. Relying upon the liberal standard of *Fed. R. Civ. P. 26* and the fact that information regarding the settlement agreement was relevant to the bias of the third party, the court ordered the third party to provide information regarding the settlement agreement. *See id.* at * 7; *see also Western Resources, Inc. v. Union Pacific R.R. Co.*, No. 00-2043-CM, 2001 WL 1718368 (D. Kan. Dec. 5, 2001) (holding settlement agreements, draft settlement agreements and other documents representing settlement negotiations between plaintiff and third party relevant because of "similarities between the damages" sought by plaintiff from defendant and third party) (attached hereto as **Exhibit L**).

As is set forth above, the nature of the claims asserted and damages sought by Harrison in the Equifax Action and the JBC Action are similar, if not virtually identical, to those at issue in the instant litigation. The claims asserted by Harrison in the Equifax Action and the JBC Action allege that some party other than Verizon Wireless caused Harrison's damages. Therefore, the terms of the settlement agreement are directly material and relevant to both the issue of causation and the issue of the extent of Harrison's damages. Therefore, as is set forth in the authorities

cited above, the documents sought in *Verizon Wireless' Second RFP* are relevant and must be produced pursuant to *Fed. R. Civ. P.* 26.

To the extent any of the documents requested are considered confidential, Harrison and Verizon Wireless have already executed a stipulated protective order and confidentiality agreement that would ensure the protection of any settlement documents produced by Harrison and are more than sufficient to ensure the continued confidentiality of any settlement related documents produced. *See Simmons Foods,* 2000 WL204270, *7 (D. Kan. Feb. 8, 2000) (ordering disclosure of information regarding confidential settlement agreement subject to Rule 26(c) protective order limiting access to the testimony regarding the settlement agreement and imposing non-disclosure obligations); *Channelmark Corp.*, 2000 WL 968818, *5 (ordering disclosure of information relating to defendant's confidential settlement with third party based, in part, on existence of protective order).

### III.   CONCLUSION.

In light of the above authorities, Verizon Wireless respectfully requests that the Court grant its *Motion to Compel* and order Harrison to produce the documents sought in Request 1 and Request 2 of *Verizon Wireless' Second Set of RFP*. Moreover, as set forth in the authorities above, since Harrison's objection and his refusal to comply with the aforementioned discovery was without merit and was not, therefore, substantially justified, Verizon Wireless moves the Court to order Harrison to pay Verizon Wireless' reasonable expenses in making this motion, including its attorney's fees.

**DEFENDANT  
CELLCO PARTNERSHIP d/b/a  
VERIZON WIRELESS**

By_____
      Donald E. Frechette  
      Federal Bar No. ct08930  
      William E. Murray  
      Federal Bar No. ct19717  
      EDWARDS & ANGELL, LLP  
      90 State House Square  
      Hartford, Connecticut 06103  
      (860) 525-5065  
      Telecopy (860) 527-4198  
      wmurray@edwardsangell.com

## CERTIFICATION

This is to certify that on this 27th day of July, 2004, a copy of the foregoing was mailed, first class, postage prepaid, to:

Daniel S. Blinn, Esq.
Matthew T. Theriault, Esq.
Sarah Poriss, Esq.
Consumer Law Group, LLC
2138 Silas Deane Highway P.O. Box 1039
Rocky Hill, CT 06067-9997

Christopher E. Kittell, Esq.
Twiford Webster & Gresham
144 Sunflower Avenue
P. O. Drawer 760
Clarksdale, MS 38614

David Bizar, Esq.
Mark M. Porto, Esq.
Day Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499

Robert W. Allen, Esq.
Matthew A. Sokol, Esq.
Tyler, Cooper & Alcorn
205 Church Street, P. O. Box 1936
New Haven, CT 06509-1910

                                                          _____
                                                             William E. Murray