Please see the documents produced herewith.

18. Please produce all documents concerning the use by any person other than you, including but not limited to the "imposter," of your identity, personal information, or identifiers without your consent.

**RESPONSE:**

Please see the documents produced herewith which are bates numbered Harrison 000003 - 000004, 000006 - 000024, 000026 - 000043, 000045 - 000127, 000129 - 000266, 000269 - 000285, 000287 - 000295, 000297 - 000403, 000405 - 000482, 000484 - 000582, 000584, 000586 - 000595, 000597 - 000690, 000692 - 000767, 000789 - 000907, 000909 - 000911, 000913 - 000924, 000926, 000928 - 000940, 000942 - 001258, 001260 - 001269, 001271 - 001278, 001280 - 001282, 001284 - 001292, 001294 - 001301, 001303 - 001309, 001311 - 001325, 001327 - 001338, 001343 - 001393, 001438 - 001800, and 001932 - 002079. These documents are produced herewith on computer CD in ".max" format. A ".max" viewer computer program is included on the CD to allow viewing and printing of the documents.

19. Please produce all medical, clinical, psychological, and psychiatric records concerning you from August 1999 forward.

**RESPONSE:**

Please see the documents produced herewith.

20. Please produce all medical, clinical, psychological and psychiatric records concerning your alleged emotional distress, embarrassment, shame, worry, humiliation, anxiety, or stress, from August 1999 forward.

**RESPONSE:**

Please see the documents produced herewith.

21. Please produce copies of all prescriptions for medicines which you have taken or been prescribed from August 1999 forward.

    **RESPONSE:**

    The Plaintiff is in the process of determining whether he possesses any copies of the prescriptions for the medicine which FMCC's actions required the Plaintiff to take. The Plaintiff will produce any documents responsive to this Request in his possession.

22. Please produce all documents which concern or support your alleged damages.

    **RESPONSE:**

    Please see the documents produced herewith.

23. Please produce all documents concerning your credit reports or histories, including but not limited to copies of any credit reports or histories in your possession or subject to your control.

    **RESPONSE:**

    Please see the documents produced herewith.

24. Please produce all documents or financial records concerning any income, including unemployment compensation benefits and income records from employment or self employment from 1999 to the present, including, but not limited to, all income tax returns, W-2 forms, 1099 forms and all state and federal income tax returns including other documents enclosed therewith, that you have filed with the Internal Revenue Service, whether individual or joint returns.

    **RESPONSE:**

    Objection. This Request is over broad and seeks documents which contain private financial information which is neither relevant nor reasonably calculated to lead to the discovery of admissible

evidence. Without waiving these objections, the Plaintiff is willing to produce copies of his tax returns redacted to show only the Plaintiff's Adjusted Gross Income.

25. Please produce all documents concerning Bank One, USAA Federal Savings Bank, Chase Manhattan Bank, or any other financial institution or lender's decisions to extend or to deny credit to you since 1999.

**RESPONSE:**

Please see the documents produced herewith.

26. Please produce all documents concerning your efforts to find employment after your alleged termination including, but not limited to, any resumes that you prepared or that were prepared on your behalf by someone else, any letters that you sent or received concerning employment or potential employment, any offers of employment that you received, any employment that you accepted, and any self-employment that you engaged in.

**RESPONSE:**

The Plaintiff will supplement this Response after the Plaintiff is able to assemble the requested documents.

27. Please produce all documents, including, but not limited to, notes, diaries, journals, calendars, e-mails and correspondence concerning or referring to the theft of your identity.

**RESPONSE:**

Objection. This Request seeks documents which are protected by the attorney client privilege. Without waiving this objection and only producing non-objectionable documents, please see the documents produced herewith.

28. Please produce an authorization to Day, Berry & Howard, or its representative, executed by you in a form acceptable to the custodian, permitting the opportunity to inspect and copy

your employment records from 1999 to the present.

**RESPONSE:**

The Plaintiff will execute the requested authorization when an acceptable authorization is provided to Plaintiff's counsel.

