# EXHIBIT D

**Westlaw.**

Not Reported in F.Supp.2d
2003 WL 1962376 (E.D.Pa.)
**(Cite as: 2003 WL 1962376 (E.D.Pa.))**

Page 1

▷
Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

William M. PURCELL, Plaintiff,
v.
UNIVERSAL BANK, N.A.; Universal Card Services Corp.; Citibank (South Dakota), N.A.; and Citicorp Defendants,
v.
Ephrata National Bank, Third-Party Defendant.

No. CIV.A. 01-CV-2678.

April 28, 2003.

*MEMORANDUM AND ORDER*

VANANTWERPEN.

*1 Plaintiff William M. Purcell filed this action against Defendants Universal Bank, N.A., Universal Card Services Corp., Citibank (South Dakota), N.A., and Citicorp ("Defendants") alleging violations of the Fair Credit Billing Act, 15 U.S.C. § 1666 ("FCBA") and Regulation Z of the Federal Reserve Bank, 12 C.F.R. § 226.13. Purcell also asserts state law claims for negligence, defamation/libel, and invasion of privacy. In addition, Purcell seeks punitive damages. Defendants joined Ephrata National Bank ("Ephrata") as a third-party defendant in this case. We now consider Defendants' Motion for Summary Judgment on all of the claims, and for the reasons given below, will grant Defendants' motion in part and deny it in part.

*I. BACKGROUND*

In November 1998, Plaintiff William M. Purcell attempted to pay the balance on his AT & T Universal Mastercard bill by issuing a check for $8,808.93 drawn from a checking account with Ephrata. Purcell holds the account jointly with his wife.

The check was received by his credit card company, Universal Card Services Corp."Universal. AT & T Universal Card is the check's payee and Citibank FSB is the depository bank for AT & T Universal Card. Citibank FSB allegedly endorsed the check and forwarded it for payment to Ephrata. Citibank claims it followed all applicable regulations and clearly placed its routing number for payment in the proper place on the check and in the proper ink color.

Ephrata claims that the penultimate digit in the routing number was illegible. It then returned the check to Citibank FSB because it insufficiently endorsed the check. Ephrata did not inform Defendants that it deemed the check improperly endorsed because the routing number was illegible. Defendants claim the routing number was legible and that the check was properly endorsed. Moreover, Defendants allege that Ephrata negotiated similar checks submitted by Citibank FSB with the same routing number.

After payment on the check was refused by Purcell's bank, Citibank and Purcell were in contact over the unpaid credit card bill. Attempts to resolve the dispute between Citibank and Purcell failed, and Citibank reported the missed payment to the credit reporting agencies.

Purcell filed suit against Defendants claiming that Defendants violated the Fair Credit Billing Act, and Regulation Z of the Federal Reserve Bank. Purcell also claims that Defendants committed the state law torts of negligence, defamation, and invasion of privacy. Thereafter, Defendants filed a third-party complaint against Ephrata. Defendants claimed that Ephrata violated federal banking regulations and failed to honor a properly endorsed check. By order of this court dated January 3, 2003, we denied Ephrata's motion for summary judgment. On April 1, 2003, Defendants filed the Motion for Summary Judgment now before this court.

*II. STANDARD OF REVIEW*

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248-49, 106 S.Ct. 2505.

### III. DISCUSSION

*2 Defendants raise several arguments in support of their motion for summary judgment. [FN1] We address each argument in turn, and grant Defendants' Motion for Summary Judgment in part and deny it in part.

> FN1. Third-party defendant Ephrata's Reply to Defendants' Motion for Summary Judgment presents no arguments contrary to those raised by Defendants, except on the issue of whether Purcell's check was properly endorsed. Ephrata does not dispute any of the legal conclusions asserted by Defendants. We therefore discuss Ephrata's contentions only where pertinent to the factual question regarding the endorsement of the check.

A. Inclusion of Defendant Citicorp

Defendants first argue that all of Purcell's claims against Citicorp must fail because Citicorp is a separate and independent entity from its subsidiaries. The parties do not dispute that according to Pennsylvania law, a corporation is generally regarded as a "separate and independent entity" and that a parent corporation generally is not liable for the actions or obligations of a subsidiary. *Botwinick v. Credit Exch., Inc.,* 419 Pa. 65, 213 A.2d 349, 353-54 (Pa.1965); *Commonwealth v. Vienna Health Prods., Inc.,* 726 A.2d 432, 434 (Pa.Commw.Ct.1999); *Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.,* 2 F.Supp.2d 688, 691 (E.D.Pa.1998). An exception exists however, such that liability may be imposed where a parent corporation so dominates the activities of a subsidiary that is necessary to treat the dominated corporation as the "alter ego" of the parent. *Botwinick,* 213 A.2d at 354.

