2002 U.S. Dist. LEXIS 26468, *

based on the $ 3,000.00 charge were credited to Davis' account [*6] in the amount $ 673.00. (Foster Decl., P 13.) The following day, the over-limit fees in the total amount of $ 569.00 were also credited to Davis's account. (Foster Decl., P 13.) From September of 1999 through February of 2000, Davis made no payments on his account. (Foster Decl., P 14.)

After all of these adjustments, there was a remaining balance of $ 9,453.00. (Foster Decl., P 17, Ex. H.) Davis does not recall disputing any other charges which comprise this balance. (Davis Depo. at 318:2-19.) Davis made a payment of $ 210.00 on March 30, 2000. (Foster Decl., P 18.) After this March 30, 2000 payment, Davis made no further payments. (Foster Decl., P 18.) As of the closing date of October 20, 2000, the balance due on the account was $ 10,797.31. (Foster Decl., P 18.) On November 17, 2000, the account was canceled and MBNA wrote off the account as a loss. (Foster Decl., P 19.)

**B. Procedural History**

On October 17, 2000, Plaintiff Davis brought suit in California court against Defendant alleging a single cause of action for a violation of the Song-Beverly Credit Card Act of 1971. Plaintiff sought damages in excess of $ 1,000,000.00 based on the harm allegedly caused by Defendant [*7] providing inaccurate information to a credit reporting agency. On November 13, 2000, Defendant removed the action to this Court on the basis of diversity. On November 21, 2000, Defendant filed an answer and counterclaims alleging breach of contract and "money had and received." On April 22, 2002, this Court denied without prejudice Defendant's motion for summary judgment on Plaintiff's claims and granted Defendant's motion for summary judgment on its counterclaims. The Court found that Defendant's motion for summary judgment on Plaintiff's claims was not ripe because it was premised upon an amended complaint not yet filed with the Court. On May 14, 2002, this Court granted Plaintiff leave to file a First Amended Complaint ("FAC") which pled nine claims for relief including (1) violation of California's Consumer Credit Reporting Act; (2) the Federal Fair Credit Billing Act; (3) Negligent Infliction of Emotional Distress; (4) Intentional Infliction of Emotional Distress; (5) violation of California's Song-Beverly Act; (6) Negligence; (7) Intentional Interference with Prospective Economic Advantage; (8) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (9) Defamation. [*8] The FAC also added Ace Recovery Systems as a co-plaintiff and together they seek over $ 10,000,000.00 in compensatory and statutory damages. Defendant now moves this Court to dismiss certain claims in the FAC and to grant summary judgment as to all remaining claims.

**II. Motion to Dismiss**

**1. Legal Standard**

[HN1] "The issue on a Motion to Dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted." Sebastian Int'l v. Russolillo, 128 F. Supp. 2d 630, 633 (C.D. Cal 2001) (citing Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997).) Under Rule 12(b)(6), a motion to dismiss should not be granted unless it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-45, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

[HN2] For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. See Jenkins v. McKeithen, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969); [*9] Everst and Jennins, Inc. v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. See Jacobson v. Hughes Aircraft, 105 F.3d 1288, 1296 (9th Cir. 1997). Dismissal is proper if the complaint fails to allege either a cognizable legal theory or sufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696 at 699 (9th Cir. 1990).

[HN3] When the complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency. See Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc., 911 F.2d 242, 247 (9th Cir. 1990). Leave to amend is properly denied "where the amendment would be futile." Reddy v. Litton Indus., 912 F.2d 291, 296 (9th Cir. 1990).

**2. Discussion**

**a. Third Claim for Relief: Negligent Infliction of Emotional Distress**

Defendant moves to dismiss the Third Claim for Relief which pleads negligent [*10] infliction of emotional distress. MBNA contends that the alleged negligent conduct in resolving the dispute as to Plaintiff's credit account does not give rise to a claim of negligent infliction of emotional distress. The Court agrees. [HN4] Both Delaware and California narrowly limit a claim of negligent infliction of emotional distress. n2 "It is settled law in Delaware that, in a negligence action, for a claim of mental anguish to lie, an essential ingredient is present and demonstrable physical injury to the plaintiff." Garrison v. Medical Center of Delaware Inc., 581 A.2d 288, 293 (Del. 1988). Similarly, California generally authorizes emotional distress damages only in cases of

2002 U.S. Dist. LEXIS 26468, *

physical injury. See Branch v. Homefed Bank, 6 Cal. App. 4th 793, 800, 8 Cal. Rptr. 2d 182 (1992). California also permits recovery for emotional distress in certain specialized cases such as mishandling of remains, false diagnosis of potentially fatal disease, witnessing the injury of close relative, or negligence involving quasi-fiduciary duties in the cases of bad faith denial of insurance coverage. See id. (citations omitted).

> n2 As discussed further below, there is a dispute as to whether Delaware or California law governs disputes arising from the Agreement. The Court finds it appropriate to analyze the amended complaint under both states' laws.

[*11]

Plaintiff has alleged no physical injury which supports a claim for negligent infliction of emotional distress under Delaware or California law. Additionally, he has presented no authority that his claim falls within the narrow cases allowing recovery for emotional distress. Plaintiff generally cites to authority governing *intentional* infliction of emotional distress. See Murphy v. Allstate Ins. Co., 83 Cal. App. 3d 38, 147 Cal. Rptr. 565 (1978); Cervantes v. J.C. Penney Co., 24 Cal. 3d 579 at 593-94, 156 Cal. Rptr. 198, 595 P.2d 975 (1979). Those cases are inapposite. Plaintiff also relies upon Crisci v. Sec. Ins. Co., 66 Cal. 2d 425, 58 Cal. Rptr. 2d 13, 426 P.2d 173 (1967), for the proposition that a plaintiff may recover for mental distress even if there is no physical injury. However, Crisi concerned whether emotional distress damages could be recovered under a claim of bad faith denial of insurance coverage. This issue is separate from whether a plaintiff may state a claim for negligent infliction of emotional distress based upon the facts presented. See Soto v. Royal Globe Ins. Co., 184 Cal. App. 3d 420, 434, 229 Cal. Rptr. 192 [*12] (1986). n3 Plaintiff has presented no other authority indicating that alleged negligence in resolving credit disputes or reporting credit information supports a claim for negligent infliction of emotional distress. Absent clear authority to the contrary, this Court does not find that a claim for negligent infliction of emotional distress may lie based upon the facts as alleged by Plaintiff

> n3 The Court recognizes that at least one California appellate court has permitted the recovery of emotional distress damages in addition to financial damages for a violation of California's Credit Card Act. See Young v. Bank of America Nat'l Trust & Savs. Ass'n, 141 Cal. App. 3d 108, 115, 190 Cal. Rptr. 122 (1983). However, whether the remedies for a violation of California's Credit Card Act include emotional distress damages is a legally and analytically separate question from whether a plaintiff may allege a claim for negligent infliction of emotional distress. Consequently, the Court does not find that Young compels denying Defendant's motion.

