# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d

2001 WL 1762626 (E.D.Pa.)

**(Cite as: 2001 WL 1762626 (E.D.Pa.))**

Page 1

▷

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Luis A. JARAMILLO Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.
and NATIONAL CITY BANK Defendants.

**No. CIV.A.00-CV-5876.**

June 20, 2001.

ORDER

GILES, C.J.

**\*1** AND NOW, this 20th day of June, 2001, upon consideration of Plaintiff Luis A. Jaramillo's Motion for Reconsideration of the Court's Order entered on May 23, 2001 dismissing, among other things, Count IV of Plaintiff's Complaint, and Defendant National City Bank's response thereto, it is hereby ORDERED that Plaintiff's Motion for Reconsideration is GRANTED and that Count IV of Plaintiff's Complaint shall STAND.

2001 WL 1762626 (E.D.Pa.)

Motions, Pleadings and Filings (Back to top)

• 2:00CV05876                Docket)

(Nov. 17, 2000)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT G

Westlaw.

Slip Copy                                                              Page 1
2004 WL 1559370 (D.Minn.)
**(Cite as: 2004 WL 1559370 (D.Minn.))**

**C**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.


United States District Court,
D. Minnesota.

Bradley MALM, Plaintiff,
v.
HOUSEHOLD BANK (SB), N.A., Sherman
Financial Group LLC d/b/a Sherman
Acquisitions, Trans Union LLC, and Experian
Information Solutions, Inc.,
Defendants.

**No. Civ. 03-4340ADMAJB.**

July 7, 2004.

John H. Goolsby, Little Canada, MN, for and on
behalf of Plaintiff.

Michael S. Poncin, Moss & Barnett, Minneapolis,
MN, for and on behalf of Defendant Sherman
Financial Group LLC d/b/a Sherman Acquisitions.


MEMORANDUM OPINION AND ORDER

MONTGOMERY, J.

I. INTRODUCTION

*1 Defendant Sherman Financial Group LLC's
("Sherman") Motion to Dismiss or Alternatively for
Summary Judgment [Docket No. 32] was argued
before the undersigned United States District Judge
on April 30, 2004. Plaintiff Bradley Malm
("Plaintiff") asserts claims under the Fair Debt
Collection Practices Act ("FDCPA") and the Fair
Credit Reporting Act ("FCRA"), and additionally
maintains a claim for credit defamation. For the
reasons explained below, Sherman's Motion is denied
in part and granted in part.

II. BACKGROUND

This lawsuit resulted from Plaintiff's attempt to
correct a mistake in his credit report. [FN1] In
January 1995, Plaintiff's wife, Cheryl Malm, opened

a joint Best Buy credit card account in both her own
and Plaintiff's names. *See* Corrected Am. Compl. ¶ 7
[Docket No. 26]. [FN2] Ms. Malm apparently signed
Plaintiff's name on the credit card application without
his consent or knowledge, and Plaintiff never saw a
copy of the application until after initiating litigation.
*See* Malm Aff. ¶ 6; *see also* Expert Report of Karen
S. Runyon at 3 (Goolsby Aff. Ex. B). The credit card
bills were addressed to Cheryl Malm only. *See* Best
Buy credit card bill of 6/23/99 (Corrected Am.
Compl. Ex. 1). Defendant Household Bank
("Household") financed the Best Buy card. Corrected
Am. Compl. ¶ 7.

> FN1. For purposes of the instant Motion, the
> facts are viewed in the light most favorable
> to Plaintiff, the nonmoving party *See*
> *Ludwig v. Anderson,* 54 F.3d 465, 470 (8th
> Cir.1995).

> FN2. Plaintiff filed two pleadings labeled
> "Amended Complaint with Jury Trial
> Demand" in this case. *See* Am. Compl.
> [Docket No. 25]; Corrected Am. Compl.
> [Docket No. 26]. Nothing in the Federal
> Rules of Procedure or the Local Rules
> allows parties to amend pleadings in this
> manner, and this mode of altering the
> Complaint should not be attempted again.
> However, for the purposes of this Motion,
> the Court adopts the "Corrected Amended
> Complaint" nomenclature and recognizes
> the pleading at Docket Number 26 as the
> operative complaint.


Plaintiff and Cheryl Malm divorced in July 1996.
Corrected Am. Compl. ¶ 9. Plaintiff learned of the
Best Buy card's existence in April 1998 after he tried
to obtain a motorcycle loan. *Id.* ¶ 10. Ms. Malm had
failed to make payments on the card, and the
Household account tradeline was listed on Plaintiff's
credit report under the "Adverse Account
Information" section. *See* Trans Union Credit Report
of 03/31/03 (Goolsby Aff. Ex. J). Both Plaintiff and
his ex-wife informed Household that Plaintiff should
not be listed on the account. *See* Household
collection notes at 04/09/98 entry, 10/10/00 entry
(Goolsby Aff. Ex. C). Plaintiff also contacted Best
Buy about the mistake, but was told that the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Household account would remain on his credit report until either he or his ex-wife paid the balance due. Corrected Am. Compl. ¶ 11.

In March 2000, Plaintiff obtained a copy of his credit report and noticed that the Household account tradeline was absent. *Id.* ¶ 12. Consequently, he believed that his ex-wife had paid off the account. Instead, the debt had been discharged as the result of Cheryl Malm filing for Chapter 7 bankruptcy during this period. *Id.* ¶¶ 12-13.

Credit agencies began contacting Plaintiff about the Household account starting in October 2000, and he contested the debt with them. *Id.* ¶¶ 14-15. Sherman acquired the Best Buy credit card debt from Household on November 20, 2000. *Id.* ¶ 15; Sherman collection notes (Goolsby Aff. Ex. D). Plaintiff disputed his responsibility for the account with Sherman on several occasions, and requested a copy of the Best Buy credit card application multiple times. [FN3] *See* Malm Aff. ¶¶ 1-4, 6; Letter from Malm to Scott of 07/30/01 (Corrected Am. Compl. Ex. 2). In July 2002, Plaintiff also contested the Best Buy debt with Receivables Management Solutions ("RMS"), a collection agency that attempted to recover the account for Sherman. Malm Aff. ¶ 5; Letter from Malm to Dunham of 07/22/02 (Malm Aff. Ex. A). He asked RMS for a copy of the Best Buy application but never received one. *Id.*

> FN3. The parties disagree whether Plaintiff disputed the Best Buy debt directly with Sherman. However, the Court views the facts in Plaintiff's favor because he is the non-moving party. *See Ludwig,* 54 F.3d at 470.

*2 In November 2002, Plaintiff disputed the Household and Sherman tradelines on his credit report with Defendant Trans Union LLC ("Trans Union") and other credit reporting agencies. *See* Request for Investigation Form (Rossman Aff. Ex. 1). In response, Trans Union sent Sherman a Consumer Dispute Verification Form ("CDV"). *See* CDV Form (Rossman Aff. Ex. 2). Part one of the CDV requires Sherman to "[c]heck the corresponding Same box for each item that is identical to your records." *Id.* (emphasis in original). It explains additionally, "[i]f any of this information on the left is incorrect, write the corrections in the boxes on the right." The information to be verified includes Plaintiff's name, current and previous addresses,

social security number and date of birth. Under the "Consumer States/Comments" section, the CDV says "Not his/hers," and states further "Provide complete ID." *Id.* Sherman completed the CDV and confirmed that the data about Plaintiff matched Sherman's records. *Id.*

The Household and Sherman tradelines remained on Plaintiff's credit reports through the spring of 2003, and Plaintiff continued to request their removal. Trans Union Credit Report of 03/31/03 (Goolsby Aff. Ex. J). Defendant Experian Information Solutions, Inc. ("Experian") removed the Sherman tradeline in April 2003, and Trans Union deleted it in June 2003. Experian Correction Summary (Corrected Am. Compl. Ex 8); Corrected Am. Compl. ¶¶ 25-26. Plaintiff initiated litigation on July 29, 2003.

Sherman made Plaintiff an offer of judgment ("Offer") under Rule 68 on November 6, 2003, offering to pay Plaintiff $1001, plus attorney fees and costs for Plaintiff's FDCPA claim, if Plaintiff dismissed all of its claims against Sherman. Sherman Offer of Judgment of 11/06/03 ¶¶ 1-3 (Rossman Aff. Ex. 3). Plaintiff did not respond to Sherman's offer, and Sherman subsequently filed the present Motion.

