# EXHIBIT I



Slip Copy
2004 WL 1460001 (Mich.App.)
**(Cite as: 2004 WL 1460001 (Mich.App.))**

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Patricia NELSKI, a/k/a Patricia Pelland, Plaintiff-Appellant,
v.
AMERITECH, Ameritech Services, Inc., Ameritech Communications, Inc ., Ameritech Corporation, Inc., Ameritech Publishing, Inc., and Michigan Bell Telephone Company, Defendants-Appellees.

No. 244644.

June 29, 2004.

Before: BORRELLO, P.J., and WHITE and SMOLENSKI, JJ.

[UNPUBLISHED]

PER CURIAM.

*1 Plaintiff, a victim of identify theft, sued defendants alleging defamation and violation of the Fair Credit Reporting Act (FCRA), 15 USC 1681 et seq. After plaintiff's FCRA claims were removed to federal court and subsequently resolved by that court, the trial court granted defendants summary disposition of plaintiff's state law claim, concluding that defendants were furnishers of information under the FCRA, that the FCRA applied to this case, and that plaintiff's state law claim was preempted by the FCRA. Plaintiff appeals as of right. We affirm in part, reverse in part, and remand.

Plaintiff alleges that she discovered in 1996 that someone had opened a telephone account with defendants in her name, using a fraudulent address. Plaintiff subsequently learned that she had been the victim of credit card fraud pursuant to a scheme whereby the false address and telephone number were apparently used to establish credit. Plaintiff notified defendants of the fraud and alleges that she was advised by defendants in 1996 that the fraudulent account would be cleared up. But she learned in 1999 that defendants were still reporting false financial information on her credit report. She attempted to have the matter corrected, without success. This action followed.

Plaintiff first argues that the trial court erred in relying on collateral estoppel as a basis for concluding that defendants were furnishers of information under the FCRA. The trial court held that the federal court had already ruled that defendants were subject to the FCRA, and, therefore, collateral estoppel barred plaintiff from relitigating this issue. We disagree.

The FCRA "regulates creditors' reports to credit-reporting agencies, and prescribes the actions that must be taken when a customer reports an error in a credit report." *In re Complaint of Pelland Against Ameritech Michigan,* 254 Mich.App. 675, 684, 658 N.W.2d 849 (2003). The FCRA imposes duties on consumer-reporting agencies and on those who furnish information to credit-reporting agencies. In this case, plaintiff argues that defendants fall within the latter category.

Collateral estoppel precludes relitigation of an issue in a subsequent, different case between the same parties if the prior action resulted in a valid final judgment and the issue was actually and necessarily determined in the prior matter. *Horn v. Dep't of Corrections,* 216 Mich.App. 58, 62, 548 N.W.2d 660 (1996). The ultimate issue in the second case must be the same as that in the first proceeding. *Detroit v. Qualls,* 434 Mich. 340, 357, 454 N.W.2d 374 (1990). The doctrine requires that the same parties must have had a full opportunity to litigate the issue in the prior proceeding, and there must be mutuality of estoppel. *Nummer v. Dep't of Treasury,* 448 Mich. 534, 542, 533 N.W.2d 250 (1995).

> To be necessarily determined in the first action, the issue must have been essential to the resulting judgment; a finding upon which the judgment did not depend cannot support collateral estoppel. [*Bd of Co. Road Comm'rs v. Schultz,* 205 Mich.App. 371, 377, 521 N.W.2d 847 (1994).]

*2 Collateral estoppel will only apply if the basis of the former "judgment can be clearly, definitely, and unequivocally ascertained ." *Ditmore v. Michalik,* 244 Mich.App. 569, 578, 625 N.W.2d 462 (2001).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
2004 WL 1460001 (Mich.App.)
**(Cite as: 2004 WL 1460001 (Mich.App.))**

Page 2

We find that the trial court did not err in relying upon the earlier decisions issued in the federal court to conclude that plaintiff was barred by collateral estoppel from arguing that defendants were not furnishers of information under the FCRA. The same parties were involved in both proceedings and there is mutuality of estoppel. Additionally, the question whether the FCRA was applicable to plaintiff's claims against defendants was an essential issue in the federal proceedings, and plaintiff had the opportunity to argue this issue before the federal court.