29. Please produce an authorization to Day, Berry & Howard, or its representative, executed by you in a form acceptable to the custodian, permitting the opportunity to inspect and copy your medical, clinical, psychiatric, and psychological records from 1999 to the present.

**RESPONSE:**

The Plaintiff will execute the requested authorization when an acceptable authorization is provided to Plaintiff's counsel.

30. Please produce an authorization to Day, Berry & Howard, or its representative, executed by you in a form acceptable to the custodian, permitting the opportunity to inspect and copy your credit histories with Experian, Trans Union and Equifax.

**RESPONSE:**

Objection. This Request is over broad and unduly burdensome. The Plaintiff has produced herewith multiple copies of his credit histories with each of the credit bureaus identified. Therefore, the requested authorization is unduly burdensome on the Plaintiff and is not needed by FMCC.

31. Please produce all documents concerning any lawsuit that you have commenced against any other parties, including, but not limited to, all documents which you send and receive in discovery in such cases.

**RESPONSE:**

Objection. This Request seeks information which is part of the public record and can be obtained by FMCC through other means. Further, this Request seeks documents which are protected

by the attorney client privilege and/or are attorney work product.

By: _/s/ Chris Kittell_
CHRISTOPHER E. KITTELL  ct25069
Webster Gresham & Kittell
144 Sunflower Avenue
P. O. Drawer 760
Clarksdale, MS 38614
Phone: 662-624-5408
Fax: 662-627-5530
E-mail: cekittell@twglaw.com

## CERTIFICATE OF SERVICE

I, Christopher E. Kittell, do hereby certify that I have this day mailed, by United States mail, postage prepaid, a true and correct copy of the above and foregoing document to the following:

>David M. Bizar, Esquire
>Mark M. Porto, Esquire
>Day Berry & Howard, LLP
>City Place I
>Hartford, CT 06103-3499

THIS, the 12th day of November, 2003.

_____
CHRISTOPHER E. KITTELL

CEK/Harrison/Ford Motor Credit/pleadings/Response 1st Request for Production
22145.002

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN HARRISON,<br>　　Plaintiff<br>v.<br><br>EQUIFAX CREDIT INFORMATION<br>SERVICES, INC.,<br>　　Defendant | CASE NUMBER: 3:03CV872AWT<br><br>COMPLAINT – JURY<br>TRIAL DEMANDED<br><br>May 14, 2003 |

## I. INTRODUCTION

1. This is a suit brought by a consumer, John Harrison ("Harrison"), who has been victimized by Defendant, Equifax Credit Information Services, Inc. ("Equifax"), a consumer reporting agency. This action is for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a *et seq.*, and also includes pendant state law claims for defamation and intentional infliction of emotional distress.

2. This case is about John Harrison's good name and excellent credit reputation, which were ruined by Equifax's egregious actions. When reported accurately, Harrison's credit history is flawless. Harrison has always paid his bills on time and in full. However, Harrison's credit history and reputation are ruined due to the Defendant's willful and negligent violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, and malicious defamatory acts.

## II. PARTIES

3. Plaintiff, John Harrison, is a natural person residing in Rocky Hill, Connecticut. Plaintiff is a consumer as defined by the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681a(c).

4. Defendant, Equifax Credit Information Services, Inc., is a foreign corporation registered to do business in the State of Connecticut and is a consumer reporting agency as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f).

### III. JURISDICTION

5. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331 and 1337, and Fed. R. Civ. P. 18(a).

6. This court has jurisdiction over the defendant because it regularly conducts business in this state.

7. Venue in this Court is proper, as the Plaintiff is a resident of Connecticut and the violations that are the subject of this litigation occurred within this State.

### IV. FACTUAL ALLEGATIONS

8. Beginning in July, 2001, without Harrison's knowledge or authority, an impostor submitted multiple applications for credit to various credit grantors using Harrison's identity, including his Social Security number and other personal identifiers.