According to Defendants, Purcell has alleged no evidence that Citicorp exercised domination over any other defendants. Purcell responds by citing *Simon v. UnumProvident Corp.,* No. 99-6638, 2002 U.S. Dist. LEXIS 9331, (E.D.Pa. May 23, 2002) (slip op.), a case concerning a defendant disability insurer that allegedly dominated the activities of an adjustment company. *Id.* at *10-11. The court denied the motion for summary judgment in favor of the insurer because, among other reasons, the plaintiff produced evidence that the insurer and adjuster were paid from the same sources and had common employees. *Id.* at *14-15.

In this case, Purcell maintains that the Affidavit of Elizabeth Barnette and the Statement of Uncontested Facts show that the affairs and records of Citicorp and Citibank (South Dakota), N.A. are one in the same. In light of *Simon,* we agree that this evidence counsels against granting the motion for summary judgment in favor of Citibank. But simply because Purcell has raised an issue sufficient to survive summary judgment does not indicate that he will be successful in demonstrating the high degree of domination required sufficient to pierce the corporate veil and establish liability on the part of the parent corporation, Citicorp. *See id.* at *9 (citing *Craig v. Lake Asbestos of Quebec, Ltd.,* 843 F.2d 145, 150 (3d Cir.1988)) ("To warrant piercing the veil on an alter-ego theory, a plaintiff must demonstrate that the parent company exercised 'complete domination not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own.' ").

B. Fair Credit Billing Act and Regulation Z Claims

Not Reported in F.Supp.2d
2003 WL 1962376 (E.D.Pa.)
**(Cite as: 2003 WL 1962376 (E.D.Pa.))**

Page 3

\*3 Defendants next assert that Purcell, as a matter of law, has no claim under the Fair Credit Billing Act, 15 U.S.C. § 1666 or Regulation Z of the Federal Reserve Bank, 12 C.F.R. § 226.13, (Counts I and II). [FN2] First, Defendants argue that Purcell did not properly invoke the protection of the FCBA or Regulation Z because he never mailed a billing error notice to Universal Bank, N.A. Purcell recognizes that the pertinent provisions require that a consumer mail a billing error notice to a creditor within sixty days of transmission of the statement containing the alleged error. 12 C.F.R. § 226.13(b). Based on evidence produced during discovery, Purcell states that he has satisfied this requirement. Specifically, according to Purcell, the billing error first appeared on his March 1999 statement. And on March 31, 1999 and April 19, 1999, he completed "Notifications of Disputed Item" forms and submitted them to Defendants. (Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ.J., Ex. F). A review of the forms confirms that they meet the procedural requirements of the FCBA and Regulation Z, and the forms include among other necessary information, the account at issue and the amount in dispute. Given the existence of the notification forms, Defendants' contention that Purcell has provided no evidence of written notice is plainly wrong.

> FN2. Defendants, without citing any authority, maintain that there is no separate private right of action under Regulation Z. Purcell responds that where there is a statutory "private attorney general" scheme of enforcement for the Truth in Lending Act, 15 U.S.C. § 1601 et seq., regulations concerning the conduct of creditors would confer a similar right of action. See Nichols v. Mid-Penn Consumer Discount Co., No. 88-1253, 1989 U.S. Dist. LEXIS 4796, at \*6 (E.D.Pa. April 28, 1989). We agree with Plaintiff's position.

Second, Defendants argue that Universal Bank, N.A. did not commit a billing error when it failed to credit Purcell's account for $8,808.93. Regulation Z provides several definitions of a "billing error," including the following:
  (4) A reflection on a periodic statement of the creditor's failure to credit properly a payment or other credit issued to the consumer's account.
  (5) A reflection on a periodic statement of a computational or similar error of an accounting nature that is made by the creditor.

12 C.F.R. § 226.13(a)(4) and (5). Purcell argues that Defendants committed a billing error by failing to credit a properly issued payment and in improperly continuing to assess finance charges and late fees on a disputed credit card account. Further, Purcell asserts that the billing error occurred because of Defendants' failure to properly endorse his check or to later inquire as to the problem with the endorsement. Defendants contention that Ephrata's refusal to honor the check caused the discrepancy rather than any actions that Defendants committed is not a sufficient basis for granting its motion for summary judgment. If we were to read the § 226.13(a)(4) definition of "billing error" narrowly, no error would be possible without a properly processed payment that a creditor then failed to acknowledge. But in this case, Ephrata never authorized the release of funds to the check's payee because of alleged problems with the endorsement-no payment ever occurred. If Defendants did in fact provide a deficient endorsement, then they would be the cause of Ephrata's refusal to honor the check. Such conduct arguably falls within a broader reading of § 226.13(a)(4). Regardless however, if the facts as alleged by Purcell are true, then Defendants' conduct will fall under the definition of 12 C.F.R. § 226.13(a)(5). Specifically, Defendants' alleged failure to endorse the check properly would be a "similar error of an accounting nature" made by the creditor that later appeared on a periodic statement.