[*13]

Plaintiff also contends that Congress intended that claims for negligent infliction of emotional distress could be brought in the present situation, noting that under 15 U.S.C. section 1681h(e), an account holder may recover under a common-law theory of negligence in certain situations. See Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000); Whitesides v. Equifax Credit Information Servs., Inc., 125 F. Supp. 2d 807, 811 (W.D. La. 2000). However, the fact that Federal law does not prohibit state law negligence claims under certain circumstances is not relevant to whether Plaintiff has stated a prima facie claim for negligent infliction of emotional distress in the first instance. Because Plaintiff has failed to state a claim for negligent infliction of emotional distress under either Delaware or California law, the Court need not determine whether the claim fits within the exception under section 1681h(e). Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's Third Claim for Relief. Moreover, because neither Delaware or California law provides for recovery of emotional distress damages [*14] in the case of negligent conduct in resolving credit disputes or reporting credit information, amendment would be futile.

### b. Eighth Claim for Relief: Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant also moves to dismiss the Eighth Claim for Relief for breach of the implied covenant of good faith and fair dealing, arguing that this cause of action is inapplicable to the case at bar. The Court agrees. [HN5] It is well-established under both Delaware and California law that a claim for breach of the implied covenant of good faith and fair dealing lies only in cases of bad faith denial of insurance coverage. See E.I. Dupont de Nemours & Co. v. Pressman, 679 A.2d 436, 445-47 (Del. 1996); Freeman & Mills, Inc. v. Belden Oil Co., 11 Cal. 4th 85, 102, 44 Cal. Rptr. 2d 420, 900 P.2d 669 (1995). Davis concedes that both Delaware and California law narrowly limit the availability of a claim for breach of the implied covenant of good faith and fair dealing and that, as pled, the complaint fails to state a claim. However, he contends that he recently "opted-out of a Class Action [in New York state court] against the defendant [*15] where he was offered a settlement." According to Plaintiff, the court in New York found that the plaintiff class had stated a claim for breach of an implied covenant. Plaintiff concludes that under the Full Faith and Credit Clause of

2002 U.S. Dist. LEXIS 26468, *

the Constitution, this Court should honor the New York court's decision finding a valid claim for the breach of the implied covenant of good faith and fair dealing against MBNA.

Plaintiff's argument is specious. There is no apparent relevance of the claims at bar to an unrelated New York state court decision construing New York law. Plaintiff has provide no authority supporting his argument that this Court is constitutionally compelled to follow the New York state court opinion; in fact, Plaintiff failed to even provide of copy of that opinion for the Court's review. In light of clearly established *controlling* authority, the Court finds that Plaintiff has failed to state a claim for breach of an implied covenant of good faith and fair dealing. Accordingly, the Court GRANTS Defendant's motion to dismiss the Eighth Claim for Relief in the FAC. Moreover, because Plaintiff can state no set of facts consistent with those pled which establishes a viable [*16] claim, the Court does not grant Plaintiff leave to amend.

### c. Claims on behalf of Ace Recovery Systems

Defendant further moves to dismiss all claims brought on behalf of Ace Recovery Systems, contending that Ace's claims are barred by the statute of limitations and that it is not a proper party to assert claims against MBNA. It is unclear whether Plaintiff concedes this point as he simply states that he "can see the logic of Defendant's arguments regarding Ace ...." Regardless, the Court finds that the FAC fails to state claims for relief on behalf of Ace.

### 1.) Statute of Limitations

On May 2, 2002, Plaintiff filed his proposed FAC, purporting to add Ace Recovery Systems as a co-plaintiff Ace seeks lost profits based on the theory that Defendant's conduct regarding Davis' account resulted in lost business opportunities for Ace. Defendant contends that Ace's claims are barred by "every conceivable statute of limitations."

The conduct giving rise to the present claims occurred between 1997 and March of 2000. [HN6] Under California law, the statute of limitations for personal injury actions -- e.g., defamation, intentional infliction of emotional distress, negligence [*17] -- is one year. See Cal. Code Civ. Proc. § 340. [HN7] Delaware provides a two-year statute of limitations for these tort claims. See Wright v. ICI Americas, Inc., 813 F. Supp. 1083 (D. Del. 1993)). Because the FAC was not filed until May of 2002, Ace's claims for defamation, negligence, intentional infliction of emotional distress are time-barred. n4 Additionally, under California law the claim for intentional interference with prospective economic advantage is also barred. See Knoell v. Petrovich 76 Cal. App. 4th 164, 168, 90 Cal. Rptr. 2d 162 (1999) (noting that [HN8] intentional interference with prospective economic advantage has a two-year statute of limitations) (citing Cal. Code Civ. Proc. § 339(1)). Under Delaware law, however, the claim for intentional interference with contract or prospective business relations would not be time-barred because [HN9] Delaware has a three-year statute of limitations for such claims. SmithKline Beecham Pharmaceuticals Co. v. Merck & Co., Inc., 766 A.2d 442, 450 (Del. 2000) (citing 6 Del.C. § 8106).

n4 As discussed above, the Court has dismissed the claims for negligent infliction of emotional distress and breach of the implied covenant of good faith and fair dealing as to both Davis and Ace. Moreover, the negligent infliction of emotional distress claim is also barred by the statute of limitations.

[*18]

Finally, Ace's statutory claims are time-barred. [HN10] The Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666 *et seq.*, requires written-notice of the billing error to be given to the creditor within sixty days of receipt of the error. 15 U.S.C. § 1666(a); see also Dawkins v. Sears Roebuck & Co., 109 F.3d 241, 243 (5th Cir. 1997). After notice is given, a claim for relief must be brought within one-year of the creditor's failure to correct the error. 15 U.S.C. § 1640(e). There is no allegation that Ace filed any written notice. Furthermore, the FAC was filed well after the alleged billing error in 1997. On both bases the claim is barred. Similarly, [HN11] the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1681 et seq., mandates a two-year statute of limitations following the improper disclosure of a credit history. 15 U.S.C. § 1681p; see also TRW Inc. v. Andrews, 534 U.S. 19, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (holding that under 15 U.S.C. section 1681p, two-year statute of limitations is strictly [*19] construed and there is no "discovery rule" applicable). The FAC was filed more than two years after MBNA allegedly improperly reported the status of Davis' account such that it is time-barred under the FCRA. Finally, [HN12] because the statutory penalties for a violation of California's Song-Beverly Credit Act and the CCRA are penal in nature, there is a one-year statute of limitations for the claims under those statutes. See Cal Code Civ. Proc. 340(1); see also Prudential Home Mortgage Co., Inc. v. Superior Court(Diaz), 66 Cal. App. 4th 1236, 78 Cal. Rptr. 2d 566 (1998) (statutory penalties for violating statute requiring immediate conveyance of deed implicated section 340(1)); Menefee v. Ostawari, 228 Cal. App. 3d 239, 278 Cal. Rptr. 805 (1991) (statutory penalties for violation of rent control ordinance implicated section 340(1)). Thus, Ace's claims under the California statutes are similarly

time-barred.