## III. DISCUSSION

Sherman now moves for dismissal, or alternatively, for summary judgment. Because both Sherman and Plaintiff rely on materials outside of the pleadings, the Court treats this motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Ludwig,* 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v.*

Slip Copy
2004 WL 1559370 (D.Minn.)
**(Cite as: 2004 WL 1559370 (D.Minn.))**

*County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995).

## B. Plaintiff's FDCPA Claim

**\*3** Sherman argues that Plaintiff's FDCPA action fails as a matter of law because Plaintiff rejected its Rule 68 Offer of November 2003, which Sherman contends would have mooted the FDCPA claim. In Sherman's view, Plaintiff had no stake remaining in the FDCPA claim and the Court lacked subject matter jurisdiction over the matter. Plaintiff asserts that the Offer did not moot the FDCPA action because it required him to dismiss all of his claims against Sherman, but limited compensation to the FDCPA claim.

Rule 68 authorizes a defendant to make an offer of judgment to an adverse party allowing the court to enter judgment in the plaintiff's favor. *See* Fed.R.Civ.P. 68. While not specified in Rule 68, "many courts have held that a valid offer of judgment that would satisfy a plaintiff's entire claim for relief eliminates the controversy between the parties and leaves nothing for the court to resolve, effectively mooting the action and removing jurisdiction ." *Jones v. CBE Group, Inc.,* 215 F.R.D. 558, 562 (D.Minn.2003) (Doty, J.); *see also Rand v. Monsanto Co.,* 926 F.2d 596, 598 (7th Cir.1991); *Zimmerman v. Bell,* 800 F.2d 386, 390 (4th Cir.1986); *Abrams v. Interco Inc.,* 719 F.2d 23, 32-34 (2d Cir.1983). Because there is no actual case or controversy to adjudicate, courts lack subject matter jurisdiction over claims mooted by Rule 68 offers of judgment, where the plaintiff no longer has an interest in the litigation. *See* U.S. Const. Art. III § 2 (limiting judicial power to cases or controversies); *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 395 (1980) (holding same); *Powell v. McCormack,* 395 U.S. 486, 496 (1969) (deeming an action moot when a party no longer has a stake in the matter).

Sherman's Rule 68 Offer did not render Plaintiff's FDCPA claim moot under this standard. Sherman correctly states that its Offer of $1001, plus attorney fees and costs for Plaintiff's FDCPA claim, constitutes the maximum statutory recovery for violations of the FDCPA. *See* 15 U.S.C. § 1692k; Offer ¶¶ 1-2. Consequently, Sherman's Offer would have mooted Plaintiff's FDCPA claim had it required dismissal of that claim only. *See Jones,* 215 F.R.D. at 562. However, acceptance of the offer required Plaintiff to dismiss all of his claims, including those asserted under FCRA and state law. *See* Offer ¶¶ 1, 3. Sherman's Offer did not render the FDCPA claim moot because it did not satisfy Plaintiff's entire claim.

Therefore, dismissal of Plaintiff's FDCPA claim is not warranted.

Sherman also argues that the statute of limitations bars Plaintiff's FDCPA claim. FDCPA actions must be filed within one year of an alleged violation. *See* 15 U.S.C. § 1692k. Plaintiff filed his initial Complaint on July 29, 2003, and filed the Amended Complaint on November 21, 2003, adding his FDCPA claim. *See* Compl. at 1 [Docket No. 1]; Am. Compl. at 1 [Docket No. 25]. Thus, the allegedly unlawful activity underlying Plaintiff's FDCPA claim must have occurred on or after July 29, 2002, given the one year statute of limitations period. *See* 15 U.S.C. § 1692k.

**\*4** Based on the allegations in the Corrected Amended Complaint, the statute of limitations does not prohibit Plaintiff's FDCPA claim. Sherman stresses that according to the Corrected Amended Complaint, Sherman "continued its illegal collection campaign until August 2001," and that these activities form the basis of Plaintiff's FDCPA claim. *See* Corrected Am. Compl. ¶ 17. Thus, in Sherman's view, Plaintiff should have filed his FDCPA claim by August 2002. However, the Corrected Amended Complaint states that Sherman's "fail[ure] to report the Plaintiff's dispute to the credit reporting agencies" constitutes the FDCPA violation, and that this behavior continued through March 2003. *See id.* ¶ 18. Because Plaintiff asserted his FDCPA claim before March 2004, it is not time-barred. *See* 15 U.S.C. § 1692k. Therefore, Sherman's Motion for Summary Judgment is denied as to Plaintiff's FDCPA claim.

## B. Plaintiff's FCRA Claim

Sherman also moves for summary judgment on Plaintiff's claim for violation of the FCRA, arguing that it complied with the FCRA's requirements. Under the FCRA, entities that furnish information to consumer reporting agencies, called furnishers, must investigate disputed accounts after receiving notice from consumer reporting agencies. *See* 15 U.S.C. § 1681s-2(b)(1). Upon being given notice as described in § 1681i(2)(A), furnishers must: (1) investigate the disputed information; (2) review all relevant information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; and (4) report conclusions that the information was incomplete or inaccurate to other consumer reporting agencies to which the furnishers provided information. *Id.* While the FCRA does not specify the type of investigation

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

required, courts presented with this issue have held
that § 1681s-2(b)(1) compels furnishers "to conduct
a reasonable investigation of their records to
determine whether the disputed information can be
verified." *Johnson v. MBNA Am. Bank, N.A.,* 357
F.3d 426, 431 (4th Cir.2004); *see also Olwell v. Med.
Info. Bureau,* No. Civ. 01-1481, 2003 WL 79035, at
*5 (D.Minn. Jan. 7, 2003) (Tunheim, J.). To meet this
standard, furnishers may need to consult underlying
documents such as account applications, rather than
simply reviewing data in computerized customer
information systems. *Johnson,* 357 F.3d at 431.

Plaintiff argues that the question of whether
Sherman's investigative procedures were reasonable
creates issues of fact best left to the jury. He also
asserts that Sherman should have reviewed a copy of
the credit card application to determine if the account
actually belonged to Plaintiff. However, § 1681s-
2(b) does not require furnishers to investigate
disputes until they receive notice from a consumer
reporting agency. *See* 15 U.S.C. § § 1681i(a)(2)(A),
1681s-2(b)(1). Therefore, the Court must first decide
whether Sherman received sufficient notice from
Trans Union before analyzing the reasonableness of
Sherman's investigation.

**\*5** The CDV form Trans Union sent to Sherman
does not identify the basis of Plaintiff's dispute
concerning the Best Buy card. The instructions on the
CDV form ask Sherman to verify Plaintiff's name, address,
previous address, social security number and birth
date, and to confirm other basic account information.
*See* CDV form. Additionally, the CDV form states
"Not his/hers. Provide complete ID," in a box labeled
"Consumer States/Comments." *Id.* The CDV form
does not specify that Plaintiff believed the account
belonged to his ex-wife only, or that she forged his
signature to open it. Consequently, unlike the
furnisher in *Johnson* who received specific notice
about the consumer's dispute, Sherman was not given
a complete explanation of Plaintiff's concerns. *See
Johnson,* 357 F.3d at 429 (holding that furnisher
received notice of the specific dispute from
statements "Consumer states belongs to husband
only" and "Was never a signer on account. Was an
authorized user"). Sherman merely learned that
Plaintiff disputed the account in some way, and that
Trans Union requested confirmation of Plaintiff's
background data.

Sherman's investigation under § 1681s-2(b) was
reasonable given the cursory notice it received
concerning Plaintiff's dispute. Following the
instructions on the CDV form, Sherman verified that

Plaintiff's personal information matched its records,
and updated the account balance. *See* CDV form.
Sherman apparently did not review the actual
application. The cryptic "Not his/hers" did not notify
Sherman that additional inquiry was necessary. *Id.*
While specific notice of Plaintiff's concerns could
have compelled Sherman to conduct a more thorough
review, thus creating an issue of "reasonableness" for
the jury, a more rigorous investigation was not
required here based on the superficial notice that
Trans Union provided. *See* 15 U.S.C. § 1681s-
2(b)(1); *Johnson,* 357 F.3d at 431 (holding that §
1681s-2(b)(1) requires furnishers to investigate
disputes only after receiving adequate notice); *Young
v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631,
640-41 (5th Cir.2002) (holding same). Therefore,
summary judgment is granted on Plaintiff's FCRA
claim.