Furthermore, even if collateral estoppel did not apply, we agree that the FCRA applies to defendants in this matter. Plaintiff appears to argue that defendants are not furnishers of information under 15 USC 1681s-2 because it was Risk Management Alternatives, Inc., and Abacus Financial, both collection agencies, that actually supplied the consumer-reporting agencies with information about plaintiff's account. This distinction does not compel a different result in this case.

Plaintiff relies on *Carney v. Experian Information Solutions, Inc.*, 57 F Supp 2d 496 (W.D.Tenn., 1999), to argue that Risk Management and Abacus Financial are the furnishers of information in this case. The facts of that case do not support plaintiff's position. In *Carney,* the plaintiff sued both Exxon and its collection company, G.E. Capital, for violating the FCRA after someone falsely obtained an Exxon credit card in the plaintiff's name. *Id.* at 499. The court considered the duties upon furnishers of information under the FCRA and held that both Exxon and its collection agency were furnishers of information under the act:

> Section 1681s-2 of Title 15 of the FCRA is entitled: "Responsibilities of furnishers of information to consumer reporting agencies." That section identifies two duties imposed upon such furnishers of information: the duty to provide accurate information [§ 1681s-2(a)] and the duty to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency [§ 1681s-2(b)]. Although the term "furnisher of information" is not defined within the FCRA, common sense dictates that the term would encompass an entity such as Exxon which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, MCCA, and Trans Union. Thus, Exxon and G.E. Capital are subject to the requirements enumerated in 15 USC § 1681s-2. [*Id.* at 501-502.]

Therefore, under *Carney,* a business and its collection agency both may qualify as furnishers of information under the FCRA. Plaintiff believed that Risk Management and Abacus Financial were acting as defendants' agents. Pursuant to *Carney,* the FCRA applies to businesses that provide their collection agencies with credit information that is eventually supplied to consumer-reporting agencies. Accordingly, plaintiff has failed to show that defendants were not furnishers of information because they used the services of collection agencies.

*3 Plaintiff also challenges the trial court's ruling that her state law claim for defamation was preempted by 15 USC 1681t(b)(1)(F), a section of the FCRA. This federal provision limits the rights of states to adopt laws that conflict with the FCRA. Section 1681t provides, in relevant part, as follows:

> (a) In general
> 
> Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter *from complying with the law of any State* with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of this inconsistency.
> 
> (b) General exceptions
> 
> *No requirement or prohibition may be imposed under the laws of any State--*
> 
> (1) with respect to any subject matter regulated under--
> 
> * * *
> 
> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply--
> 
> (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
> 
> (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996). [Emphasis added.]

Section 1681t was added to the FCRA in 1996. *Carlson v. Trans Union, LLC,* 259 F Supp 2d 517, 520 (N.D.Texas, 2003). Before § 1681t was adopted, 15 USC 1681h(e) provided consumers with a limited right to file state claims. That subsection provides as follows:

> (e) Limitation of liability
> 
> Except as provided in sections 1681n and 1681o of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
2004 WL 1460001 (Mich.App.)
**(Cite as: 2004 WL 1460001 (Mich.App.))**

Page 5

This Court finds that the approach adopted in *Jeffrey* and *Carlson* to be the most persuasive. The conclusion that § 1681t(b)(1)(F) only applies to state statutory laws is buttressed by the fact that § 1681t(d)(2) provides that subsections (b) does not apply "to any *provision of State law* (including any provision of a State constitution) that--(A) is *enacted* after January 1, 2004; (B) states explicitly that the provision is intended to supplement this subchapter; and (C) gives greater protection to consumers than is provided under this subchapter." [Emphasis added.] Furthermore, § 1681t(a) explicitly states that "this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter *from complying with the law of any State* ...." Based on the clear language of § 1681t(a) and § 1681t(b)(1)(F), this Court holds that § 1681t(b)(1)(F) only preempts causes of actions relating to the subject-matter of § 1681s-2 brought pursuant to state statutory law. [FN2] Therefore, the trial court erred in dismissing plaintiff's state common-law claim on the basis that it was preempted by § 1681t(b)(1)(F).

> FN2. We find it unnecessary to resolve the dispute regarding whether § 1681t(b)(1)(F) preempts state claims based on a person furnishes inaccurate information to a consumer reporting agency before and/or after the furnisher received notice of, or had reason to know about the dispute (the "temporal approach"). We note, however, that it seems illogical to hold a furnisher of information liable for furnishing inaccurate information before it had knowledge, or a reason to know, that the information was inaccurate. Thus, the common-law/statutory law distinction and the temporal approach could conceivably co-exist.