9. The impostor's actions resulted in the opening of the following fraud accounts (hereafter "the fraud accounts"), among others:

    a. American General Finance account number 8010607008966...;
    b. Dillards Department Store account number 7575000836700311...;
    c. Ford Motor Credit account number WCA236P...;
    d. GNB/Stage account number 702782...;
    e. Home Depot account number CG7F91751040...;
    f. Household Retail Services - Kawasaki account number 800601100464...;
    g. Lowes account number C81923340553...;
    h. Monogram Bank of Georgia - J.C. Penney account number 3240579...;
    i. Target/Dayton Hudson account number 924253825...;
    j. Monogram Bank of Georgia – Sam's Club account number CG9A12084662...;
    k. Sears account number 1150107363...;
    l. Wal-Mart account number 603220318424...;
    m. Household Retail Services - Costco account number 24601-439465...;
    n. Kohls Department Store account number 3247891...;
    o. Hampton Roads account number 14...;
    p. Patient First account number R800PAT001281...;
    q. Army Air Force Exchange account number 601944000541...;
    r. Bank of America account number 759152...;
    s. Conseco Finance Corporation account number 601250360243...;
    t. Dent-A-Med account number 201...;
    u. Emerge/PVN account number 51819000762...;
    v. First North American Bank account number 152300347383...;
    w. Navy FCU account number 4300004416...;
    x. Freestyle account number 1100013...; and
    y. Verizon Wireless account number 909160271510...

2

  z. Verizon Wireless account number 902160270560...
 aa. Blockbuster Video account 620...
 bb. Home Federal Bank account number 1020590172
 cc. American Express account number 04581904401937...
 dd. Cox Communications account number 202044...
 ee. Domino 2852 account number 205...
 ff. Sprint Long Distance account number 92298...
 gg. Dr. J.D. Mosher, account number 6...

10. The impostor's actions also resulted in a judgment being entered against Harrison in favor of Sandbridge Realty in the Virginia Beach, Virginia Civil Court. Harrison has never entered into any agreement with, nor had any knowledge regarding, Sandbridge Realty before the judgment first appeared on Harrison's credit reports.

11. Upon information and belief, the impostor filled out standard applications with the entities identified in Paragraph 9 using Harrison's Social Security number and other credit and personal identifiers.

12. Based upon the fraudulent applications, the companies identified in Paragraph 9 created the fraud accounts. Thereafter the impostor used and sustained charges on the fraud accounts.

13. Harrison never applied for any of the fraud accounts listed in Paragraph 9. Harrison has never consented to any person making applications for credit with any of the entities listed in Paragraph 9 in his name and/or his identity and/or using his Social Security number or other personal identifiers.

14. Defendant Equifax is one of three national credit bureaus that report credit and other information regarding consumers to potential lenders.

15. In or after July, 2001, the entities identified in Paragraph 9 began reporting the fraud accounts to Defendant Equifax as being accounts opened by Harrison.

16. Some but not all of the fraud accounts were reported to Equifax with a delinquent status, which caused adverse and derogatory information to be included in Harrison's Equifax credit file. Equifax then disseminated the erroneous information to third parties who requested Harrison's credit report.

3

17. The reporting of the fraudulent accounts to Equifax attributed the fraud accounts to Harrison and attached the fraud accounts to his unique credit identifiers in the Equifax computer database.

18. On November 5, 2001, Equifax provided Harrison with a copy of his Equifax credit report. The November 5, 2001 Equifax credit report contained several of the fraud accounts listed above.

19. On March 9, 2002, Harrison sent a letter to Equifax, disputing, among others, the fraud accounts that appeared on his November 5, 2001 Equifax credit report. Harrison also included in his correspondence with Equifax a list of fraud accounts that had appeared or were appearing on his credit reports from Experian and Trans Union, the two other national credit bureaus.

20. Despite Equifax's duties under the Fair Credit Reporting Act to investigate information when notified by a consumer, Equifax did not in any way respond to Harrison's dispute letter, nor did Equifax provide an updated credit report to Harrison or, upon information and belief, investigate in any way the inaccurate information appearing on Harrison's November 5, 2001 credit report as requested by Harrison in his March 9, 2002 dispute letter.

21. On or about May 28, 2002, Harrison was denied a home equity loan by USAA Federal Savings Bank as a result of the disputed fraud accounts appearing on Harrison's Equifax credit report.