Defendants' third argument with respect to Counts I and II of the Amended Complaint is not sufficient to support granting the Motion for Summary Judgment. Based upon a copy of Purcell's check submitted as an exhibit, Defendants assert that they properly endorsed the check. See (Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ.J., Ex. B). Upon reviewing this exhibit, we agree that the penultimate digit of the routing number does appear to be a "7" and not a "9." In fact, the digit at issue appears to be the *most legible* digit in the routing number. But because this is a motion for summary judgment and evidence must be viewed in the light most favorable to the non-moving party, we are reluctant to grant Defendants' motion based upon a low-quality photocopy of the disputed check. The legibility of the routing number is a factual issue ill-suited for resolution upon summary judgment.

\*4 Fourth, Defendants argue that Purcell has sustained no damages as a result of their alleged conduct. Among other harms suffered, Purcell has alleged that credit was denied to his business, Purcell

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
2003 WL 1962376 (E.D.Pa.)  
**(Cite as: 2003 WL 1962376 (E.D.Pa.))**

Page 4

Construction, as a result of the ongoing dispute with Defendants. Both parties agree that "a stockholder, director, officer or employee of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the individual because of an injury to the corporation." Marchese v. Umstead, 110 F.Supp.2d 361, 367 (E.D.Pa.2000). But as Purcell notes, in *Marchese*, the court recognized an exception where the individual sustains an injury separate and distinct from that of the corporation. *Id.* Here, Purcell has alleged that the denial of credit from a truck dealership forced him to lease vehicles rather than buying them outright. This resulted in a cost increase on each vehicle of $2048.89, according to Purcell. Because he was the sole shareholder of Purcell Construction during the relevant time period, his personal assets were affected by Defendants' alleged actions. Accepting Purcell's contentions for the purposes of summary judgment, we find that he has alleged sufficient evidence of harm such that he has standing.

We will deny Defendants' Motion for Summary Judgment with respect to Purcell's FCBA and Regulation Z claims based on the above discussion.

C. Negligence Claim

Defendants assert that Purcell's negligence claim (Count III) is preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* In support of their position, they cite *Aklagi v. NationsCredit Financial Services Corp.* 196 F.Supp.2d 1186, 1195-96 (D.Kan.2002) (finding that qualified immunity provision of Fair Credit Reporting Act preempted a defamation claim). Purcell responds that he is seeking relief under the Fair Credit Billing Act, 15 U.S.C. § 1666, and that no preemption applies to that legislative scheme. He adds, correctly, that Defendants provide no authority stating that the FCBA preempts state law claims. Defendants' citation to the language of 15 U.S.C. § 1681 is inapposite; instead, § 1666j addresses the interaction of the FCBA and state law, providing that, "[t]his part does not annul, alter, or affect, or exempt any person subject to the provisions of this part from complying with, the law of any State with respect to credit billing practices, except to the extent that those laws are inconsistent with any provision of this part, and then only to the extent of the inconsistency." 15 U.S.C. § 1666j(a). Seeing no inconsistency between the federal statute and state law negligence claim, we find that there is no preemption.

As an additional challenge to the negligence claim, Defendants argue that the claim fails because Defendants did not breach any duty owed to Purcell. Not surprisingly, Purcell disagrees and alleges that Defendants owed him a duty to credit his account for properly tendered payments, to resolve billing disputes in a timely manner, to take care in publishing his personal financial information to third parties, and to refrain from reporting disputed debts to credit bureaus. Regulation Z states that a "creditor or its agent shall not (directly or indirectly) make or threaten to make an adverse report to any person about the consumer's credit standing, or report that an amount or account is delinquent, because the consumer failed to pay the disputed amount or related finance or other charges." 12 C.F.R. § 226.13(d)(2). According to the facts as alleged by Purcell, Defendants may have failed to comply with a duty imposed by Regulation Z.

*5 We have already determined that Purcell has alleged facts sufficient to assert that he sustained damages as a result of Defendants' actions. *See* Part III.B. *supra.* We will then deny the motion for summary judgment with regard to Purcell's negligence claim.

D. Defamation/Libel and Invasion of Privacy

For the same reasons that the negligence claim is not preempted by the FCBA, Purcell's claims for defamation (Count IV) and invasion of privacy (Count V) shall stand with one important limitation. *See* 15 U.S.C. § 1666j(a). To the extent that Purcell's claims are based upon a reporting of delinquency to consumer credit agencies, they are preempted by 15 U.S.C. §§ 1681s-2 and 1681t. Section 1681t provides that no requirement or prohibition may be imposed under the laws of any state with respect to subject matter regulated by § 1681s-2, which concerns the responsibilities of persons furnishing information to consumer credit agencies. 15 U.S.C. § 1681t(b)(1)(F). This court has already discussed the issue of preemption under § 1681t. *See Jaramillo v. Experian Info. Solutions, Inc.*, 155 F.Supp.2d 356, 361-62 (E.D.Pa.2001), reconsideration granted in part, 2001 WL 1762626 (E.D.Pa. Jun.20, 2001). Although in *Jaramillo*, the court reinstated a defamation claim with a one sentence order and no other explanation, other courts have found the original opinion persuasive and have held that similar state law claims are in fact preempted by 15 U.S.C. § 1681t(b)(1)(F). *Riley v. General Motors Acceptance Corp.*, 226 F.Supp.2d 1316, 1323 (S.D.Ala.2002); *Vasquez-Garcia v. Trans Union De Puerto Rico*, 222 F.Supp.2d 150 (D.P.R.2002). We likewise find that