Based on the foregoing, with the exception of the claim for intentional interference with prospective business advantage, all of Ace's claims for relief are barred by the applicable statutes of limitations. Ace has presented no exceptions to the applicable [*20] statutes of limitations; in fact, Ace entirely fails to address Defendant's arguments. n5 Accordingly, the Court finds that all of Ace's claims for relief are procedurally barred by the statute of limitations except the claim for intentional interference with prospective business advantage. Moreover, the Court also finds that, regardless of the procedural bar, Ace fails to state any claims for relief.

> n5 The Court recognizes that, under Federal Rule of Civil Procedure 15(c), "an amendment adding or substituting plaintiffs will relate back if there is an identity of interests between the plaintiffs." Bowles v. Reade, 198 F.3d 752, 762 (9th Cir. 1999). However, Davis has failed to address whether there is an identity of interests between Davis and Ace. The Court declines to find that the amendment relates back under Federal Rule 15(c).

### 2. Common law claims on behalf of Ace

The Court finds that Ace has failed to state any common law claims against Defendant MBNA for negligence, defamation, [*21] and intentional interference with economic advantage. As a preliminary matter, the Court finds that Defendant had no duty to Ace such that Ace cannot plead any claims arising under a negligence theory of liability. [HN13] Under California law, except in very limited circumstances, banks do not owe a duty to noncustomers. See e.g., Chazen v. Centennial Bank, 61 Cal. App. 4th 532, 543-45, 71 Cal. Rptr. 2d 462 (1998); Software Design and Application, Ltd., v. Hoefer & Arnett, Inc., 49 Cal. App. 4th 472, 479, 482-83, 56 Cal. Rptr. 2d 756 (1996). The duty owed by the bank is an implied term of the contract between the bank and the depositor. Chazen, 61 Cal. App. 4th at 543. Thus, because an account agreement is not intended to benefit third parties unknown to the bank, a third party cannot allege a claim for negligence or breach of contract against a bank. See id. at 543-45; see also Software Design, 49 Cal. App. 4th at 482-83.

The Court finds this reasoning is persuasive and applicable to the present facts. The account was opened in the name of Plaintiff Davis, not Ace. Nor did the account list Ace as an entity [*22] authorized to obtain credit on the account. Further, the FAC does not allege that Defendant was aware that the account was also for the benefit of Ace. Accordingly, the Court finds that MBNA owed no duty to Ace and thus Ace has failed to state a claim for negligence against Defendant. Similarly, Ace has failed to allege that MBNA has published any information about Ace which supports a claim of defamation.

Finally, the Court finds that Ace has failed to plead a claim for intentional interference with prospective economic advantage. [HN14] The elements of the tort of intentional interference with prospective economic advantage are as follows: "(1) The existence of a prospective business relationship advantageous to plaintiff, (2) defendants' knowledge of the existence of the relationship, (3) defendants' intentional conduct designed to disrupt the relationship, (4) actual causation, and (5) damages to plaintiff proximately caused by defendants' conduct." Maheu v. CBS, Inc., 201 Cal. App. 3d 662, 667, 247 Cal. Rptr. 304 (1988) (citing Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc., 116 Cal. App. 3d 111, 126, 172 Cal. Rptr. 74 (1981)); [*23] see also McHugh v. Board of Educ. of the Milford School Dist., 100 F. Supp. 2d 231, 247 n.15 (D.Del. 2000). It is alleged in the FAC that it was Davis, not Ace, who had existing and prospective contracts which were terminated due to Defendant's willful conduct. Thus, the FAC fails to allege that Ace had any contracts, that Defendant's knew of these contracts, or that Ace was otherwise harmed. As such, Ace has failed to state a claim for intentional interference with prospective economic advantage. See e.g., Billmyer v. Plaza Bank of Commerce, 42 Cal. App. 4th 1086, 1099, 50 Cal. Rptr. 2d 119 (1995) (finding third party did not have standing for claim of intentional interference with prospective economic advantage because no claim that third party injured by defendant's conduct).

### 3. Statutory Claims

Defendant also contends that Ace lacks standing to raise the statutory claims alleged in the Complaint. In particular, MBNA notes that FCRA, the FCBA, California's Song-Beverly Act, and California's Consumer Credit Reporting Act ("CCRA") all provide a cause of action only for the account holder. For example, [HN15] the FCBA provides a claim for relief [*24] in favor of the "obligor" on the account -- i.e., Plaintiff Davis. See 15 U.S.C. § 1666. Similarly, [HN16] the liability provisions under the FCRA apply to "any consumer" of credit. 15 U.S.C. §§ 1681n; 1681o. [HN17] The Song-Beverly Act's provisions governing the obligation of credit providers expressly define a "cardholder" as "natural person to whom a credit card is issued for consumer credit purposes, or a natural person who has agreed with the card issuer to pay consumer credit obligations arising from the issuance of a credit card to another natural person." Cal. Civ. Code § 1747.02(d). Finally, [HN18] the CCRA provides

protection only for "consumers -- i.e., account holders. See Cal. Civ. Code section 1785.25. There is no allegation that Ace entered into any agreement with MBNA to obtain credit. Moreover, there is no allegation that MBNA issued any information about Ace. Consequently, the FAC fails to allege any claims on behalf of Ace. Accordingly, the Court GRANTS Defendant's motion to dismiss the claims by Ace.

### 4. Leave to Amend

The Court further finds that leave to amend would be futile. [HN19] A plaintiff may not seek leave to [*25] amend to cure deficiencies in the complaint when he cannot state a claim for relief without contradicting the allegations made in the original complaint. Stone v. Travelers Corp., 58 F.3d 434, 437 n.1 (9th Cir. 1995); Reddy v. Litton Indus., 912 F.2d 291, 296 (9th Cir. 1990) (citing Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393 at 1401). Nor may a plaintiff allege facts that do not have or are unlikely to have evidentiary support. See Fed R. Civ. P. 11(b), 11(c)(1); Warren v. Guelker, 29 F.3d 1386, 1389 (9th Cir. 1994). In this case, Ace cannot allege any facts which would be consistent with those presently pled.

### d. Davis' Claim for Lost Profits

Finally, Defendant moves to dismiss Davis' claims of lost profits. MBNA contends that Davis lacks standing to claim lost profits on behalf of Ace. The Court concurs. [HN20] Under California law, a shareholder owns only stock in a corporation, not the corporation's property. See United States v. Stone, 83 F.3d 1156, 1160-61 (9th Cir. 1996) ("Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury [*26] done to the corporation or its property by a third party.") (citations omitted); Miller v. McColgan, 17 Cal. 2d 432, 436, 110 P.2d 419 (1941) ("It is fundamental ... that the corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings. The shareholder simply has an expectancy in each ...."). Similarly, [HN21] Delaware recognizes that where the injury is suffered by the corporation through lost earnings, a shareholder may only maintain derivative shareholder suit. See Parnes v. Bally Entertainment Corp., 722 A.2d 1243 (Del. 1999). Indeed, a California appellate court has recently found that a single minority shareholder in a two-shareholder corporation lacked standing to seek economic damages based upon lost capital investment, lost earnings, and lost opportunities resulting from the corporation's lost profits. See Nelson v. Anderson, 72 Cal. App. 4th 111, 126, 84 Cal. Rptr. 2d 753 (1999). "Here, the corporation lost earnings, profits, and opportunities, rendering all the shares valueless. When the injury is to the 'whole body of stock,' the action [*27] must be derivative." Id. at 127. The appellate court acknowledged that requiring a minority shareholder file a derivative suit might give the appearance of form over substance. See id. However, the court found that the law required such a suit in that situation. See id.