C. Plaintiff's Credit Defamation Claim

Finally, Sherman moves for dismissal of Plaintiff's
state law claim for credit defamation, arguing that the
FCRA preempts this cause of action. The preemption
doctrine, derived from the Supremacy Clause of the
United States Constitution, [FN4] "may be either
express or implied, and is compelled whether
Congress' command is explicitly stated in the statute's
language or implicitly contained in its structure and
purpose." *Fidelity Fed. Sav. & Loan Ass'n v. De la
Cuesta,* 458 U.S. 141, 152-53 (1982) (internal
quotation omitted).

> FN4. Article VI states that federal law "shall
> be the supreme Law of the Land...." U.S.
> Const., art. VI, cl. 2.

The FCRA contains two seemingly overlapping
sections that restrict state law claims against
furnishers. FCRA's original preemption section, §
1681h(e), limits liability for defamation, invasion of
privacy, and negligence to instances where "false
information [was] furnished with malice or willful
intent to injure ... [the] consumer." 15 U.S.C. §
1681h(e). Thus, plaintiffs who show that information
was provided with "knowledge that it was false or
with reckless disregard of whether it was false or not"
may bring claims under § 1681h(e). *See Thornton v.
Equifax, Inc.,* 619 F.2d 700, 705 (8th Cir.1980).
Congress added a second preemption provision in
1996, which states that "[n]o requirement or
prohibition may be imposed under the laws of any
State with respect to any subject matter regulated

Slip Copy
2004 WL 1559370 (D.Minn.)
(Cite as: 2004 WL 1559370 (D.Minn.))

Page 5

under ... section 1681s-2 [FN5] of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies...." 15 U.S.C. § 1681t(b)(1)(F), Pub.L. No. 104-208, § 2419, 110 Stat. 3009-452 (1996). The terms of this second preemption section are absolute. *Id.*

> FN5. As outlined above, § 1681s-2(b) requires furnishers to investigate disputed consumer account information upon receiving notice from a consumer reporting agency. *See* 15 U.S.C. § 1681s-2(b). Under § 1681s-2(a), furnishers must provide accurate information and may not continue furnishing data after being notified of its inaccuracy. *See* 15 U.S.C. § 1681s-2(a).

*6 While no circuit court has addressed the issue, numerous district courts have attempted to reconcile these two apparently conflicting sections. *See McCloud v. Homeside Lending,* 309 F.Supp.2d 1335, 1340-42 (N. D.Ala.2004); *Jeffrey v. Trans Union, L.L.C.,* 273 F.Supp.2d 725, 726-28 (E.D.Va.2003); *Mattice v. Equifax,* Civil No. 03-1060, 2003 WL 21391679, at *1-*4 (D. Minn. June 13, 2003) (Kyle, J.); *Gordon v. Greenpoint Credit,* 266 F.Supp.2d 1007, 1012-13 (S.D.Iowa 2003); *Yutelser v. Sears Roebuck & Co.,* 263 F.Supp.2d 1209, 1211-12 (D.Minn.2003) (Frank, J.); *Aklagi v. NationsCredit Fin. Servs. Corp.,* 196 F.Supp.2d 1186, 1194-96 (D.Kan.2002); *Hasvold v. First USA Bank,* 194 F.Supp.2d 1228, 1239 (D.Wyo.2002); *Jaramillo v. Experian Info. Solutions, Inc.,* 155 F.Supp.2d 356, 362-63 (E.D.Pa.2001) (reconsideration granted in part). These courts have reached three different results. First, some have held that § 1681t(b)(1)(F) completely subsumes § 1681h(e) because it provides absolute preemption and was added after § 1681h(e). *See Hasvold,* 194 F.Supp.2d at 1239; *Jaramillo,* 155 F.Supp. at 363. However, this interpretation voids § 1681h(e), and thus contradicts the general mandate that courts should consider statutes as a whole to avoid nullifying specific provisions. *See United States v. Campos-Serrano,* 404 U.S. 293, 301 n. 14 (1971); *State Highway Comm'n v. Volpe,* 479 F.2d 1099, 1111-12 (8th Cir.1973) (stating that courts should look to the whole statute when interpreting a particular section). Consequently, the Court declines to adopt this approach.

Other district courts have determined that § 1681t(b)(1)(F) does not preempt common law tort claims, but have reached this conclusion for two

different reasons. One group concluded that § 1681t(b)(1)(F) applies to state statutes only, and that § 1681h(e) pertains to common law torts. *See McCloud,* 309 F.Supp.2d at 1341-42; *Jeffrey,* 273 F.Supp.2d at 726-28. Another group decided that § 1681h(e), as a specific preemption clause, trumps the more general language of § 1681t(b)(1)(F). *Gordon,* 266 F.Supp.2d at 1012-13; *Yutelser,* 263 F.Supp.2d at 1211-12. Under either rationale, plaintiffs who overcome § 1681h(e)'s malice/willful intent standard may pursue common law actions. *Id.; see also McCloud,* 309 F.Supp.2d at 1341-42; *Jeffrey,* 273 F.Supp.2d at 726-28. These views are somewhat strained, however, because § 1681t(b)(1)(F) does not specify that it relates to statutes only. *See* 15 U.S.C. § 1681t(b)(1)(F). Further, as these interpretations greatly minimize § 1681t(b)(1)(F)'s applicability, they run afoul of the "whole statute" approach outlined above, and thus will not be followed by the Court. *See Campos-Serrano,* 404 U.S. at 301 n. 14; *Volpe,* 479 F.2d at 1111-12.

Finally, some courts have applied a temporal formula to FCRA's preemption sections based on § 1681t(b)(1)(F)'s absolute immunity for "any matter regulated by section 1681s-2 ... relating to the responsibilities of [furnishers]...." 15 U.S.C. § 1681t(b)(1)(F); *see Mattice,* 2003 WL 21391679, at *1-*4; *Aklagi,* 196 F.Supp.2d at 1194-96. Under this rationale, § 1681t(b)(1)(F) preempts any state law claims based on a furnisher's actions after receiving notice of a dispute, because furnishers then have a duty to investigate under § 1681s-2. *See id.* However, § 1681h(e) governs preemption of state law claims premised on a furnisher's behavior before receipt of notice, because at that point § 1681s-2 is not implicated. *Id.; see also* 15 U.S.C. § 1681h(e). The Court finds the temporal approach the most convincing of these three options because it follows the "whole statute" analysis and does not render either section superfluous.

*7 Adoption of the temporal approach leads to the conclusion that § 1681t(b)(1)(F) preempts Plaintiff's credit defamation action because Plaintiff bases his claim entirely on Sherman's actions after it received notice of the disputed account. Plaintiff alleges that Sherman continued reporting the erroneous Best Buy account even after Plaintiff told them that the account was not his. *See* Corrected Am. Compl. ¶¶ 16-17, 19, 21; Letter from Malm to Scott of 07/30/01 (Corrected Am. Compl. Ex. 2); *see also* Malm Aff. ¶¶ 1, 3-4. Additionally, Plaintiff avers that Sherman failed to send Plaintiff a copy of the card application despite his request, and that Sherman conducted a

Slip Copy                                                                                    Page 6
2004 WL 1559370 (D.Minn.)
**(Cite as: 2004 WL 1559370 (D.Minn.))**

superficial investigation of the disputed account after obtaining the CDV form from Trans Union. Corrected Am. Compl. ¶¶ 17, 21; *see also* Malm Aff. ¶¶ 2-3. All of these allegations involve Sherman's behavior after Plaintiff explained his concerns, at a time when Sherman was required to comply with § 1681s-2's requirements. Because § 1681t(b)(1)(F) precludes imposition of any state law on matters regulated under § 1681s-2, the FCRA preempts state tort actions premised on a furnisher's post-notice conduct. *See* 15 U.S.C. § 1681t(b)(1)(F). Therefore, Sherman's Motion for Summary Judgment is granted on Plaintiff's credit defamation claim. [FN6]

> FN6. Because § 1681t(b)(1)(F) preempts Plaintiff's credit defamation action, the Court need not address his argument that § 1681h(e) does not preempt this claim.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant Sherman's Motion to Dismiss or Alternatively for Summary Judgment [Docket No. 32] is DENIED as to Plaintiff's FDCPA claim;

2. Defendant Sherman's Motion to Dismiss or Alternatively for Summary Judgment is GRANTED as to Plaintiff's FCRA and credit defamation claims;

3. Counts III and IV of Plaintiff's Corrected Amended Complaint [Docket No. 26] are DISMISSED WITH PREJUDICE as to Defendant Sherman.