However, our analysis has not ended. We must now determine whether plaintiff's common-law claim of defamation is preempted by § 1681h(e), which provides qualified immunity to furnishers of information, such as defendants, "except as to false information furnished with malice or willful intent to injure such consumer." In Count III of her complaint, plaintiff alleges that "Defendants acted in a libelous, slanderous and defamatory manner in terms of reporting and/or publishing false financial records of your Plaintiff." Plaintiff further alleges that she "was declined credit from two separate companies due to negligent reporting/publishing and/or willful and wanton disregard as to reporting/publishing by

Defendants of Plaintiff's financial record." Because plaintiff has sufficiently alleged a cause of action for common-law defamation under § 1681h(e), the trial court erred in dismissing this claim for failure to state a cause of action pursuant to MCR 2.116(C)(8).

Affirmed in part, reversed and remanded. We do not retain jurisdiction.

WHITE, J. (concurring).

WHITE, J.

I agree with the majority's analysis of the "furnisher of information" issue. I concur regarding the preemption issue because I conclude that in amending 15 USC 1681t and enacting 15 USC 1681s-2, Congress did not intend to bar actions theretofore permitted under 15 USC 1681h(e). On this record, it is unclear whether plaintiff can sustain an action under 15 USC 1681(h). The parties should address this issue on remand.

2004 WL 1460001 (Mich.App.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT J

**Westlaw.**

2004 WL 1465689
323 F.Supp.2d 1075, 2004 WL 1465689 (D.Or.)
**(Cite as: 2004 WL 1465689 (D.Or.))**

Page 1

Motions, Pleadings and Filings

United States District Court,
D. Oregon.

VANDERZANDEN FARMS, LLC, an Oregon limited liability company, Plaintiff,
v.
DOW AGROSCIENCES, LLC, a Delaware limited liability company, Defendant.

No. CV 03-779-BR.

June 24, 2004.

**Background:** Tulip farmer brought products liability action against herbicide manufacturer to recover for damage allegedly caused by application of herbicide. Manufacturer moved for summary judgment.

**Holding:** The District Court, Brown, J., held that farmer's claims were preempted by Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).

Motion granted.

**[1] Products Liability** 43.5
313Ak43.5 Most Cited Cases

State law tort claims based on inadequate or defective labeling of pesticides are preempted by Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), because otherwise success on such claims would necessarily induce manufacturer to alter its product label to comply with state law. Federal Insecticide, Fungicide, and Rodenticide Act, § 24(b), as amended, 7 U.S.C.A. § 136v(b).

**[1] States** 18.65
360k18.65 Most Cited Cases

State law tort claims based on inadequate or defective labeling of pesticides are preempted by Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), because otherwise success on such claims would necessarily induce manufacturer to alter its product label to comply with state law. Federal Insecticide, Fungicide, and Rodenticide Act, § 24(b), as amended, 7 U.S.C.A. § 136v(b).

**[2] Products Liability** 43.5
313Ak43.5 Most Cited Cases

Tulip farmer's state law claims against herbicide manufacturer to recover for damage allegedly caused by application of herbicide were preempted by Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), where manufacturer had at all times sold herbicide only with labels that were accepted by Environmental Protection Agency (EPA) pursuant to FIFRA's requirements, and farmer's claims arose solely from EPA's labeling requirements. Federal Insecticide, Fungicide, and Rodenticide Act, § 24(b), as amended, 7 U.S.C.A. § 136v(b).

**[2] States** 18.65
360k18.65 Most Cited Cases

Tulip farmer's state law claims against herbicide manufacturer to recover for damage allegedly caused by application of herbicide were preempted by Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), where manufacturer had at all times sold herbicide only with labels that were accepted by Environmental Protection Agency (EPA) pursuant to FIFRA's requirements, and farmer's claims arose solely from EPA's labeling requirements. Federal Insecticide, Fungicide, and Rodenticide Act, § 24(b), as amended, 7 U.S.C.A. § 136v(b).

Paul R.J. Connolly, Donna G. Goldian, Connolly & Goldian, LLP, Salem, OR, for Plaintiff.

Ronald E. Bailey, Bullivant Houser Bailey PC, Portland, OR, Dean T. Barnhard, Barnes & Thornburg, Indianapolis, IN, for Defendants.