22. Harrison telephoned Equifax on June 1, 2002 to obtain a credit report through Equifax's automated system. However, since November, 2001, Equifax no longer had Harrison's correct Connecticut address on file. Equifax had substituted the imposter's address on Harrison's account and Harrison was therefore unable to access his credit file.

23. Harrison also attempted to obtain his Equifax credit report using Equifax's website at this time but was denied access to his credit report.

24. On July 3, 2002, still having received no response to his repeated requests for Equifax to provide an updated credit report, Harrison again wrote Equifax and again disputed the fraudulent accounts appearing on his November 5, 2001 Equifax credit report. Harrison provided information to Equifax to assist it in its investigation of the disputed fraud accounts, including the name and account number of each fraudulent account, his full name, Social Security number, date of birth, address, former address,

phone number, a copy of his Social Security card and a copy of his driver's license. Harrison also provided Equifax a list of the fraud accounts that had appeared or were appearing on his Experian and Trans Union credit reports.

25. Equifax received Harrison's July 3, 2002 dispute letter on July 7, 2002.

26. Upon information and belief, Equifax once again did not investigate Harrison's dispute of the fraud accounts or inquiries into his credit report, nor did it update Harrison's report to reflect his dispute of the fraud accounts.

27. Despite the wealth of information provided by Harrison to Equifax in his July 3, 2002 dispute letter, Equifax wrote Harrison demanding additional information before it would provide Harrison a copy of his credit report. Equifax did not provide Harrison with an updated copy of his credit report nor did Equifax investigate the accounts which Harrison disputed.

28. Harrison again wrote Equifax on September 2, 2002 to dispute the fraud accounts appearing on his November 5, 2001 credit report. Harrison also included a list of the fraud accounts that had appeared or were appearing on his Experian and Trans Union credit reports. In addition, Harrison disputed with Equifax the number of inquiries into his credit report by creditors who had granted credit to the imposter.

29. Equifax received this dispute letter on September 14, 2002.

30. Finally, on October 9, 2002, Equifax provided Harrison with an updated copy of his Equifax credit report. A letter from Equifax accompanied the credit report provided by Equifax. In its letter, Equifax claimed to delete certain of the fraud accounts and collection accounts associated with these fraud accounts from his credit report. However, these fraud accounts and collection accounts continued to appear on the October 9, 2002 Equifax report.

31. In addition to claiming to have made the above corrections, Equifax claimed to "verify" certain other fraud accounts with the creditors. As a result, these fraud accounts and associated collection accounts, including the Virginia Beach Civil Judgment, also continued to appear on the October 9, 2002 report.

32. Equifax failed to report Harrison's disputes of the fraud accounts and credit report inquiries or to remove the fraud accounts and credit report inquiries from his report as he requested. Indeed, Equifax's response to Harrison's dispute of the credit report inquires was "Inquiries are a factual record of file access...," and instructed Harrison to dispute the inquiries with each individual creditor.

33. On January 9, 2003, Equifax provided Harrison with a copy of his credit report. This credit report continued to contain fraud accounts and associated collection accounts, among others, that Harrison had disputed.

34. On or about January 23, 2003, Citibank closed Harrison's legitimate Citibank revolving credit card account based upon information relating to the fraud accounts as provided to Citibank by Equifax.

35. On January 28, 2003, Equifax provided Harrison with another credit report. This credit report continued to contain information related to over a dozen of the fraud accounts and collection accounts that Harrison had previously disputed with Equifax.

36. On or about March 27, 2003, MBNA Bank significantly reduced Harrison's credit limit on his legitimate revolving credit card account based upon information relating to the fraud accounts as provided to MBNA by Equifax.

## V. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Violations of Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*

37. Paragraphs 1-36 are herein incorporated.

38. Equifax is a consumer reporting agency and thus has duties under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

39. Pursuant to 15 U.S.C. § 1681e, Equifax has a duty to maintain reasonable procedures to assure maximum possible accuracy of the credit information it publishes regarding consumers such as Harrison.