Not Reported in F.Supp.2d
2003 WL 1962376 (E.D.Pa.)
**(Cite as: 2003 WL 1962376 (E.D.Pa.))**

Page 5

any state law claims based upon reports to credit agencies are preempted in light of precedent as well as the plain language of § 1681t(b)(1)(F).

Defendants argue that we should grant the motion for summary judgment on the remainder of the defamation claim because Purcell did not pay his credit card bill. Truth is a complete and absolute defense to a claim for defamation. *Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1345-46 (Pa.Super.Ct.1987). None of the parties dispute that Purcell wrote a check for $8,808.93 or that Defendants did not receive the $8,808.93 from either Purcell or Ephrata. But, as Purcell argues, Defendants are responsible for the mishandling of the check and its subsequent rejection by Ephrata for lack of a proper endorsement. He also alleges that Defendants have improperly reported the disputed charge to consumer credit agencies. Defendants halfheartedly suggest in an incomplete footnote that they have recognized that the $8,808.93 is disputed since an unspecified date. Arguably, by the time Defendants were reporting the dispute, the damage to Purcell's credit record had already been done and he had been denied credit that otherwise might have been extended to him. More importantly, Purcell also alleges that the collection attempts initiated by Defendants caused gossip and speculation among his employees and in the small town of approximately 4,300 persons where his business is located. We will not grant Defendants' motion for summary judgment where their actions may have been the reason that the credit card bill remained unpaid. With respect to the claim for invasion of privacy, Defendants urge that no publication of a matter concerning Purcell's private life occurred, and further, that if any publication did occur, it would not be highly offensive to a reasonable person. *See Wells v. Thomas,* 569 F.Supp. 426, 436 (E.D.Pa.1983). First, regarding the issue of publication, Purcell has provided evidence that employees at his business received numerous calls from Defendants regarding collection of the dispute amount. In some cases that may be insufficient to constitute publication. *See Vogel v. W.T. Grant Co.,* 458 Pa. 124, 327 A.2d 133, 138 (Pa.1974) (noting that under the specific facts of the case at hand, notification to two or four parties at employee's workplace did not amount to publication). In this case however, Purcell argues that his community of approximately 4,300 persons is small enough that any damaging rumors would spread quickly. Second, whether an alleged publication would be offensive to a reasonable person depends on underlying issues of fact and cannot be resolved at this time. We accordingly will deny the motion for summary judgment for the remainder of the invasion of privacy claim.

E. Punitive Damages

*6 The Amended Complaint seeks punitive damages (Count VI) based upon the averments of ¶¶ 1-66, which encompass all of Purcell's federal and state law claims. Defendants suggest that we enter summary judgment in their favor because Pennsylvania law recognizes no independent cause of action for punitive damages. But Defendants misunderstand the applicable legal precedent. If all of a plaintiff's independent claims are dismissed and only a dependent claim for punitive damages remains, then by definition, the dependent claim cannot stand. *See In re Collins,* 233 F.3d 809, 811-812 (3d Cir.2000); *Hilbert v. Roth* 395 Pa. 270, 149 A.2d 648, 652 (Pa.1959). When a plaintiff outlines the relief he seeks however, the term "claim" has broader applicability than the more limited concept of a cause of action. *Collins,* 233 F.3d at 811. In this case, Purcell's dependent claim for punitive damages shall stand because the independent claims upon which it rests still remain.

*IV. CONCLUSION*

Defendants' motion will be granted in part because Plaintiff's defamation and invasion of privacy claims are preempted in part by 15 U.S.C. § 1681t(b)(1)(F). Those state law claims are preempted to the limited extent that Purcell's claims are based upon reports made to consumer credit agencies. The remainder of Defendants' motion will be denied because of the need to resolve disputed issues of material fact. An appropriate order follows.