Davis counters that because he is the sole shareholder and President and Chief Executive Officer of Ace, he would be entitled to a salary, bonus, or dividends if the company made a profit. On this basis, he contends he would be entitled to seek compensation based upon Ace's lost profits. While Davis is correct that the dividends become property once they have been issued, Plaintiff provides no authority that lost opportunities for Ace translate into compensable damages for Davis. Indeed, at base, Davis espouses a general policy argument that "American business would be far different" if Defendant's theory was the law. Unfortunately for Plaintiff, Defendant's theory *is* correct [HN22] as a matter of law; a shareholder cannot sue for injury suffered by the corporation even if this results in incidental injury to the shareholder. See Parnes, 722 A.2d 1243; Nelson, 72 Cal. App. 4th at 126. [*28] As such, Plaintiff lacks standing to seek damages based upon Ace's alleged lost profits. Accordingly, the Court GRANTS Defendant's motion to dismiss Davis' claims for damages arising from the lost profits allegedly suffered by Ace. Further, Plaintiff does not seek leave to amend nor does the Court find a basis to *sua sponte* grant leave.

For all of the reasons stated above, the Court GRANTS Defendant MBNA's motion to dismiss without leave to Plaintiff to amend his complaint. **III. Motion for Summary Judgment**

### 1. Legal Standard

[HN23] Under Federal Rule 56(c), summary judgment is appropriate when the Court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is warranted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The party moving for summary judgment bears the initial burden of demonstrating the "absence [*29] of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. If the movant meets this burden, the nonmoving party must come forward with specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty

2002 U.S. Dist. LEXIS 26468, *

Lobby. Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). However,

> [HN24] At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Put another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied.

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita, 475 U.S. at 586, 106 S. Ct. 1348; [*30] First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)). Inferences must be drawn in the light most favorable to the nonmoving party. See Anderson, 477 U.S. at 255, 106 S. Ct. 2505; Matsushita, 475 U.S. at 587-88, 106 S. Ct. 1348.

### 2. Discussion

Defendant moves for summary judgment on Plaintiff's remaining claims, contending that (1) the choice-of-law provision in the credit agreement bars claims arising under California law; (2) the state common law and statutory claims are preempted under Federal law; (3) Plaintiffs claims are also barred by the applicable statutes of limitations; (4) Plaintiff has failed to prove a prima facie case for his Federal statutory claims; and (5) there is no triable issue of fact concerning the claim for Intentional Infliction of Emotional Distress. Defendant also moves for summary adjudication on the issue of damages. Plaintiff opposes the motion.

**a. Choice-of-Law** There is no dispute that the Credit Card Agreement contains a choice-of-law provision. In particular, the provision states "this Agreement is made in Delaware. It is governed by the laws of the State [*31] of Delaware, without regard to its conflicts of laws principles, and by any applicable federal laws ...." (Foster Decl., Ex. C.) MBNA contends that under this agreement, Plaintiff is barred from alleging claims based upon California law. Plaintiff counters that the choice-of-law provision is unenforceable.

[HN25] A district court applies the choice-of-law rules of the state in which it sits. See Consul Ltd. v. Solide Enterprises, Inc., 802 F.2d 1143, 1146 (9th Cir. 1986) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 243 n. 8, 102 S. Ct. 252, 259 n. 8, 70 L. Ed. 2d 419 (1981)); In re Yagman, 796 F.2d 1165, 1171 (9th Cir.1986)); see also General Signal Corp. v. MCI Telecommunications Corp., 66 F.3d 1500, 1506 (9th Cir. 1995). Accordingly, this Court looks to California law to determine whether the choice-of-law provision is enforceable.

[HN26] Under California law, a choice of law provision - may be enforceable if it meets certain requirements. See Nedlloyd Lines B.V. v. Superior Court(Sea Winds Ltd.), 3 Cal. 4th 459, 465-66, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992). A court first determines either: "(1) [*32] whether the chosen state has a substantial relationship to the parties or their transactions, or (2) whether there is any reasonable basis for the parties' choice of law." Id. at 466. If either test is met, "the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law." 14. (footnote omitted).

In this case, there is clearly a reasonable basis for selecting Delaware or Federal law to resolve disputes arising out of the Credit Agreement. MBNA is a Delaware corporation which conducts business in all states. The need for uniform resolution of credit card disputes benefits both MBNA and its customers. Indeed, Plaintiff does not dispute that the choice-of-law provision is rationally based. Thus, the next question is whether a "fundamental policy of California" is implicated by the choice-of-law provision; principally, whether California's consumer protection laws are contravened by the agreement.

Defendant contends that the choice-of-law provision does not contravene any fundamental California public policies. Plaintiff counters that the [*33] choice-of-law provision implicates California's policy of protecting consumers in relation to the credit card industry. The Court finds that the choice-of-law provision does not implicate a fundamental policy of California as it relates to the State's statutory consumer protection laws. Both parties agree that California law affords credit cardholders certain rights. Under the Song-Beverly Credit Card Act, California Civil Code sections 1747, *et seq.*, consumers are entitled to certain protections including a prohibition that credit card issuers not knowingly provide false credit information and that they perform investigations under certain circumstances. See Cal. Civ. Code § 1747.70. Additionally, California's Consumer Credit Reporting Act, California Civil Code sections 1785.1 *et seq.*, limits the disclosure of information to credit reporting - agencies. See Cal. Civ. Code § 1785.25. These Acts unequivocally represent California's commitment to protect individual credit cardholders from disclosure of inaccurate information. However, this policy is not implicated by the choice-of-law provision because Federal law provides equivalent protections. n6 In fact, the [*34] Song-Beverly Act expressly indicates that its sections conform to the

2002 U.S. Dist. LEXIS 26468, *

Federal Truth in Lending Act ("TILA"), 15 U.S.C. sections 1601 et seq. The TILA, which includes both the Fair Credit Reporting Act and the Fair Credit Billing Act, provides similar protection to debtors against disclosure of inaccurate information as well as imposes certain obligations upon credit providers to investigate claims in certain situations. See 15 U.S.C. §§ 1666, 1681. Plaintiff has offered no authority or reasoned analysis indicating that the Federal protections for consumers are inconsistent with California's protections such that the choice-of-law provision is unenforceable.

> n6 Defendant represents that Delaware has no similar credit cardholder protections. The Court makes no determination whether California's statutory protections are implicated by Delaware law.