2004 WL 1559370 (D.Minn.)

Motions, Pleadings and Filings (Back to top)

•              0:03CV04340                Docket)
(Jul. 29, 2003)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT H

Westlaw.

Slip Copy                                                                                    Page 1
2004 WL 1664230 (Conn.Super.)
**(Cite as: 2004 WL 1664230 (Conn.Super.))**

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Stamford-Norwalk.

Vincent P. LAROBINA
v.
FIRST UNION NATIONAL BANK.

**No. CV990170845S.**

June 28, 2004.

Vincent Larobina, Stamford, pro se.

Pullman & Comley LLC, Bridgeport, for First Union
National Bank.

D'ANDREA, J.T.R.

**\*1** In the present action, pursuant to the Connecticut
Practice Book § 10-39(a)(5), [FN1] Vincent
Larobina (Larobina), moves to strike all of First
Union National Bank's (First Union) special defenses.
The facts alleged leading up to this action are as
follows. On September 25, 1986, Larobina
established a line of credit with Union Trust Bank
(Union Trust) in the amount of $55,000. This line of
credit was secured by a second mortgage on
Larobina's home. The note was for ten years with an
effective maturity date of September 25, 1996. At
some point in 1991, Union Trust assigned the note
and mortgage to First Fidelity Bank of Connecticut
(Fidelity). On November 1, 1994, Larobina and
Fidelity agreed to extend the maturity date on the
note. [FN2] In 1996, Fidelity assigned the agreement
and the mortgage to the defendant, First Union. From
the time of the execution of the re-age agreement in
1994 through the time of the note's original maturity
date of September 1996 and until October 1998,
Larobina received regular and proper monthly
statements and substantially complied with the
agreement by tendering payments.

FN1. Section 10-39(a)(5) states, in pertinent
part, that: "Whenever any party wishes to
contest ... the legal sufficiency of any
answer to any complaint, counterclaim or
cross complaint, or any part of that answer
including any special defense contained
therein, that party may do so by filing a
motion to strike the contested pleading or
part thereof."

FN2. Specifically, in consideration of the
extension, Larobina agreed to forfeit any
further right to obtain any additional loans
under the note, and in exchange, Fidelity
expressly modified the term of the note by
allowing Larobina to pay each monthly
installment of interest and principal as
defined under paragraph 2.2 of the note,
until such time as the then existing balance
was paid in full.

On July 20, 1998, Larobina received a letter from
First Union stating that the note had matured as of
September 25, 1996, and that the entire balance was
due. Larobina alleges that he contacted First Union to
inform them of his agreement with First Fidelity to
extend the repayment date. In response, Larobina
asserts that First Union claimed that the new
minimum payment due was almost the entire balance
of the note. Larobina further alleges that this new
minimum balance due violated the terms of his
agreement with Fidelity which stated that "your
minimum installment payment will be 1/240th of
your outstanding balance plus any finance charges
owed on your account."

Larobina, filed a thirteen-count substitute complaint
against First Union, on December 28, 2001. Therein
he alleges breach of contract/(counts one through
three), negligence by refusing to expunge false
information from the plaintiff's credit report/(count
four), defamation by publishing false information to
the credit agencies/(count five), violation of 15
U.S.C. § 1647(a) (General Statutes § 36a-678(a)),
which requires home equity loans to be based on an
index or rate of interest which is publicly
available/(count six), mail fraud in violation of 18
U.S.C. § 1341/(count seven), negligent infliction of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                    Page 2
2004 WL 1664230 (Conn.Super.)
**(Cite as: 2004 WL 1664230 (Conn.Super.))**

emotional distress/(count eight), violation of the implied covenant of fair dealing pursuant to General Statutes § 42a-1-203/(count nine), violation of the Connecticut Unfair Trade Practices Act (CUIPA), specifically, General Statutes § 42-110a(3) and (4)/(count ten), negligent misrepresentation/(count eleven), promissory estoppel/(count twelve) and specific performance/(count thirteen).

On December 27, 2002, First Union filed an answer and special defenses to Larobina's substituted complaint. On October 3, 2003, Larobina moved to strike all of First Union's special defenses. The court, Hiller, J., granted Larobina's motion to strike all 11 special defenses. *Larobina v. First Union National Bank,* Superior Court, judicial district of Stamford, Docket No CV 990170845 (January 14, 2004, Hiller, J.). On January 30, 2004, First Union filed its substitute answer and special defenses. On February 13, 2004, Larobina filed another motion to strike First Union's special defenses.

**\*2** In his memorandum in support, Larobina argues that First Union's special defenses contain "no subordinate facts from which [a] legal conclusion can flow." Larobina submits that all First Union has done, in this instance, is enhance each defense by quoting the allegations of his complaint. Larobina argues that First Union has, therefore, failed to present independent subordinate facts from which the legal conclusion of each defense can flow. On February 25, 2004, First Union filed its memorandum of law in opposition, in which it argues that Larobina's motion to strike lacks legal merit. The motion was heard on the short calendar on March 1, 2004.

"The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) *Fidelity Bank v. Krensky,* 72 Conn.App. 700, 718, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A .2d 1291 (2002). The purpose of a motion to strike is "to contest ... the legal sufficiency of any answer ... including any special defense contained therein ..." Practice Book § 10-39(a)(5).

"Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [plaintiff's motion] is plenary ... We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency ... Thus, [i]f facts provable in the

complaint would support a cause of action, the motion to strike must be denied ... Moreover ... [w]hat is necessarily implied [in an allegation] need not be expressly alleged ... It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted ... Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically ... Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied." (Citations omitted; internal quotation marks omitted.) *Commissioner of Labor v. C.J.M. Services, Inc.,* 268 Conn. 283, 292-93, 842 A.2d 1124 (2004).

"The granting of a motion to strike a special defense is not a final judgment and is therefore not appealable." *Mechanics Savings Bank v. Townley Corp.,* 38 Conn.App. 571, 573, 662 A.2d 815 (1995).

## A. *First Special Defense to Count Three, Breach of Contract Claim*

First Union's first special defense to count three states that Larobina's claim is preempted by the provisions of 15 U.S.C. § 1681h(e). [FN3] In support of this defense First Union cites the following from Larobina's complaint dated December 28, 2001. In paragraph sixteen, Larobina alleges that "[s]tarting in October 1998, and continuing until even date herewith, [First Union] has reported to Experian, Trans Union and Equifax credit reporting agencies that the plaintiff is in default under the Note." Larobina further alleges, in paragraph seventeen, that "[i]n making said reports, [First Union] has failed, refused or neglected to report to said credit reporting agencies that the plaintiff disputed [First Union's] allegation of default, although [First Union] has due notice of the same. By its failure, refusal and/or neglect to report the plaintiff's dispute to said agencies, [First Union] violated the expressed terms of the Note as set forth in the penultimate un-numbered paragraph in the instrument." Larobina further alleges that "[First Union's] failure to report the plaintiff's dispute to the credit reporting agencies constitutes a breach of contract from which the plaintiff suffered damages." First Union argues, therefore, that despite the characterization of count three as a breach of contract claim, in reality, the claim is one sounding in defamation, invasion of privacy, or negligence, any of which is preempted by

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                        Page 3
2004 WL 1664230 (Conn.Super.)
**(Cite as: 2004 WL 1664230 (Conn.Super.))**

§ 1681h(e).