**OPINION AND ORDER**

BROWN, District Judge.

*1 This matter comes before the Court on Defendant's Motion for Summary Judgment (# 11), Plaintiff's Motion to Compel Production of Documents (# 26), Defendant's Motion for Protective Order (# 25), Plaintiff's Request for Judicial Notice of EPA's Position Regarding FIFRA Preemption (# 34), and Defendant's Motion for Leave to Submit

Supplemental Authority, *Instanter* (# 39).

Plaintiff VanderZanden Farms, LLC, is a family farm in Washington County, Oregon, in the business of growing tulips. Plaintiff brings this action against Defendant Dow Agrosciences, LLC, for damage to Plaintiff's tulip crop allegedly caused by the application of Gallery, a herbicide manufactured by Dow. Plaintiff asserts two claims for relief. The First Claim is for strict product liability under Oregon law, and the Second Claim is for negligence. Both claims are based on alleged defects in the labeling of Gallery.

Defendant moves for summary judgment on the ground that Plaintiff's claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136v(b) (FIFRA).

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment, **GRANTS** Plaintiff's Request for Judicial Notice, **GRANTS** Defendant's Motion for Leave, and **DENIES as moot** Plaintiff's Motion to Compel and Defendant's Motion for Protective Order.

*FACTS*

On February 2, 2002, Plaintiff purchased the herbicide Gallery, which is produced by Dow. The label on the Gallery container included the following statement: "Gallery Dry Flowable may be applied for control of susceptible annual weeds in ornamental bulbs, e.g. bulbous iris, daffodils (narcissus), hyacinth and tulip." This label was approved by the Environmental Protection Agency (EPA), apparently as part of the initial registration of Gallery under FIFRA.

On February 4, 2002, Plaintiff applied Gallery to its 2002 new tulip-bulb planting according to Dow's specifications. In late February 2002, Plaintiff noticed tulip leaves were discolored, spotty, and did not look vigorous. On investigation, Plaintiff concluded Gallery had caused damage that would result in a loss of tulip flower sales in 2002 and more losses in the future.

After Plaintiff notified Dow of the damage, Plaintiff learned in October 2000 that Dow had obtained the EPA's approval to amend the Gallery label to include the following warning: "Do not use Gallery 75 Dry Flowable for weed control in ornamental bulbs grown for commercial production." The EPA, however, did not order Dow to implement the amended labeling by any specific date nor did the EPA set a date after which Gallery could not be sold or distributed without the revised labels. The EPA also did not require Dow to re-label the containers of products already in the hands of retailers or to send copies of the amended Gallery label to any retailers.

Dow has at all times sold Gallery only with labels that were accepted by the EPA pursuant to the requirements of FIFRA. [FN1]

*DISCUSSION*

*2 The Supremacy Clause of the United States Constitution provides the laws of the United States "shall be the supreme law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "In determining whether federal law preempts a state statute, we look to congressional intent. Preemption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *FMC Corp. v. Holliday*, 498 U.S. 52, 56-57, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (internal quotations omitted). When "Congress has included an express preemption provision in an act, there is no need to divine an implied congressional intent regarding preemption from other provisions in the act." *Taylor*, 54 F.3d at 559 (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)).

FIFRA is a comprehensive federal statute that regulates labeling, sales, and use of pesticides and grants enforcement authority to the EPA. *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 559 (9th Cir.1995). FIFRA expressly prohibits states from imposing "any requirements for labeling or packaging in addition to or different from those required" under FIFRA. 7 U.S.C. § 136v(b).

[1] "FIFRA preempts common law claims if the legal duty that forms the basis for the claim imposes a state labeling requirement that is different from or in addition to the requirements imposed by FIFRA." *Taylor*, 54 F.3d at 560. State law tort claims based on inadequate or defective labeling of pesticides are preempted because otherwise success on such claims would necessarily induce the manufacturer to alter its product label to comply with state law. *Id.* at 561.