*ORDER*

AND NOW, this 28th day of April, 2003, upon consideration of Defendants Universal Bank, N.A., Universal Card Services Corp., Citibank (South Dakota), N.A., and Citicorp's ("Defendants' ") Memorandum in Support of Their Motion for Summary Judgment, filed April 1, 2003; Brief of Plaintiff, William M. Purcell, in Opposition to Defendants' Motion for Summary Judgment, filed April 15, 2003; and Third-Party Defendant Ephrata National Bank's Reply to Defendants' Motion for Summary Judgment, filed April 18, 2003, consistent with the foregoing memorandum of law, it is hereby ORDERED as follows:

1. Defendants' Motion for Summary Judgment is GRANTED in part to the limited extent that

Not Reported in F.Supp.2d  
2003 WL 1962376 (E.D.Pa.)  
**(Cite as: 2003 WL 1962376 (E.D.Pa.))**

Page 6

Purcell's claims are based upon reports made to consumer credit agencies, and

2. The remainder of Defendants' Motion for Summary Judgment is DENIED.

2003 WL 1962376 (E.D.Pa.)

Motions, Pleadings and Filings (Back to top)

- 2:01CV02678 (Docket) (May. 30, 2001)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT E

2002 U.S. Dist. LEXIS 26468, *

LEXSEE 2002 US DIST LEXIS 26468

DAVID M. DAVIS, Plaintiff, v. MARYLAND BANK, N.A., Defendant.

No. C 00-04191 SBA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2002 U.S. Dist. LEXIS 26468

June 18, 2002, Filed
June 19, 2002, Filed

**DISPOSITION:** Defendant's motion to dismiss and motions for summary judgment granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant credit card company filed a motion to dismiss and a motion for summary judgment in a dispute related to plaintiff cardholder's alleged delinquency in paying his credit card bills and the resulting reporting of that information by the company to a credit agency.

**OVERVIEW:** The cardholder brought suit on his own, and on behalf of his business, based on the harm allegedly caused by the company providing inaccurate information to a credit reporting agency. The court held that the undisputed evidence demonstrated that the cardholder was regularly delinquent on paying his account and that it was only when he exceeded his credit limit and the company finally blocked his account that he "discovered" a fraudulent charge against his account over two years earlier. After an investigation, the company removed this charge as a courtesy, and the credit reports were duly updated to reflect this change. As a result, no false information was ever reported to anyone. The court dismissed all the counts alleged by the business, based on its lack of standing and the statute of limitations. The court granted the company's motion to dismiss and motions for summary judgment, finding that the cardholder had only alleged viable claims for violation of the Fair Credit Billing Act, 15 U.S.C.S § 1666 et seq., the Fair Credit Reporting Act, 15 U.S.C.S. § 1681 et seq., and intentional infliction of emotional distress, but those claims failed as a matter of law.

**OUTCOME:** The court granted the company's motion to dismiss and motion for summary judgment.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN2] For purposes of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. All reasonable inferences are to be drawn in favor of the plaintiff. Dismissal is proper if the complaint fails to allege either a cognizable legal theory or sufficient facts under a cognizable legal theory.

*Civil Procedure > Pleading & Practice > Pleadings > Amended PleadingsCivil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN3] When the complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency. Leave to amend is properly denied where the amendment would be futile.

*Torts > Negligence > Duty > Negligent Infliction of Emotional Distress*

2002 U.S. Dist. LEXIS 26468, *

[HN4] Both Delaware and California narrowly limit a claim of negligent infliction of emotional distress. It is settled law in Delaware that, in a negligence action, for a claim of mental anguish to lie, an essential ingredient is present and demonstrable physical injury to the plaintiff. Similarly, California generally authorizes emotional distress damages only in cases of physical injury. California also permits recovery for emotional distress in certain specialized cases such as mishandling of remains, false diagnosis of a potentially fatal disease, witnessing the injury of a close relative, or negligence involving quasi-fiduciary duties in the cases of bad faith denial of insurance coverage.

*Torts > Business & Employment Torts*
[HN5] It is well-established under both Delaware and California law that a claim for breach of the implied covenant of good faith and fair dealing lies only in cases of bad faith denial of insurance coverage.

*Torts > Procedure > Statutes of LimitationsGovernments > Legislation > Statutes of Limitations > Statutes of Limitations Generally*
[HN6] Under California law, the statute of limitations for personal injury actions--e.g., defamation, intentional infliction of emotional distress, negligence--is one year. Cal. Code Civ. Proc. § 340.

*Torts > Procedure > Statutes of LimitationsGovernments > Legislation > Statutes of Limitations > Statutes of Limitations Generally*
[HN7] Delaware provides a two-year statute of limitations for the tort claims of defamation, intentional infliction of emotional distress, and negligence.

*Torts > Business & Employment Torts > Interference With Prospective AdvantageTorts > Procedure > Statutes of Limitations*
[HN8] Intentional interference with prospective economic advantage has a two-year statute of limitations. Cal. Code Civ. Proc. § 339(1).

*Torts > Business & Employment Torts > Interference With Prospective AdvantageTorts > Procedure > Statutes of Limitations*
[HN9] Delaware has a three-year statute of limitations for claims for intentional interference with contract or prospective business relations. Del. Code Ann. tit. 6, § 8106.