Plaintiff counters that the choice of law provision is unenforceable because the credit card agreement is a contract [*35] of adhesion. However, this argument has expressly been rejected by a recent California Supreme Court decision. See Wash. Mut. Bank v. Superior Court (Briseno), 24 Cal. 4th 906, 103 Cal. Rptr. 2d 320, 15 P.2d 1071 (2001). In Washington Mutual, the party opposing application of the choice-of-law provision argued it was unenforceable by the sole fact the agreement was a contract of adhesion. In rejecting this categorical argument, the court held that [HN27] "California ... has no public policy against enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate." Id. at 917. The court noted that "Nedlloyd's analysis contains safeguards to protect contracting parties, including consumers, against choice-of-law agreements that are unreasonable or in contravention of a fundamental California policy." Id. Thus, the mere fact that the contract is one of adhesion is not dispositive. Further, Plaintiffs reliance upon the Am. Online, Inc. v. Superior Court (Mendoza), 90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001) for a contrary conclusion is misplaced. That case dealt chiefly [*36] with whether a forum selection clause was enforceable and only briefly discussed the choice-of-law provision. The AOL court found that the laws of Virginia were inconsistent with those of California such that consumers would be deprived of protections if forced to litigate under Virginia law. See 90 Cal. App. 4th at 16. As discussed, Federal law does not contravene California's protections for credit cardholders. Thus, AOL is inapposite.

Based upon the foregoing, the Court finds that there is no triable issue of fact as to whether there is an enforceable choice-of-law provision. Accordingly, Plaintiffs claims based upon California's Song-Beverly Credit Card Act and California's Consumer Credit Reporting Act are barred by Plaintiffs credit agreement with MBNA.

### b. Preemption

Defendant argues that all of the state statutory and common law claims are preempted by Federal law, in particular the Federal Fair Credit Reporting Act ("FCRA"). Section 1681t of the FCRA governs the preemptive scope of the FCRA. That section states that as a general matter the FCRA does not preempt state laws. See 15 U.S.C. § 1681t(a). However, [*37] there are critical exceptions to this provision. Relevant is subsection (b) which provides in pertinent part,

> [HN28] No requirement or prohibition may be imposed under the laws of any State--(1) with respect to any subject matter regulated under--
>
> ***
>
> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply--
>
> (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
>
> (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996).

15 U.S.C. § 1681t(b)(1). Section 1681s-2 in turn provides the 'duties incumbent upon a furnisher of credit information. Relevant to this case are sections 1681s-2(a) and 1681s-2(b). In particular, subsection (a)(1)(A) provides that [HN29] "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Subsection [*38] (b)(1) in turn mandates that,

> [HN30] After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information

2002 U.S. Dist. LEXIS 26468, *

> provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b)(1).

Defendant contends that all of Plaintiffs common law claims as well as his claims under California's Song-Beverly Act and the CCRA are preempted under section 1681t(b)(1)(F). Plaintiff counters that his claim under the CCRA is expressly exempted from preemption and further that his remaining claims are not preempted. Neither [*39] the Ninth Circuit nor any other Circuit Court of Appeal has defined the scope of the preemption under the FCRA. However, the majority of district courts have held that [HN31] the FCRA preempts *both* state statutory and common law causes of action which fall within the conduct proscribed under section 1681s-2(1). See Aklagi v. Nationscredit Fin. Servs. Corp., 196 F. Supp. 2d 1186 at 1194-95 (D.Kan. 2002) (finding defamation claim preempted under section 1681t(b)(1)(F)); Hasvold v. First USA Bank, N.A., 194 F. Supp. 2d 1128 at 1239 (D.Wyo. 2002) (finding FCRA preempts state common law claims for defamation, invasion of privacy, and interference with prospective advantage); Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 362 (E.D.Pa. 2001) (Section 1681t(b)(1)(F) preempts Pennsylvania's Consumer Protection law); Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496, 503 (W.D. Tenn. 1999) (finding that section 1681t(b)(1)(F) preempts Tennessee's consumer protection act); see also National Home Equity Mortgage Ass'n v. Face, 64 F. Supp. 2d 584, 592 (E.D. Va. 1999) (noting in dictum that [*40] FCRA meant to preempt state law regulating consumer credit transactions); Korotki v. Attorney Servs. Corp., 931 F. Supp. 1269, 1280 (D. Mary. 1996) (noting in dictum that FCRA would preempt tort claims). Only one case has been found which has held that common law tort claims do not fall within the scope of preemption under section 1681t(b)(1)(F). See Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000) (finding that claims for negligence, defamation, and invasion of privacy "may not fairly be characterized as imposing any requirement or prohibition on persons who furnish credit" as that term is used in section 1681t(b)(1)(F)).

The Court concurs with the majority. As the district court in Jaramilo recognized,

> The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action. [*41]

Jaramillo, 155 F. Supp. 2d at 362. Indeed, the legislative history demonstrates that Congress enacted section 1681t(b)(1)(F) in order to create a uniform scheme governing the disclosure of credit information. See Kodrick v. Ferguson, 54 F. Supp. 2d 788 at 794 (N.D. Ill. 1999) (discussing legislative history of FCRA's preemption provisions). Allowing common law tort claims which implicate the same subject matter as section 1681s-2(1) would undermine Congress' intention to create a uniform system of protection for consumers. In light of the foregoing, the Court finds that section 1681t(b)(1)(F) preempts both state statutory and common law causes of action which implicate the subject matter of section 1681s-2. Thus, the question is to what extent Plaintiffs state claims fall within the subject matter of this section.

### 1.) State Statutory Claims

As already discussed, Plaintiff is barred from alleging any California state law claims by the credit agreement. Moreover, Plaintiffs claim under the Song-Beverly Act is also clearly preempted under section 1681t(b)(1)(F). Section 1747.70 under the Song-Beverly Act prohibits a card issuer from [*42] "knowingly giving any untrue credit information to any other person concerning a cardholder." Cal. Civ. Code § 1747.70(a). This section tracks the prohibitions under section 1681s-2(a). Similarly, the conduct which forms the basis of a violation of section 1747.70(b) implicates section 1681s-2(b). Accordingly, Plaintiffs claims under the section 1747.70 of California's Song-Beverly Act are also preempted under section 1681t(b)(1)(F). See e.g., Jaramillo, 155 F. Supp. 2d at 362 (finding Pennsylvania consumer protection law preempted); Carney, 57 F. Supp. 2d at 503 (same with regard to Tennessee).