> FN3. 15 U.S.C. § 1681h(e) states that: "(e)
> Limitation of liability--Except as provided
> in sections 1681n and 1681o of this title, no
> consumer may bring any action or
> proceeding in the nature of defamation,
> invasion of privacy, or negligence with
> respect to the reporting of information
> against any consumer reporting agency, any
> user of information, or any person who
> furnishes information to a consumer
> reporting agency, based on information
> disclosed pursuant to section 1681g, 1681h,
> or 1681m of this title, or based on
> information disclosed by a user of a
> consumer report to or for a consumer against
> whom the user has taken adverse action,
> based in whole or in part on the report
> except as to false information furnished with
> malice or willful intent to injure such
> consumer."

**\*3** "The elements of a breach of contract action are
the formation of an agreement, performance by one
party, breach of the agreement by the other party and
damages." (Internal quotation marks omitted .).
_Rosato v. Mascardo,_ 82 Conn.App. 396, 411, 844
A.2d 893 (2004).

In the present case, Larobina alleges that First
Union's failure to comply with various obligations
under the note constitutes a breach of contract. In a
prior decision on a motion to strike, Judge Hiller
determined that Larobina stated a claim for breach of
contract and that First Union may not relitigate the
legal sufficiency of that count by way of special
defenses. _Larobina v. First Union National Bank,
supra,_ Superior Court, Docket No. CV 99-0170845.
Further, in another decision on a motion to strike,
Judge Karazin also determined that Larobina, in
count three, had sufficiently alleged a cause of action
for breach of contract. _Larobina v. First Union
National Bank;_ Superior Court, judicial district of
Stamford/Norwalk at Stamford, Docket No. CV 99-
0170845 (December 13, 2001, Karazin, J.). He noted
that Larobina had alleged an agreement, performed
the agreement, First Union breached the agreement
and that, as a result of that breach, Larobina suffered
damages. Based upon the determinations by both
Judge Hiller and Judge Karazin that count three is a
contracts claim, this court is not inclined to disturb
their judgment.

"The purpose of a special defense is to _plead facts
that are consistent with the allegations of the
complaint_ ..." (Emphasis added; internal quotation
marks omitted.) _Fidelity Bank v. Krenisky, supra,_ 72
Conn.App. at 718. Moreover, the language of §
1681h(e) does not apply to preempt common-law
claims alleging a breach of contract and is,
consequently, inapplicable to count three. Therefore,
Larobina's motion to strike First Union's first special
defense to count three is granted.

B. _Second Special Defense to Count Three, Breach
of Contract Claim_

First Union's second special defense to count three
states that Larobina's claim relates solely to the
responsibilities imposed on First Union pursuant to
15 U.S.C. § 1681s-2 [FN4] and, therefore, is
preempted by a second preemption provision in 15
U.S.C. § 1681t(b)(1)(F). [FN5] In support of this
defense, First Union argues that it "is a person who
furnishes information to consumer reporting
agencies." Further, First Union incorporates the same
allegations from its first special defense which rely
on paragraphs sixteen through eighteen of count three
of the complaint. Larobina argues that, other than
conclusory statements, First Union has not alleged
that its conduct falls within the subject matter
regulated by § 1681s-2.

> FN4. 15 U.S.C. § 1681s-2 states, in
> pertinent part:
> (a) Duty of Furnishers of Information to
> Provide Accurate Information-- (1)
> Prohibition--
> (A) Reporting Information wit Actual
> Knowledge of Errors--A person shall not
> furnish any information relating to a
> consumer to any consumer reporting agency
> if the person knows or has reasonable cause
> to believe that the information is inaccurate.
> (B) Reporting Information After Notice and
> Confirmation of Errors--A person shall not
> furnish information relating to a consumer to
> any consumer reporting agency if--
> (i) the person has been notified by the
> consumer, at the address specified by the
> person for such notices, that specific
> information is inaccurate; and
> (ii) the information is, in fact, inaccurate ...
> (2) Duty to Correct and Update Information-
> -A person who--
> (A) regularly and in the ordinary course of

Slip Copy
2004 WL 1664230 (Conn.Super.)
(Cite as: 2004 WL 1664230 (Conn.Super.))

Page 4

business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

(3) Duty to Provide Notice of Dispute--If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer ...

(b) Duties of Furnishers of Information upon Notice of Dispute--

(1) In General--After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis ...

FN5. 15 U.S.C. § 1681t(b)(1)(F) states, in pertinent part: "General Exceptions--No requirement or prohibition may be imposed under the laws of any State--(1) with respect to any subject matter regulated under ... (F) section 1681s-2 of this title, relating to the

responsibilities of persons who furnish information to consumer reporting agencies ..." This preemption provision "provides furnishers of credit with absolute immunity when fulfilling their obligations under § 1681s-2," _Stafford v. Cross Country Bank,_ 262 F.Sup.2d 776, 784 (W.D.Ky 2003).

"The [Federal Credit Reporting Act] FCRA governs the use of and the procedures related to credit reports. It sets forth responsibilities related to consumer reporting agencies and also the responsibilities of furnishers of information to consumer reporting agencies. The FCRA provides for civil liability due to both willful and negligent non-compliance, Title 15 U.S.C. § 1681n and 1681o." _Washington v. Direct General Ins. Agency, Inc.,_ 130 F.Sup.2d 820, 824 (S.D.Miss.2000).

**\*4** It has been determined, as previously noted, that count three has been sufficiently alleged as a breach of contract claim. Since the purpose of a special defense is to "plead facts that are consistent with the allegations of the complaint," _Fidelity Bank v. Krenisky, supra,_ 72 Conn.App. at 718, Title 15 U.S.C. § § 1681s-2 and 1681t(b)(1)(F) do not apply to breach of contract claims. Therefore, Larobina's motion to strike First Union's second special defense to count three is granted.

C. _First Special Defense to Count Four, Negligence Claim_

First Union's first special defense to count four states that Larobina's claim of negligence is preempted by the provisions of 15 U.S.C. § 1681h(e) [FN6] because the claim alleges negligence with respect to the reporting of information to consumer agencies. First Union states that the allegations from paragraph one of its first special defense to count three is incorporated by reference in this special defense regarding the reporting of Larobina's default on the note. First Union argues that in his complaint, "Larobina alleges that '[s]tarting in April 1999, [First Union] reported to Experian, Trans Union and Equifax credit reporting agencies that it had instituted foreclosure proceedings against the plaintiff through its attorney [and that] [t]he defendant's actions constitute negligence from which the plaintiff has suffered damages." Larobina argues that his negligence claim falls within the exceptions to preemption as stated in § 1681h(e).

FN6. See footnote 3.

"[T]he FCRA ... recognizes that a consumer may ... bring an action proceeding under state common law for defamation, slander or invasion of privacy, [and negligence] but only if the consumer proves malice [or willful intent to injure such consumer]. That is, § 1681h(e) grants consumer reporting agencies, users of consumer reports, and furnishers of information qualified immunity from state law claims of this nature. Section 1681h(e) is therefore not a grant of federal subject matter jurisdiction, but rather creates a defense a consumer must overcome to succeed on a state law claim against someone acting in a capacity that is regulated by the Act." Stafford v. Cross Country Bank, supra, 262 F.Sup.2d at 782.

Some courts have held that "[a]pplying § 1681h(e) to [a] negligence claim would require [a][p]laintiff to show that [a][d]efendant ... acted negligently and with malice or willful intent to injure. 15 U.S.C. § 1681h(e) (2003). This results in a requirement that [a][p]laintiff prove intentional or malicious negligence. This level of negligence is inherently contradictory in that negligence does not include an element of intent. In fact, intentional negligence is an oxymoron." (Internal quotation marks omitted.) Carlson v. Trans Union, LLC, 261 F.Sup.2d 663, 665 (N .D.Tex.2003).

"A wilful and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in express malice. Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional ... A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent ... [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances." (Citation omitted; internal quotation marks omitted.) Mingachos v. CBS, Inc., 196 Conn. 91, 102,491 A.2d 368 (1985).