2004 WL 1465689                                                                                                                   Page 3
323 F.Supp.2d 1075, 2004 WL 1465689 (D.Or.)
**(Cite as: 2004 WL 1465689 (D.Or.))**

The preemption analysis in *Taylor* is based in large part on the Supreme Court's decision in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). A majority of circuits have applied *Cipollone* and held a failure to warn claim against the manufacturer of pesticides is preempted by FIFRA. *Taylor,* 54 F.3d at 560. Plaintiff, however, argues the Supreme Court's decision in *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), altered the preemption analysis of the *Cipollone* Court and "cast doubt" on earlier circuit court decisions regarding FIFRA preemption. In *Medtronic,* a plurality of the Supreme Court held the federal Medical Device Amendments of 1976 did not preempt a state common-law negligence action against the manufacturer of an allegedly defective medical device.

Plaintiff does not cite any federal case that holds *Medtronic* altered the preemption analysis of the *Cipollone* Court as applied to FIFRA. Plaintiff relies only on an Oregon Court of Appeals decision in which the court concluded the Supreme Court's decision in *Medtronic* altered the *Cipollone* preemption analysis. *See Brown v. Chas. H. Lilly Co.,* 161 Or.App. 402, 985 P.2d 846 (1999). Accordingly, the Oregon Court of Appeals held the plaintiff's tort claims based on failure to warn and breach of warranty were not preempted by FIFRA. Plaintiff urges this Court to follow the *Brown* court's holding. This Court, however, is bound by decisions of the Ninth Circuit, which has rejected the argument that *Medtronic* changed the FIFRA preemption analysis. *See Nathan Kimmel, Inc. v. DowElanco,* 275 F.3d 1199 (9th Cir.1999).

*3 [2] In *Nathan Kimmel,* the Ninth Court noted the plaintiffs' claims in *Medtronic* "arose from the manufacturer's alleged failure to use reasonable care in the production of the product, not solely from the violation of FDCA [Federal Food, Drug, and Cosmetic Act]." *Id.* at 1206. Here, in contrast, Plaintiff's claims arise solely from the EPA's labeling requirements. Plaintiff contends the labels used by Dow and approved by the EPA were inadequate and erroneous and Plaintiff suffered damage because it followed those erroneous labels. Accordingly, the Court concludes Plaintiff's claims clearly are preempted.

Finally, Plaintiff argues the EPA has taken the position that FIFRA does not preempt state tort claims. Plaintiff relies on an *amicus* brief filed by the EPA in *Etcheverry v. Tri-Ag Service, Inc.,* 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 993 P.2d 366 (2000). Plaintiff filed a Request for Judicial Notice of EPA's Position Regarding FIFRA Preemption and submitted the EPA's *amicus* brief in *Etcheverry* as an exhibit. In response, Defendant filed a Motion for Leave to Submit Supplemental Authority and asserted the EPA subsequently repudiated the position it took in *Etcheverry* in its *amicus* briefs filed in later cases; *i.e.,* the EPA now argues FIFRA preempts state law claims. The Court grants both Plaintiff's Request for Judicial Notice and Defendant's Motion for Leave to File Supplemental Authority and has considered both parties' arguments regarding the EPA's position.

In *Nathan Kimmel,* the Ninth Circuit rejected an identical argument regarding the EPA's *Etcheverry amicus* brief. 275 F.3d at 1207. For the reasons set forth in *Nathan Kimmel,* this Court also rejects Plaintiff's argument.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (# 11). The Court also **GRANTS** Plaintiff's Request for Judicial Notice of EPA's Position Regarding FIFRA Preemption (# 34) and Defendant's Motion for Leave to Submit Supplemental Authority, *Instanter* (# 39). The Court **DENIES as moot** Plaintiff's Motion to Compel Production of Documents (# 26) and Defendant's Motion for Protective Order (# 25).

IT IS SO ORDERED.

FN1. Plaintiff objected to Defendant's asserted facts concerning the amendment to the Gallery label on the basis that Defendant did not produce evidence to support those facts. Plaintiff, therefore, contended additional discovery was required. Defendant, however, provided evidentiary support for these fact statements in the form of the Affidavit of Kimberly Gilbert, Dow's Product Registration Manager for Gallery 75 Dry Flowable herbicide. Moreover, Plaintiff conceded at oral argument that additional discovery would not affect the outcome of Defendant's Motion for Summary Judgment.

323 F.Supp.2d 1075, 2004 WL 1465689 (D.Or.)

Motions, Pleadings and Filings (Back to top)

•          3:0300779         Docket)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 1465689                                                                           Page 4
323 F.Supp.2d 1075, 2004 WL 1465689 (D.Or.)
**(Cite as: 2004 WL 1465689 (D.Or.))**

(Jun. 12, 2003)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works