*Banking Law > Bank Activities > Consumer Protection > Truth in Lending*
[HN10] The Fair Credit Billing Act, 15 U.S.C.S § 1666 et seq., requires written-notice of the billing error to be given to the creditor within 60 days of receipt of the error. 15 U.S.C.S. § 1666(a). After notice is given, a claim for relief must be brought within one year of the creditor's failure to correct the error. 15 U.S.C.S. § 1640(e).

*Banking Law > Bank Activities > Consumer Protection > Fair Credit Reporting*
[HN11] The Fair Credit Reporting Act, 15 U.S.C.S. § 1681 et seq., mandates a two-year statute of limitations following the improper disclosure of a credit history. 15 U.S.C.S. § 1681p.

*Governments > Legislation > Statutory Remedies & RightsGovernments > Legislation > Statutes of Limitations > Time Limitations*
[HN12] Because the statutory penalties for a violation of California's Song-Beverly Credit Card Act of 1971, Cal. Civ. Code § 1747, and the California Consumer Credit Reporting Act Card Act, Cal. Civ. Code § 1785.1 et seq., are penal in nature, there is a one-year statute of limitations for the claims under those statutes. Cal Code Civ. Proc. § 340(1).

*Banking Law > Bank Activities > Consumer Protection*
[HN13] Under California law, except in very limited circumstances, banks do not owe a duty to noncustomers. The duty owed by the bank is an implied term of the contract between the bank and the depositor. Thus, because an account agreement is not intended to benefit third parties unknown to the bank, a third party cannot allege a claim for negligence or breach of contract against a bank.

*Torts > Business & Employment Torts > Interference With Prospective Advantage*
[HN14] The elements of the tort of intentional interference with prospective economic advantage are as follows: (1) The existence of a prospective business relationship advantageous to plaintiff, (2) defendants' knowledge of the existence of the relationship, (3) defendants' intentional conduct designed to disrupt the relationship, (4) actual causation, and (5) damages to plaintiff proximately caused by defendants' conduct.

*Banking Law > Bank Activities > Consumer Protection > Truth in Lending*
[HN15] The Fair Credit Billing Act, 15 U.S.C.S § 1666 et seq., provides a claim for relief in favor of the "obligor" on the account. 15 U.S.C.S. § 1666.

*Banking Law > Bank Activities > Consumer Protection > Fair Credit Reporting*
[HN16] The liability provisions under the Fair Credit Reporting Act, 15 U.S.C.S. § 1681 et seq., apply to "any consumer" of credit. 15 U.S.C.S § § 1681n, 1681o.

*Banking Law > Bank Activities > Consumer Protection > Truth in Lending*
[HN17] The Song-Beverly Act's provisions governing

2002 U.S. Dist. LEXIS 26468, *

the obligation of credit providers expressly define a "cardholder" as natural person to whom a credit card is issued for consumer credit purposes, or a natural person who has agreed with the card issuer to pay consumer credit obligations arising from the issuance of a credit card to another natural person. Cal. Civ. Code § 1747.02(d).

**Banking Law > Bank Activities > Consumer Protection > Truth in Lending**
[HN18] The California Consumer Credit Reporting Act Card Act provides protection only for "consumers--i.e., account holders. Cal. Civ. Code § 1785.25.

**Civil Procedure > Pleading & Practice > Pleadings > Amended PleadingsCivil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss**
[HN19] A plaintiff may not seek leave to amend to cure deficiencies in the complaint when he cannot state a claim for relief without contradicting the allegations made in the original complaint. Nor may a plaintiff allege facts that do not have or are unlikely to have evidentiary support. Fed R. Civ. P. 11(b), 11(c)(1).

**Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Actions Against Corporations**
[HN20] Under California law, a shareholder owns only stock in a corporation, not the corporation's property. Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury done to the corporation or its property by a third party.

**Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Actions Against Corporations**
[HN21] Delaware recognizes that where the injury is suffered by the corporation through lost earnings, a shareholder may only maintain derivative shareholder suit.

**Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Shareholder Duties & Liabilities**
[HN22] As a matter of law; a shareholder cannot sue for injury suffered by the corporation even if this results in incidental injury to the shareholder.

**Civil Procedure > Summary Judgment > Burdens of Production & ProofCivil Procedure > Summary Judgment > Summary Judgment Standard**
[HN23] Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the court concludes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Thus, summary judgment is warranted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the nonmoving party must come forward with specific facts demonstrating a genuine factual issue for trial. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.

**Civil Procedure > Summary Judgment > Summary Judgment Standard**
[HN24] At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Put another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied. Inferences must be drawn in the light most favorable to the nonmoving party.

**Civil Procedure > State & Federal Interrelationships > Choice of Law**
[HN25] A district court applies the choice-of-law rules of the state in which it sits. Accordingly, the United States District Court for the Northern District of California looks to California law to determine whether a choice-of-law provision in a credit card agreement is enforceable.