Defendant also contends that Plaintiffs claim under the CCRA is preempted. Defendant concedes that claims under section 1785.25(a) of the CCRA are expressly exempted from preemption under the FCRA. See 15 U.S.C. § 1681t(b)(1)(F)(ii). That section of the CCRA prohibits furnishing information to a credit reporting

Case 3:03-cv-00873-RNC   Document 74-5   Filed 08/18/2004   Page 9 of 13

Page 14
2002 U.S. Dist. LEXIS 26468, *

agency if the provider knows or should know the information is incomplete or inaccurate. See Cal. Civ. Code § 1785.25(a). However, MBNA argues that while a claim under section 1785.25(a) is not preempted, the remedies [*43] for a violation of that section are preempted. For example, section 1785.25(g) mandates liability for a violation of section 1785.25(a) and section 1785.31 authorizes a private right of action. Cal. Civ. Code § 1785.25(g); § 1785.31. Defendant contends that because these provisions are not expressly exempted under section 1681t(b)(1)(B)-(F)(i), the remedial provisions for a violation of section 1785.25(a) are preempted. Another Court in this district has agreed with this reasoning. See Quigely v. Pennsylvania Higher Edu. Assist. Agency, 2000 U.S. Dist. LEXIS 19847, 2000 WL 1721069 (N.D. Cal. Nov. 8, 2000). The Court need not resolve this issue, however, because it is clear that under California, Plaintiff may not state a claim against a furnisher of information for a violation of section 1785.25(a). The California appellate court in Pulver v. Avco Financial Servs., 182 Cal. App. 3d 622, 633, 227 Cal. Rptr. 491 (1986), stated that [HN32] section 1785.31, which authorizes a private right of action for a violation of section 1785.25, "does not extend liability to one who furnished information to a credit reporting agency." Thus, Plaintiff cannot allege any claims against MBNA under [*44] section 1785.25(a).

### 2.) Common Law Tort Claims

The Court finds that the claims for negligence, defamation, and intentional interference with economic advantage are also preempted. The basis for each of these claims is that MBNA failed to comply with the Federal and California statutes which govern the furnishing of credit information and investigation of complaints. For example, Plaintiff bases his negligence claim on the fact that MBNA breached its statutory duties which directly and proximately caused harm to him -- i.e., MBNA failed to properly investigate the alleged inaccurate information disclosed to a credit reporting agency. (FAC, P 38). He also contends that MBNA knowingly and intentionally disregarded Plaintiffs rights in disclosing the information. (FAC, P 39). This is the precise conduct which is proscribed under section 1681s-2(a)-(b) and thus is preempted under section 1681t(b)(1)(F). Similarly, the claims for defamation and intentional interference with economic advantage arise from Plaintiffs claims that MBNA improperly disclosed inaccurate credit information. (FAC, PP 41-42, 46-471) As such, these claims too are preempted under the FCRA. See Aklagi, 196 F. Supp. 2d at 1194-95 [*45] (defamation claim preempted under FCRA); Hasvold, 194 F. Supp. 2d at 1238-39 (defamation claim and intentional interference with prospective economic advantage preempted under section 1681t(b)(1)(F)). n7

n7 Because Plaintiffs common law claims are clearly preempted under the FCRA, the Court does not reach Defendant's argument that they are also preempted under California Uniform Commercial Code section 4406(f).

Plaintiff counters that his claims for negligence and defamation are expressly authorized under 15 U.S.C. section 1681h(e). That section provides that,

> [HN33] No consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure each consumer.

15 U.S.C. § 1681h(e) [*46] . However, as discussed, conduct which falls within sections 1681s-2(a)(1)(A)-(B) is preempted. Thus, section 1681h(e) only applies to conduct which is not governed by section 1681s-2(a)(1)(A)-(B). See Aklagi, 196 F. Supp. 2d at 1194-95; see also Jaramillo, 155 F. Supp. 2d at 361-62 (finding that section 1681h(e) was superseded by 1997 amendments adding section 1681t(b)(1)(F) which was meant to "eliminate all state causes of action 'relating to the responsibilities of persons who furnish information to consumer reporting agencies.'"). In this case, Plaintiffs allegations for negligence, and defamation are clearly based on MBNA's failure to investigate his complaints of inaccurate statements which were furnished to the credit reporting agencies. This conduct is governed by section 1681s-2(a)(1)-(b), not section 1681h(e), and is thus preempted under section 1681t(b)(1)(F).

The only common law claim which is not preempted is the claim for intentional infliction of emotional distress. Plaintiff alleges that he suffered emotional distress resulting from the disclosure of the information and because an employee of MBNA allegedly called him a "liar." To the extent [*47] the intentional infliction of emotional distress claim relies upon the improper disclosure of information, this claim is preempted under section 1681t(b)(1)(F) for the reasons stated above. However, the allegation that an agent of MBNA called Plaintiff a liar is not covered by section 1681s-2(a). Thus, because the intentional infliction of emotional distress claim is also based on MBNA's alleged insult to Plaintiff, it is not preempted.

Based upon the above, the Court finds that Plaintiff has only alleged viable claims for violation of the FCBA,

Case 3:03-cv-00873-RNC    Document 74-5    Filed 08/18/2004    Page 10 of 13

Page 15
2002 U.S. Dist. LEXIS 26468, *

the FCRA, and intentional infliction of emotional distress. Plaintiffs remaining claims are preempted under the FCRA. Defendant moves for summary judgment on these claims contending that Plaintiff has failed to demonstrate a triable issue of fact.

### c. Federal Statutory Claims

Plaintiff alleges a claim under the Federal Credit Billing Act and the Federal Fair Credit Reporting Act. However, based upon the evidence presented, both of these claims fail as a matter of law.

### 1.) FCBA Claim

[HN34] The Federal Credit Billing Act generally requires that a credit provider investigate claims of a billing error and verify the accuracy [*48] of a credit card statement. See 15 U.S.C. § 1666; see also Am. Express Co. v. Koerner, 452 U.S. 233 at 236, 101 S. Ct. 2281, 8 L. Ed. 2d 802 (1981). However, this obligation is only triggered once the consumer sends written notice of the alleged error. 15 U.S.C. § 1666(a); see also Dawkins v. Sears Roebuck & Co., 109 F.3d 241, 243 (5th Cir. 1997). Moreover, the written notice must be received by the credit provider within sixty days of the creditor's transmission of the allegedly erroneous credit card statement. 15 U.S.C. § 1666(a); see also Dawkins, 109 F.3d at 243. Further, pursuant to the Code of Federal Regulations, the sixty-day period begins to run "after the creditor [has] transmitted the *first* period statement that reflects the alleged billing error." 12 C.F.R. § 226.13(b)(1) (emphasis added).

Under section 1666(b)(1), a billing error includes charges assigned to an account which the account holder did not make. Accordingly MBNA's assignment of the $ 3000 charge to Davis' account, based upon a check Davis contends was forged constitutes [*49] a billing error. MBNA sent the statement reflecting this alleged error to Davis on April 19, 1997. Thus, to trigger a duty to investigate, Davis needed to have sent MBNA *written* notice of the error by June 19, 1997. However, Davis admitted at his deposition that he contacted MBNA only by telephone to dispute the charges. (Davis Depo., 251-52.) Moreover, he does not remember the date; MBNA contends the date was June 25, 1999. (Foster Decl., P 11.) Plaintiff also conceded that it was not his custom to review his statements for accuracy. (Davis Depo., 91:2-17.) Ultimately, Davis has submitted no proof that he sent a written statement to MBNA disputing a charge before June 19, 1997. Thus, Davis has failed to demonstrate that MBNA's obligation to investigate was triggered. n8

---

n8 The Song-Beverly Act similarly mandates that a furnisher shall be liable for failing to investigate under section 1747.70(b) only if the credit cardholder has made a written inquiry within sixty days of the credit provider's transmission of the first statement containing the alleged error. See 1747.02(g). Thus, any claim under section 1747.70(b) is also a barred.