*5 Count four alleges a cause of action against First Union for [damages] due to its negligent credit reporting. First Union could be exempt from such action by virtue of the FCRA statute and case law; see Bank of New York v. Conway, Superior Court, judicial district of Hartford, Docket No. CV 02 0815603 (September 23, 2003, Freed, J.T.R.); see

also § 1681h(e); unless "the credit reporting (agency) has furnished false information with malice or willful intent to injure." (Internal quotation marks omitted.) New York Times v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

Since negligence and willful and/or malicious intent to injure are alleged by Larobina in the fourth count notwithstanding contradictory implications, § 1681h(e) could provide immunity for First Union if wilfulness or malice is not proven. Therefore, Larobina's motion to strike the first special defense to count four is denied.

D. Second Special Defense to Count Four, Negligence Claim

First Union's second special defense to count four states that it is subject to the FCRA's § 1681s-2 [FN7] and Larobina's claim is, therefore, preempted by the provisions of § 1681t(b)(1)(F). [FN8] In addition to incorporating paragraphs one through three of First Union's first special defense to count four as support for the reporting of Larobina's default on the note, First Union again submits that it is a person who furnishes information to consumer reporting agencies. Additionally, First Union cites to paragraphs eighteen [FN9] and nineteen [FN10] of count four of the complaint to bolster its argument that these activities plainly illustrate that § 1681s-2 is applicable to this dispute.

FN7. See footnote 4.

FN8. See footnote 5.

FN9. "The defendant had never instituted any litigation of any sort against the plaintiff since the beginning of the world until even date herewith."

FN10. Notwithstanding the fact that the defendant was well aware that it had not instituted foreclosure proceedings against the plaintiff and that plaintiff was not in default of the Note, the defendant intentionally caused said false reporting to remain on the plaintiff's credit report from April 1999-December 1999."

"[T]he FCRA's two separate preemption provisions are contained in § 1681t(b)(1)(F), which provides furnishers of credit with absolute immunity when filling their obligations under § 1681s-2; and § 1681h(e), which provides furnishers of credit information with qualified immunity from suits 'proceeding in the nature of defamation, invasion of privacy, or negligence.' Importantly, Congress ... added the first, more sweeping, § 1681t(b)(1)(F) language in a series of 1996 amendments. Those amendments made no mention of the earlier § 1681h(e) language. The tension between these two provisions therefore results from the fact that § 1681h(e) permits state tort claims, but requires a higher standard of proof for those in the nature of defamation, slander, or invasion of privacy, while § 1681t(b)(1)(F) prohibits all state claims covered by § 1681s-2." *Stafford v. Cross Country Bank, supra,* 262 F.Supp.2d at 784-85.

In *Bank One, N.A. v. Colley,* 294 F.Supp.2d 864, 868 (M.D.La 2003), the court was faced with this very same issue, whether a state law claim was preempted by § 1681t(b)(1)(F). The court stated that "[t]he question of preemption of state common-law claims under the FCRA has not yet been addressed by a Circuit Court. However, several district courts around the country have considered how and when to apply each preemption provision to pendent state common-law claims. Three approaches have emerged from these district courts. The first approach is to interpret § 1681t(b)(1)(F), which was added to the FCRA after § 1681h(e), as completely subsuming § 1681h(e). This approach, which would call for preemption of all pendent state law claims, has been rejected by at least one court because Congress left § 1681h(e) in place when it added § 1681t(b)(1)(F). The second approach is to read § 1681h(e) as applying to state tort actions and § 1681t(b)(1)(F) as applying to state statutory regulation. The third approach, called the temporal approach, has been applied most often.

**\*6** The temporal analysis relies on the language of § 1681t(b)(1)(F) itself to conclude that § 1681t(b)(1)(F) should only be used to preempt state actions premised upon a credit furnisher's conduct occurring after the furnisher receives notice of a dispute. [Section] 1681t(b)(1)(F) states, in relevant part, '[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under ... section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies ...' [Section] 1681s-2, in turn, only regulates

conduct of furnishers of information after the furnishers have been either 'notified by the consumer ... that specific information is inaccurate' or notified by a consumer reporting agency that a dispute over the accuracy of information has arisen. Because the conduct regulated by § 1681s-2 has a temporal component and § 1681t(b)(1)(F) is based on § 1681s-2, it follows that the application of § 1681t(b)(1)(F) likewise depends on when the furnisher of information received notice of a dispute. Thus, the bottom line of the temporal analysis is that preemption of state law claims arising before the furnisher of information receives notice of the dispute is governed by § 1681h(e) and preemption of state law claims arising after such a time is governed by § 1681t(b)(1)(F)." *Bank One, N.A. v. Colley, supra,* 294 F.Supp.2d at 868-69.

In the present case, the court finds that count four may be preempted by § 1681t(b)(1)(F). Based upon the reasoning in *Bank One, N.A. v. Colley,* and the facts alleged by First Union in its second special defense, a defense of preemption under a temporal analysis may apply to a furnisher of information whose conduct is regulated by § 1681s-2 and who has been notified by the consumer that specific information is inaccurate or notified by a consumer reporting agency that a dispute over the accuracy of the information has arisen. Therefore, Larobina's motion to strike the second special defense to count four of the complaint is denied.

*E. First Special Defense to Count Five, Defamation Claim*

First Union's first special defense to count five states that Larobina's claim is preempted by the provisions of § 1681h(e). Count five of Larobina's complaint reincorporates count four in its entirety and contends that First Union's conduct rises to the level of defamation. First Union, therefore, reincorporates its argument set forth in section C. The cause of action in the present count, however, is defamation, not negligence.

Section 1681h(e) explicitly states that it is applicable to causes of action sounding in defamation. Based upon the language of § 1681h(e), this court finds that First Union has pleaded sufficient facts to withstand a motion to strike. Therefore, Larobina's motion to strike § 1681h(e) as a defense to count five is denied.

*F. Second Special Defense as to Count Five, Defamation Claim*

**\*7** First Union's second special defense to count five states that Larobina's claim is preempted by the provisions of § 1681t(b)(1)(F). First Union reincorporates its argument set forth in sections B and D.

Based upon the facts alleged by First Union in its special defense and the reasoning in section D, this court finds that § 1681t(b)(1)(F) could be a special defense. Therefore, Larobina's motion to strike the second special defense to count five of the complaint is denied.

G. *First Special Defense to Count Six, Violation of 15 U.S.C. § 1647 Claim*

First Union's first special defense to count six states that Larobina's claim is time barred by the provisions of General Statutes § 36a-683(e). [FN11] First Union contends that Larobina's claim under the Federal Truth in Lending Act, 15 U.S.C. § 1601, et seq., or more specifically, § 1647(a), [FN12] is untimely. The provisions of this act are applicable to creditors in Connecticut pursuant to General Statutes § 36a-678(a). [FN13] First Union's special defense provides the following facts. The note was executed as part of the loan transaction between Larobina and Union Trust, which occurred on September 25, 1986. Section 36a-683(e) requires that all actions based on violations of the Connecticut Truth in Lending Act be commenced within one year of the date of the occurrence. Larobina's claims in count six are based on the note and first accrued on September 25, 1986. The cause of action asserted in count six was first alleged by Larobina in the revised complaint filed September 10, 1999. First Union states that these allegations clearly show that Larobina did not bring his claim within the one-year time period.

> FN11. General Statutes § 36a-683(e) states: "Time limit for bringing action-Any action under this section shall be brought in any court of competent jurisdiction within *one year from the date of the occurrence of the violation.* This subsection does not bar a person from asserting a violation of sections 36a-675 to 36a-685, inclusive, in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action." Emphasis added.) See also 15 U.S.C. § 1640(e).

> FN12. 15 U.S.C. § 1647(a) states: "(a) Index requirement-In the case of extensions of credit under an open end consumer credit plan which are subject to a variable rate and are secured by a consumer's principal dwelling, the index or other rate of interest to which changes in the annual percentage rate are related shall be based on an index or rate of interest which is publicly available and is not under the control of the creditor."

> FN13. General Statutes § 36a-678(a) states: "(a) Except as otherwise provided in sections 36a-675 to 36a-685, inclusive, or regulations adopted by the commissioner, each person shall comply with all provisions of the Consumer Credit Protection Act (15 U.S.C. § 1601 et seq.) which apply to such person."

Larobina argues that First Union already presented its legal position as to the applicability of § 1640(e) [FN14] at oral argument. At that time, the court concluded that "the statute of limitations began to run on the date that the plaintiff was first put on notice of a violation and not, as the defendant argues from the date that the note was executed fourteen years ago." (Internal quotation marks omitted.) *Larobina v. First Union National Bank, supra,* Superior Court, Docket No. CV 99 0170845.