**Civil Procedure > State & Federal Interrelationships > Choice of Law**
[HN26] Under California law, a choice of law provision may be enforceable if it meets certain requirements. A court first determines either: (1) whether the chosen state has a substantial relationship to the parties or their transactions, or (2) whether there is any reasonable basis for the parties' choice of law. If either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law.

**Civil Procedure > State & Federal Interrelationships > Choice of LawContracts Law > Defenses > Unconscionability**
[HN27] California has no public policy against enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate. The mere fact that the contract is one of adhesion is not dispositive.

2002 U.S. Dist. LEXIS 26468, *

*Banking Law > Bank Activities > Consumer Protection > Fair Credit Reporting*
[HN28] See 15 U.S.C.S. § 1681t(b)(1).

*Banking Law > Bank Activities > Consumer Protection > Fair Credit Reporting*
[HN29] See 15 U.S.C.S. § 1681s-2(a)(1)(A).

*Banking Law > Bank Activities > Consumer Protection > Fair Credit Reporting*
[HN30] See 15 U.S.C.S. § 1681s-2(b)(1).

*Banking Law > Bank Activities > Consumer Protection > Fair Credit Reporting*
[HN31] The Fair Credit Reporting Act, 15 U.S.C.S. § 1681 et seq., preempts both state statutory and common law causes of action which fall within the conduct proscribed under 15 U.S.C.S. § 1681s-2(1).

*Banking Law > Bank Activities > Consumer Protection > Fair Credit Reporting*
[HN32] Cal. Civ. Code § 1785.31, which authorizes a private right of action for a violation of Cal. Civ. Code § 1785.25, does not extend liability to one who furnished information to a credit reporting agency.

*Banking Law > Bank Activities > Consumer Protection > Fair Credit Reporting*
[HN33] See 15 U.S.C.S. § 1681h (e).

*Banking Law > Bank Activities > Consumer Protection > Truth in Lending*
[HN34] The Federal Credit Billing Act, 15 U.S.C.S § 1666 et seq., generally requires that a credit provider investigate claims of a billing error and verify the accuracy of a credit card statement. 15 U.S.C.S. § 1666. However, this obligation is only triggered once the consumer sends written notice of the alleged error. 15 U.S.C.S. § 1666(a). Moreover, the written notice must be received by the credit provider within 60 days of the creditor's transmission of the allegedly erroneous credit card statement. 15 U.S.C.S. § 1666(a). Further, pursuant to the Code of Federal Regulations, the 60-day period begins to run after the creditor has transmitted the first period statement that reflects the alleged billing error. 12 C.F.R. § 226.13(b)(1).Under 15 U.S.C.S. § 1666(b)(1), a billing error includes charges assigned to an account which the account holder did not make.

*Banking Law > Bank Activities > Consumer Protection > Truth in Lending*
[HN35] Under 15 U.S.C.S. § 1640(e), the statute of limitations for a violation of 15 U.S.C.S. § 1666(a) is one year from the date of the alleged violation, subject to equitable tolling in certain circumstances.

*Banking Law > Bank Activities > Consumer Protection > Fair Credit Reporting*
[HN36] The Fair Credit Reporting Act, 15 U.S.C.S. § 1681 et seq., expressly provides that there is no private right of action for a violation of 15 U.S.C.S. § 1681s-2(a). 15 U.S.C.S. § 1681s-2(d). Rather, that section is enforced exclusively by federal and state officials. There is a private right of action against a provider of credit under § 1681s-2(b). However, the Ninth Circuit has recognized that § 1681s-2(b) includes a filtering mechanism which requires that a disputatious consumer notify a credit reporting agency and the credit reporting agency in turn notify the provider of credit. The duty to investigate is triggered only after the furnisher receives notice of the dispute from a consumer reporting agency, not just the consumer.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress*
[HN37] The elements for a claim of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Conduct, to be "outrageous," must be so extreme as to exceed all bounds of that usually tolerated in a civilized society. While the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact the court may determine in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress*
[HN38] Mere insults, without more, are insufficient as a matter of law to allege a claim of intentional infliction of emotional distress.

**COUNSEL:** [*1] For DAVID M. DAVIS, ACE RECOVERY SERVICES, INC., Plaintiffs: Owen T. Mascott, James Louis Kohl, Oakland, CA.

For MARYLAND BANK, AMERICA, N.A., defendant: George G. Weickhardt, Pamela J. Zanger, Ropers Majeski Kohn & Bentley, San Francisco, CA.

For MARYLAND BANK, AMERICA, N.A., Counter-claimant: George G. Weickhardt, Pamela J. Zanger, Ropers Majeski Kohn & Bentley, San Francisco, CA.

For DAVID M. DAVIS, Counter-defendant: Owen T. Mascott, Oakland, CA.