[*50]
Additionally, [HN35] under 15 U.S.C. section 1640(e), the statute of limitations for a violation of section 1666(a) is one year from the date of the alleged violation, subject to equitable tolling in certain circumstances. See King v. California, 784 F.2d 910, 915 (9th Cir. 1986). The violation occurred in April of 1997 and Davis did not file his complaint until October of 2000, well beyond the statute of limitations. Davis has not offered any reason the statute should be equitably tolled. In fact, it appears that the reason the error was not discovered sooner was that Davis does not regularly review his monthly statements. Moreover, even if the Court were inclined to toll the statute until he allegedly discovered the error, his claim is still barred. Davis inconsistently represents the date when he discovered the error: in his FAC he alleges he discovered the error in the Fall of 1997. (FAC P 6.) However, Davis now declares that he did not realize there was an error with the $ 3000 charge until May of 1999. (Davis Decl,. P 13.) n9 Assuming the latest date is correct, the FCBA claim is still untimely. Based upon the foregoing, the Court finds there [*51] is no triable issue of fact that MBNA violated section 1666 and/or that the claim was timely filed. Accordingly, Plaintiffs claim under the Federal Credit Billing Act fails as a matter of law.

---

n9 Davis avers that he sent Defendant written notice on June 18, 1999 demanding an investigation. (Davis Decl., P 13). In support, he has attached the letter purportedly sent. However, this letter was not produced to Defendant during discovery. Accordingly, Defendant objects to this document. Because it was not produced during discovery, the Court SUSTAINS Defendant's objection and excludes this document. See Workman v. Frito-Lay, Inc., 165 F.3d 460, 466 (6th Cir. 1999); see also Fed.R.Civ.P. 26(a), 37(c)(1). Moreover, even if the Court were to consider this document, it is dated June 18, 1999, which is well beyond the sixty-day window under section 1666(a).

### 2.) FCRA Claim

As noted above, the FCRA imposes potential liability upon a credit provider in two situations: if it furnishes to [*52] a credit reporting agency information it knows to be inaccurate or if it fails to conduct an

2002 U.S. Dist. LEXIS 26468, *

investigation after it has been notified by a credit reporting agency that the specific information is inaccurate. 15 U.S.C. § 1681s-2(a)-(b). [HN36] The FCRA expressly provides that there is no private right of action for a violation of section 1681s-2(a). 15 U.S.C. § 1681s-2(d). Rather, that section is enforced exclusively by Federal and State officials. Id. There is a private right of action against a provider of credit under section 1681s-2(b). See Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059-60 (9th Cir. 2002). However, the Ninth Circuit has recognized that section 1681s-2(b) includes a "filtering mechanism" which requires that a "disputatious consumer notify a credit reporting agency" and the credit reporting agency in turn notify the provider of credit. Id. at 1060. The duty to investigate is "triggered only after the furnisher receives notice of the dispute from a consumer reporting agency, not just the consumer." Aklagi, 196 F. Supp. 2d at 1193 (citations omitted). [*53]

In this case, Plaintiff has failed to present any admissible evidence that (1) he notified a credit reporting agency of his claims; and more importantly, (2) that the credit reporting agency notified MBNA of the dispute. Davis has submitted two letters purportedly sent to the credit reporting agencies alleging a billing error. The letters were purportedly sent on February 23, 1998, and September 21, 1999 respectively to the Equifax and "CBI" credit reporting agencies. (Davis Decl., P 14; Exs. J, K.) However, counsel for Plaintiff candidly admits that these documents were not produced during discovery. n10 Moreover counsel states that he "can neither confirm nor deny the authenticity of the documents" and Davis has not authenticated them either. (Kohl Decl., P 6.) Based upon Plaintiffs counsel's own admission, these documents are inadmissible. See Fed.R.Civ.P. 56(e).

> n10 Defendant objects to these documents. Because they were not produced during discovery, the Court SUSTAINS Defendant's objection and excludes the documents. See Workman, 165 F.3d at 466; see also Fed.R.Civ.P. 26(a), 37(c)(1).

[*54]

More importantly, even were the Court to consider the documents, they merely indicate that Plaintiff complained to credit reporting agencies. It is only *after* these agencies in turn notify the credit provider that the duty to investigate is triggered. Plaintiff has provided no evidence that any credit reporting agency ever contacted MBNA about the alleged billing error. He contends that because the credit reporting agencies were required to notify MBNA of these complaints, the Court should presume that MBNA received notice. However, Plaintiff has presented no authority that the Court may presume an essential element of a claim under section 1681s-2(b) based upon Plaintiffs unsupported statement that a credit agency must notify a furnisher of credit upon receipt of a consumer's complaint. Rather, the Court finds that because there is no triable issue of fact that MBNA received notice from a credit reporting agency, Plaintiffs claim against MBNA under the Fair Credit Reporting Act fails as matter of law.

### d. Intentional Infliction of Emotional Distress

Defendant also moves for summary judgment on Plaintiffs claim for intentional infliction of emotional distress. It [*55] contends that Plaintiff has failed to present sufficient evidence that there was outrageous conduct. The Court agrees.

[HN37] The elements for a claim of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous - conduct." Ess v. Eskaton Properties, Inc., 97 Cal. App. 4th 120, 129, 118 Cal. Rptr. 2d 240 (2002) (citing Cervantez v. J.C. Penney Co., 24 Cal. 3d 579, 593, 156 Cal. Rptr. 198, 595 P.2d 975 (1979)); see also Cummings v. Pinder, 574 A.2d 843, 845 (Del. 1990) (recognizing tort of intentional infliction of emotional distress as presented in Restatement (Second) of Torts § 46(1) (1965)). "Conduct, to be '"outrageous"' must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." Trerice v. Blue Cross of Cal., 209 Cal. App. 3d 878, 883, 257 Cal. Rptr. 338 (1989) (citing Fowler v. Varian Associates, Inc., 196 Cal. App. 3d 34, 44, 241 Cal. Rptr. 539 (1987)); [*56] see also Mattern v. Hudson, 532 A.2d 85, 85-86 (Del. Super. 1987). "While the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact the court may determine in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Trerice, 209 Cal. App. 3d at 883 (citations omitted); Mattern, 532 A.2d at 86.