> FN14. 15 U.S.C. § 1640(e) states, in pertinent part: "(e) Jurisdiction of courts; limitations on actions; State attorney general enforcement-Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year* from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." (Emphasis added.)

"A consumer's rights under the [Truth in Lending] Act are subject to a one-year limitation period that

begins to run 'from the date of the occurrence of the violation.' 15 U.S.C. § 1640(e). Most of the reported cases which have considered the limitation provision of the Act have done so in the context of 'close end' credit transactions ... As a general rule the disclosures required by the Act are revealed to the consumer at the time the contract for the extension of credit is executed or, at the very latest, at the time of performance. Thus there is a specific time at which a violation occurs and a court can use that occurrence as the point from which the limitation period begins to run." *Baskin v. G. Fox & Co.,* 550 F.Sup. 64, 66 (D.Conn.1982).

"However, an open end credit arrangement ... is distinguishable on several grounds from a close end transaction and necessitates a different rationale in applying the limitation provision. The Act defines open end credit plan in § 1602(i): The term open end credit plan means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. As a practical matter, when a consumer applies for and is issued a credit card under an open end credit plan, there is no extension of credit from a lender to a potential borrower, because no debt has yet accrued. With the free ride period permitted under most credit cards, *it is only when the first finance charge is imposed that a consumer usually becomes aware that a violation of the Act has occurred.* This may be many months after the application for and issuance of the card." (Emphasis added; internal quotation marks omitted.) *Id.,* at 66-67.

**\*8** "Under these circumstances it appears evident that the purpose of the Act--to ensure the informed use of credit--is best served if the starting point for the limitation period is deemed to be the *date when there has been a finance charge which puts the consumer on notice* that a violation has occurred." (Emphasis added.) *Id .,* at 67.

In the present case, Larobina alleges in count six that he had an open-end extension of credit. Judge Karazin stated, in a previous opinion, that "the statute of limitations began to run on the date that the plaintiff was first put on notice of a violation and not, as the defendant argues, from the date that the note was executed, fourteen years ago. [First Union] makes no argument that the plaintiff instituted this action more than one year from the date he was first put on notice of a violation. Therefore, the motion to

strike count six is hereby denied." *Larobina v. First Union National Bank, supra,* Superior Court, Docket No. CV99 0170845. This court is inclined to agree with Judge Karazin and treat the credit as open ended as well. Therefore, the statute of limitations begins to run when Larobina was put on notice. Further, this special defense fails to submit any facts which would support the notion that this action was instituted more than a year from the date Larobina was first put on notice nor does First Union make that argument. Larobina's motion to strike First Union's first special defense to count six is granted.

H. *First Special Defense to Count Seven, Mail Fraud Claim*

First Union's first special defense to count seven states that Larobina's Racketeer Influenced and Corrupt Organization (RICO) claim in count seven is time barred pursuant to 15 U.S.C. § 15b. [FN15] First Union argues that Larobina did not raise a claim of civil RICO until the filing of the revised complaint on December 28, 2001, and that his allegations point to a variety of acts, occurring prior to December 28, 1997, more than four years before asserting this count. Based upon the caselaw, the statute of limitations runs from when Larobina discovered or should have discovered the injury.

> FN15. 15 U.S.C. § 15b states that: "Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this Act shall be revived by this Act."

"Although the RICO statute does not contain a statute of limitations, the Supreme Court has held that the four-year statute of limitations of the Clayton Act [FN16] is analogous and therefore applicable to federal racketeering causes of action ... Because of the Racketeer Influenced and Corrupt Organization Act's unique 'pattern of racketeering activity' requirement, the development of accrual theories for RICO causes of action has taken a somewhat different path to reach today what is by and large the same rule as that applied in antitrust law." (Citation omitted.) *Astoria Entertainment, Inc. v. Edwards,* 159 F.Sup.2d 303, 325 (E.D.La.2001).

Slip Copy
2004 WL 1664230 (Conn.Super.)
(Cite as: 2004 WL 1664230 (Conn.Super.))

Page 9

FN16. The Clayton Act is a federal law enacted to deal with antitrust regulation and practices engaged in for the purpose of restraining trade. The Clayton Act prohibits activity such as price discrimination, tying and exclusive dealing contracts, mergers, and interlocking directorates, where the purpose is to lessen competition or to create a monopoly within an industry. See 15 U.S.C. § 1 et seq.

Three distinct approaches have emerged to determine when the four-year period of time commences to run. "Some Circuits, like the Fifth ... applied an injury discovery accrual rule starting the clock when a plaintiff knew or should have known of his injury.

**\*9** Some applied the injury and pattern discovery rule ... under which a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity.

The Third Circuit applied a last predicate act rule ... Under this rule, the period began to run as soon as the plaintiff knew or should have known of the injury and the pattern of racketeering activity, but began to run anew upon each predicate act forming part of the same pattern." (Citations omitted; internal quotation marks omitted.). *Rotella v. Wood,* 528 U.S. 549, 553-54, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

The Court held, in rejecting the two latter theories, that the injury discovery accrual rule applied to civil RICO claims. [FN17] *Id.,* at 558. The Court reasoned that "[b]y tying the start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery, the rule would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete ... A limitations period that would have begun to run only eight years after a claim became ripe would bar repose, prove a godsend to stale claims, and doom any hope of certainty in identifying potential liability ... The fact ... that difficulty in identifying a pattern is inherent in civil RICO ... only reinforces our reluctance to parlay the necessary complexity of RICO into worse trouble in applying its limitations rule." (Citation omitted.) *Id.,* at 558-59.

FN17. That rule requires starting the clock when a plaintiff knew or should have known

of his injury.

In the present case, First Union cites to facts alleged by Larobina in his complaint. Along with these facts First Union alleges that they occurred prior to December 28, 1997, and more than four years prior to the assertion of this count on December 28, 2001. First Union may assert this special defense to count seven provided, however, that First Union is able to prove specific instances where Larobina knew or should have known of his damages. Therefore, Larobina's motion to strike First Unions first special defense to count seven is denied.

### I. *First Special Defense to Count Eight, Negligent Infliction of Emotional Distress Claim*

First Union's first special defense to count eight states that Larobina's claim is preempted by § 1681h(e) because the claim alleges negligent infliction of emotional distress. First Union reincorporates its arguments made in section C. Larobina, also, reincorporates his arguments against First Union's first substitute defense to count four to this count.

Count eight alleges a cause of action against First Union for emotional distress due to its negligent credit reporting. However, the plaintiff could be exempt from such action by virtue of the FCRA statute and case law. See § 1681h(e). "Immunity will not attach to common-law claims where the credit reporting (agency) has furnished false information with malice or willful intent to injure." (Citation omitted; internal quotation marks omitted.) *Bank of New York v. Conway, supra,* Superior Court, Docket No. CV 02 0815603.

**\*10** Based upon this court's reasoning in section C, § 1681h(e) may provide a defense for First Union to count eight. Therefore, Larobina's motion to strike First Union's first special defense to count eight is denied.

### J. *Second Special Defense to Count Eight, Negligent Infliction of Emotional Distress Claim*

First Union's second special defense to count eight states that Larobina's claim is preempted by the provisions of § 1681t(b)(1)(F). First Union reincorporates its argument set fort in sections B, D and F. Additionally, First Union states that:

"Paragraph [twenty-two] of [c]ount [eight] further reinforces the position articulated above. Specifically, Mr. Larobina alleges that '[First Union's] refusal to comply with its obligations to notify the major credit reporting agencies of [Larobina's] dispute pertaining to [First Union's] allegation of default, in its refusal to expunge a false report of default and its refusal to expunge a false report for a foreclosure litigation purportedly pending against [Larobina], caused, and continues to cause, [Larobina] emotional distress.' This purported misconduct unequivocally falls within the scope of Section 1681s-2." Larobina states that the arguments raised as to the second special defense to count four be incorporated in this count against First Union.

Based upon the facts alleged by First Union in its special defense and reasoning in sections D and F, this court finds that § 1681t(b)(1)(F) could be used as a special defense by First Union in this count. Therefore, Larobina's motion to strike the second special defense to count eight of the complaint is denied.