**JUDGES:** Saundra Brown Armstrong, United States District Judge.

2002 U.S. Dist. LEXIS 26468, *

**OPINIONBY:** Saundra Brown Armstrong

**OPINION:**

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion to Dismiss Third and Eighth Causes of Action of First Amended Complaint and All Claims of Ace Recovery Systems [Doc. No. 75-1] and Defendant's Motion for Summary Judgment or in the Alternative, for Ruling that Certain Matters are Without Substantial Controversy [Doc. No. 77-1]. Having read and considered all of the parties' papers and being fully informed, the Court finds the matter is appropriate for resolution without a hearing. See Fed.R.Civ.P. 78. The Court hereby GRANTS [*2] Defendant's motion to dismiss and motion for summary judgment.

### I. Background

#### A. Factual History

This matter arises from disputes related to Plaintiff's alleged delinquency in paying his credit card bills and the resulting reporting of that information by Defendant to a credit agency. Plaintiff, David Davis ("Davis") is a president and chief executive officer of Ace Recovery Services, Inc. ("Ace"). Ace is a debt collection service. In December of 1996, Davis opened a credit account with Maryland Bank, N.A. ("MBNA"). This account was designated with the last four digits 7151 ("7151 Account") with a credit limit of $ 12,100.00. In addition to Davis, Ms. Wanda Salone was authorized to use the card. Along with the credit card was MBNA's standard credit agreement. (Declaration of Michelle Foster ("Foster Decl."), Ex. C.) Beginning in December of 1996, MBNA sent Davis a credit card statement each month the account was open. The statements indicated the charges incurred and payments made for the preceding billing cycle, as well as the total balance, the minimum amount due, and the due date. (Foster Decl., Exs. D, H.) The back of the statements further provided the procedure [*3] for disputing the bill as required under federal law and included a form to be sent to MBNA to alert them to an error. (Foster Decl., P 4, Ex. E.) Plaintiff does not recall any month when he failed to receive an account statement for the 7151 Account while it was open. (Declaration of George G. Weickhardt, Ex. N ("Davis Depo.") at 92:16-93:6). Customarily, however, Plaintiff did not review the statements for accuracy. (Davis Depo. at 91:11-17.)

From 1996 through September of 1999, Davis was frequently delinquent in paying the minimum amount due on the 7151 Account. It is undisputed that he was five days late fourteen times, thirty days late nine times, and failed to make any payment at all thirteen times. (Foster Decl., P 5, Exs. D, F, H, I. On April 15, 1997, a charge in the amount of $ 3000.00 was placed on the 7151 Account. (Foster Decl., Ex. D.) The charge was based on an April 12, 1997 transaction using a "convenience" or "access check" which is similar to a normal draft which is drawn on a bank account. The statement containing this charge was dated April 19, 1997. It is undisputed that Davis received a statement containing this $ 3,000.00 charge on or around April 19, 1997. (Weickhardt [*4] Decl., P 9, Ex. W.) Davis did not dispute the charge at this time.

In February of 1998, Davis reported to MBNA that his card had been lost or stolen because he was unable to recognize certain charges. Per ordinary procedures, MBNA transferred the balance to a new account ending in the four digits 8728 ("8728 Account") (Foster Decl., P 7.) However, Davis later determined that the charges were made by Ms. Salone, an authorized user. During this period, Davis did not challenge the $ 3000.00 charge to his account. (Davis Depo. at 314:24 - 315:8.)

On July 20, 1998, Davis for the first time exceeded his credit limit. For the next nineteen months, he was charged an "over limit fee" as provided in the credit card agreement. n1 (Foster Decl., P 10, Append. C, Ex. H.) On June 1, 1999, the 8728 Account was "blocked" -- i.e., no further charges were authorized due to Davis' poor payment history. (Foster Decl., P 9.) Later that month, on June 25, 1999, Davis contacted by telephone MBNA to dispute the $ 3000.00 charge made on April 12, 1997, and requested a copy of the check. (Foster Decl., P 11.) On September 11, 1999, after receiving a copy of the check, Davis informed MBNA that he did not recognize [*5] the check and that the signature on the check had been forged. (Foster Decl., P 11.) In September and October of 1999, MBNA contacted Davis on the telephone to discuss. (Foster Decl., PP 11-12.) At some point, Davis alleges that an unidentified employee at MBNA called Davis a "liar." (Davis Depo. at 229:5-25.)

---

n1 For the first seven months he was charged a fee of $ 25.00 per month. The remaining fourteen months he was assessed a $ 29.00 per month fee. (Foster Decl., P 10, Ex. C.)

---

After approximately five months of investigation, MBNA was unable to obtain evidence to either support or refute Davis's challenge. Therefore, on February 9, 2000, MBNA credited Davis's account $ 3,000.00. (Foster Decl., P 13.) Three days later, the account was "re-aged" which means that the delinquent payments associated with the charge were removed from Davis's account as well as the credit report. (Foster Decl., PP 14-15.) On March 3, 2000, all finance charges which were