Plaintiffs intentional infliction of emotional distress claim is based on the allegation that an MBNA employee called Plaintiff a "liar" on two occasions. (Davis Decl., P 13.; Davis Depo., 229:9-21; 272:7-14.) n11 However, [HN38] mere insults, without more, are insufficient as a matter of law to allege a claim of intentional infliction of emotional distress. See Cole v. Fair Oaks Fire Prot. Dist., 43 Cal. 3d 148, 155, n.7, 233 Cal. Rptr. 308, 729 P.2d 743 (1987) (citing *inter alia,* Rest.2d Torts, § 46, com. d.)). For example, in Yurick v. Superior Court (Antonetti), the California appellate court found that defendant's comments to plaintiff that he was senile and a liar were not "so egregiously [*57] outside the realm

of civilized conduct as to give rise to actionable infliction of mental distress." 209 Cal. App. 3d 1116, 1129, 257 Cal. Rptr. 665 (1989). The two accusations that Davis is a liar, no matter how unfounded they may be, are not so "extreme" as to be beyond the bounds of that normally tolerated in civilized society. See Yurick, 209 Cal. App. 3d at 1129. For these reasons, the Court finds there is no triable issue of fact that MBNA's conduct was outrageous such that Plaintiffs claim of intentional infliction of emotional distress fails as a matter of law.

> n11 As a result, Davis alleges he suffered emotional distress which was manifested in an upset stomach and "a little anxiety." He also sometimes would break out in sweats. (Davis Depo., 236:7-239:1.) However, Plaintiffs doctor stated that Plaintiffs upset stomach began prior to alleged discovery of the billing error in 1998 and that his stomach problems were associated with eating foods late at night, particularly "grease, pizza, pepper, and especially hot pepper, and pork." (Weickhardt Decl., Ex. O, 10:17-24.)

[*58]

### e. Claims for Negligence. Defamation, and Intentional Interference with Prospective Economic Advantage

Finally, although Plaintiffs remaining claims for negligence, defamation, and intentional interference with prospective economic advantage are preempted by the FCRA, the Court finds that those claims fail in any event. Plaintiffs negligence claim is predicated upon MBNA's alleged breach of the duties imposed by the FCRA and the FCBA. In support of its claim, Plaintiff relies chiefly upon Bruce v. First U.S.A. Bank, 103 F. Supp. 2d 1135 (E.D.Mo. 2000) (finding triable issue as to whether bank was negligent in investigating claims after receiving notification from credit reporting agency of consumer complaint). However, as discussed above, there is no triable issue of fact that MBNA violated either statute; it did not receive a timely complaint from Davis or a credit reporting agency which would trigger the duty to investigate and, as discussed below, there is no evidence that MBNA disclosed false information. Thus, Plaintiffs claim for negligence necessarily must fail.

Similarly, Plaintiff has failed to present evidence creating an issue of triable fact [*59] concerning his claim of defamation. MBNA has provided evidence that it charged $ 3,000.00 to Davis' account based upon a convenience check bearing his signature. (Weickhardt Decl., P 14). Although Plaintiff now contends that check was stolen and his signature was forged, he has presented no argument nor evidence that MBNA erred in charging the $ 3,000.00 to his account in April of 1997. Indeed, the charge was removed merely as a courtesy to Davis. (Foster Decl., P 13.) More importantly, MBNA has also provided evidence that after completing its investigation -- under which it was under no legal duty to perform -- it removed the $ 3,000.00 charge and all finance and late-fees based upon that. charge, and that it "re-aged" the account, i.e., removed any delinquent payments associated with the charge from report issued to the credit reporting agency. (Foster Decl., PP 13-14). As a result, *any report issued after the re-aging would not have indicated any delinquent payment related to the $ 3,000.00*. Plaintiff has offered no evidence rebutting this fact nor does he identify any false information concerning his accounts with MBNA. n12 Consequently, there is no triable issue of fact as [*60] to whether MBNA published false information and Davis' defamation claim fails as a matter of law.

> n12 Plaintiff has presented two documents purporting to be credit history reports. (Ex. M.) However, MBNA objects to consideration of these documents as neither has been authenticated. The Court SUSTAINS this objection. See Fed.R.Civ.P. 56(e). More importantly, the evidence in these documents is *consistent* with the evidence presented by MBNA. In particular, MBNA has introduced evidence that Davis was five days late fourteen times, thirty days late nine times, and failed to make any payment at all thirteen times. (Foster Decl., P 5, Appendices 1-4; Exs. D, F, H, I.) This information is also provided in the reports and Davis has presented no evidence rebutting this information. Additionally, Davis' conclusory statements that inaccurate evidence was reported lack foundation and otherwise are insufficient to create a triable issue of fact. See Fed.R.Evid. 701; Hansen v. United States, 7 F.3d 137, 138 (9th Cir.1993) (conclusory allegations in declaration unsupported by evidentiary facts did not create a triable issue of fact).

[*61]

Finally, Plaintiff has failed to present evidence concerning a necessary element of a claim for intentional interference with prospective economic advantage: that MBNA knew that Plaintiff had existing or prospective contracts. See Maheu 201 Cal. App. 3d at 667; McHugh, 100 F. Supp. 2d at 247 n. 15. The only evidence Davis submits are apparent proposed contracts with various companies by which Ace would agree to collect the debts owed to those companies. (Ex. T.) However, there is no evidence nor argument that MBNA was aware of these proposed contracts. Thus, there is no triable issue that Plaintiff intentionally interfered with any prospective

2002 U.S. Dist. LEXIS 26468, *

economic advantage. n13

> n13 Because the Court finds that summary judgment is appropriate on all of Plaintiffs claims, it is unnecessary to reach Defendant's argument that Plaintiff has not created a triable issue of fact as to damages. Additionally, unless otherwise indicated above, the Court OVERRULES as moot Defendant's objections to evidence as the Court has not relied upon the evidence which forms the basis of Defendant's objections because it was irrelevant to the issues presented.

[*62]

## IV. Conclusion

The undisputed evidence demonstrates that Plaintiff was regularly delinquent on paying his MBNA account and that it was only when he exceeded his credit limit and MBNA finally blocked his account that he "discovered" a fraudulent charge against his account nearly over two years earlier. After an investigation, MBNA removed this charge as a courtesy to Davis. The credit reports were duly updated to reflect this chance. As a result, no false information was ever reported to anyone. In a futile and frivolous effort to oppose Defendant's motions, Plaintiff relies upon unauthenticated documents, many of which were never produced in discovery, conclusory allegations which lack any foundation or evidentiary support, and legal analysis which often fails to cite to relevant authority. Such evidence and argument warrants little consideration and, in any event, does not present a basis for denying Defendant's motions. Rather, for all of the reasons stated above, the Court GRANTS Defendant's motion to dismiss and motions for summary judgment.

IT IS SO ORDERED.

Dated: 6-18-02

SAUNDRA BROWN ARMSTRONG

United States District Judge

No. C 00-04191 SBA

**JUDGMENT** [*63]

In accordance with the Court's Orders of April 22, 2002 and June 19, 2002, granting Defendant's motions for summary judgment, IT IS HEREBY ORDERED that final judgment is entered in favor of Defendant Maryland Bank, N.A. for the amount of $10,797.31, plus interest at a rate of 22.98% from November 17, 2000 to the present, and that Plaintiff David M. Davis shall take nothing from this matter and Defendant shall recover its costs.

IT IS SO ORDERED.

Dated: 6-19-02

SAUNDRA BROWN ARMSTRONG

United States District Judge