### K. *First Special Defense to Count Ten, CUTPA Claim*

First Union's first special defense to count ten states that Larobina's claim under the Connecticut Unfair Trade Practices Act (CUTPA) is barred by the provisions of General Statutes § 42-110g(f). In support, First Union states that "Larobina alleges in [c]ount [t]en that First Union has taken various actions that constitute violations of [CUTPA]. Further, First Union states that many of the alleged violations occurred more than three years prior to the date when the complaint was filed. Larobina states that "even if [First Union's] claim was valid, the fact that [First Union] admits that some of the violations did occur inside the three-year limitations period is a significant enough admission to render this defense legally insufficient. Beyond that, however, as set forth in the [c]ount, all of the alleged violations occurred only after the bank refused to acknowledge and abide by the [r]e-[a]ge [a]greement which occurred in October 1998. The CUTPA action was filed in January 1999, inside the limitations period."

"Section 42-110g(f) provides that an action alleging unfair trade practices under CUTPA may not be brought more than three years after the occurrence of a violation ... The three-year limitations period for a CUTPA claim is a substantive rather than procedural limitation ..." (Internal quotation marks omitted.) *Chasin v. Pasicki,* Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. CV 02

0079444 S (April 2, 2004, Bear, J.).

*\*11 First Union states that many of the violations occurred more than three years prior to the date when the complaint was filed. First Union has not pinpointed one particular occurrence or one date on which a particular occurrence transpired. If any of these various allegations were to have occurred, however, more than three years prior to the filing of the complaint then First Union would have a defense to that occurrence.

"In determining whether a motion to strike should be granted, the sole question is whether, if the facts alleged are taken to be true, the allegations provide a cause of action or a defense." *County Federal Savings & Loan Ass'n v. Eastern Associates, supra,* 3 Conn.App. at 585. There are enough facts present to deny Larobina's motion to strike First Union's first special defense to count ten.

### L. *First Special Defense to Count Eleven, Negligent Misrepresentation Claim*

First Union's first special defense to count eleven states that Larobina's claim of negligent misrepresentation is time barred by the provisions of General Statutes § 52-577. First Union argues that the cause of action asserted in count eleven was first alleged in the filing of an amended complaint on September 10, 1999. Further, First Union argues that the cause of action occurred more than three years prior to September 10, 1999. Larobina argues that a tort claim does not accrue until a plaintiff discovers or should have discovered that he has been injured and that First Union has not alleged facts in its special defense consistent with the complaint.

General Statutes § 52-577 provides that: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." General Statutes § 52-577. "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. Our Supreme Court stated in *Fichera v. Mine Hill Corp., 207 Conn. 204, 212, 541 A.2d 472 (1988):* In construing our general tort statute of limitations, General Statutes § 52-577, which allows for an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                           Page 11
2004 WL 1664230 (Conn.Super.)
**(Cite as: 2004 WL 1664230 (Conn.Super.))**

or the injury has occurred." (Internal quotation marks omitted.) *Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC,* 69 Conn.App. 151, 158-59, 795 A.2d 572 (2002).

In the present case, Larobina argues that the complaint affirmatively alleges facts that indicate that the earliest conceivable date that the plaintiff could have discovered his injury was on October 28, 1998, [FN18] the date of a letter from First Union indicating that Larobina's mortgage was payable in full. Larobina filed this action in February 1999, and amended the complaint to the current thirteen counts in January 2000, within the time prescribed by the subject statute of limitations. Larobina alleges that the negligent misrepresentation occurred in October of 1998, when she received a statement demanding the entire loan balance. First Union states that the cause of action asserted in count eleven occurred prior to September 10, 1996, and, therefore, should be barred by § 52-577. There is clearly a dispute as to when notice was given to Larobina so as to commence the running of the statute of limitations. If the statute began to run on the date alleged by Larobina, he would clearly be within the time window for filing a complaint. If the date alleged by First Union proves to be valid, however, and the limitations period was to commence prior to that date then there would be merit to the applicability of the statute thus barring Larobina's claim.

> FN18. This is the date of the bank's alleged repudiation of the re-age agreement.

**\*12** Taking First Union's facts alleged as true, a statute of limitations defense under § 52-577 would be applicable if this cause of action for negligent misrepresentation was filed in Larobina's amended complaint in February of 2000. There are enough facts present to deny Larobina's motion to strike First Union's first special defense to count ten.

### M. *Second Special Defense to Count Eleven, Negligent Misrepresentation Claim*

First Union's second special defense to count eleven states that Larobina's claim of negligent misrepresentation is time barred also by the provision of General Statutes § 52-584. [FN19] First Union argues that pursuant to § 52-584, any action based on negligence must be commenced within three years from the date of the act complained of. First Union contends that the cause of action in count eleven was first alleged in the filing of the complaint on

September 10, 1999. Since the allegation occurred prior to September 10, 1996, this count must be barred.

> FN19. General Statutes § 52-584 states: "No action to recover damages for injury to the person, or to real or personal property, caused by *negligence,* or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed." (Emphasis added.)

"The three-year limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in § 52-584 or another section." (Internal quotation marks omitted.) *Rosato v. Mascardo,* 82 Conn.App. 396, 407, 844 A.2d 893 (2004). Because negligent misrepresentation is not specifically enumerated in § 52-584, that section is inapplicable to cases of negligent misrepresentation. *Id.* In the present case, Larobina's motion to strike First Union's second special defense to count eleven is granted.

### N. *First Special Defense to Count Thirteen, Specific Performance Claim*

First Union's first special defense to count thirteen, seeking specific performance, states that Larobina has failed and neglected to make any payments under either the note or the alleged re-age agreement since, at least, February of 1999. It further maintains that Larobina is not ready, willing and able to perform under the terms of the re-age agreement and by his own admission is in breach of the agreement. Therefore, First Union argues that the foregoing demonstrates that Larobina has unclean hands and cannot obtain the equitable relief he seeks.

The unclean hands doctrine may be asserted as a

Slip Copy
2004 WL 1664230 (Conn.Super.)
**(Cite as: 2004 WL 1664230 (Conn.Super.))**

Page 12

special defense in a foreclosure action. *Thompson v. Orcutt,* 257 Conn. 301, 777 A.2d 670 (2001). "Our jurisprudence has recognized that those seeking equitable redress in our courts must come with clean hands. The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue ... For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands ... The clean hands doctrine is applied not for the protection of the parties but for the protection of the court ... It is applied ... for the advancement of right and justice ... The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in *wilful misconduct* with regard to the matter in litigation ... The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Citations omitted; emphasis added; internal quotation marks omitted.) *Ridgefield v. Eppoliti Realty Co.,* 71 Conn.App. 321, 334-35, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

\*13 In this case, First Union alleges that Larobina is not entitled to the equitable remedy of specific performance because he has unclean hands. First Union alleges, in support of this special defense, that Larobina established a line of credit with Union Trust in the amount of $55,000 on September 25, 1986, which is set forth in the "Home Equity Line of Credit Agreement." Further, First Union alleges that "[o]n or about November 1, 1994, by document captioned, Secured Credit Line Re-age Agreement, ... the plaintiff and First Fidelity mutually agreed to extend said maturity date. Specifically, in consideration of the extension, the plaintiff agreed to forfeit any further right to obtain any additional loans under the Note, and in exchange, Fidelity expressly modified the terms of the Note by allowing the plaintiff to pay each monthly installment of interest and principal as defined under Paragraph 2.2 of the Note, until such time as the then existing balance was paid in full." Further, First Union alleges that the plaintiff has made monthly payments pursuant to the note and the re-age agreement from the inception date of the note through February 1999.

Based upon these facts, First Union has essentially asserted that Larobina engaged in wilful misconduct with regard to the matter in litigation by ceasing to pay under the note from February of 1999 to the present. Therefore, Larobina's motion to strike the first special defense to count thirteen is denied.

Accordingly, Larobina's motion to strike First Union's special defenses is granted as to the first and second special defenses to count three, the first special defense to count six and the second special defense to count eleven. Larobina's motion to strike the remaining special defenses is denied.

2004 WL 1664230 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works