THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN HARRISON : | |
| plaintiff, : | CIVIL ACTION NO.: 3:03 CV 873 (RNC) |
| : | |
| v. : | |
| : | |
| VERIZON WIRELESS, LLC et al. : | |
| defendants. : | AUGUST 18, 2004 |

MEMORANDUM OF LAW IN SUPPORT OF
NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS

## I.  INTRODUCTION

Defendant Navy Federal Credit Union ("Navy") respectfully submits this Memorandum

of Law in support of its Motion to Dismiss.  In its Motion, Navy seeks to dismiss Plaintiff's first

cause of action, which alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

§1681 et seq.  In addition, Navy moves to dismiss Plaintiffs second, third and fourth causes of

action, which allege defamation, intentional infliction of emotional distress and violation of the

Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, respectively.

First, Plaintiff's FCRA claims should be dismissed insofar as he has attempted to

"shoehorn" his claims into a section of the FCRA that provides a private right of action, when in

1

reality his claims arise under a portion of the FCRA that Congress has chosen to enforce exclusively through federal and state regulatory authorities. <u>See</u> Part IV.A.

Second, Plaintiff's common law claims should be dismissed in their entirety because FCRA § 1681t(b)(1)(F) preempts all state laws that affect a creditor's duties or obligations with regard to furnishing consumer information to credit reporting agencies. <u>See</u> Part IV.C. Because Plaintiff's state law claims are based on Navy's alleged failure to comply with its obligations under the FCRA, his state law claims are preempted. Although there has been considerable debate among a number of district courts regarding the interplay between § 1681t(b)(1)(F) and § 1681h(e), another preemption in the FCRA, a majority of courts hold that Plaintiff's state law claims are preempted. Moreover, even under the holdings of those cases most favorable to Plaintiff's position, it is clear that his CUTPA claim is preempted. <u>See</u> Part IV.D.

Finally, Plaintiff's intentional infliction of emotional distress claim must be dismissed because the Complaint wholly fails to allege the type of "extreme and outrageous" conduct required to support such a claim. <u>See</u> Part IV.E.[1]

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiff alleges that his identity was stolen by an imposter in September of 2001. <u>See</u> Complaint, ¶ 8. Plaintiff claims that the imposter proceeded to open loan accounts with Navy without his consent. <u>Id.</u> ¶¶ 9-11. Plaintiff pleads, upon information and belief, that Navy

---

[1] Navy joins in and adopts the arguments set forth by Verizon and Ford Motor Credit Company in each of their respective memoranda of law and reply memoranda supporting their motions to dismiss Plaintiff's complaint.

"began reporting at least one of the fraud accounts as a derogatory credit item to Experian, Trans Union and Equifax, the three national credit bureaus, as being opened by Harrison . . ." and that "[e]ventually, [Navy] published adverse information relating to the fraud accounts, such as delinquent payment status, causing the inclusion of adverse derogatory information on Harrison's credit reports. Experian, Equifax and Trans Union then disseminated the derogatory information regarding the fraud accounts to third parties who requested Harrison's credit report." Id. ¶ 13.

Plaintiff alleges that he learned of the Navy fraud accounts on or about November 5, 2001, at which time he claims to have contacted Navy and at least one of the credit bureaus to dispute the accounts. Id. ¶¶ 15-16. He further alleges that the Navy fraud accounts appeared on his March 22, 2002 Experian credit report; id. ¶ 18; and on his October 9, 2002 Equifax credit report. Id. ¶ 20. Plaintiff claims that he continually notified Navy and the three credit bureaus of the disputed fraud accounts. Id. ¶¶ 16, 21-22, 26-28, 31. Despite this notice, Plaintiff alleges, Navy continued to report the fraud accounts as part of his credit history. Id. ¶ 31. As a result, Plaintiff claims that several of his legitimate creditors either denied him credit or reduced the credit limit on his existing accounts. Id. ¶¶ 33-36.

Plaintiff's Complaint states four causes of action against Navy. The first count alleges that Navy violated two provisions of the FCRA. Specifically, Plaintiff avers that Navy negligently and/or wilfully violated FCRA § 1681s-2(b) "by failing to properly investigate Harrison's disputes when requested to do so by the credit reporting agencies and by failing to review all relevant information provided to it by Harrison." Complaint, ¶ 40. Plaintiff also claims that Navy accessed his credit report without a permissible purpose in violation of FCRA

3

§§ 1681b and 1681q. Id. ¶¶ 42-43. Plaintiff's second, third and fourth causes of action sound in defamation, intentional infliction of emotional distress and violation of CUTPA, respectively.

## III.    LEGAL STANDARD

"[I]n ruling on a 12(b)(6) motion, a court is required to accept the material facts alleged in the complaint as true . . . and not to dismiss 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Easton v. Sundram, 947 F.2d 1011, 1014-15 (2nd Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Durham Manufacturing Co. v. Merriam Manufacturing Co., 128 F. Supp. 2d 97, 98 (D. Conn. 2001).

## IV.    ARGUMENT

### A.    Plaintiff Has Failed to State a Claim Under FCRA § 1681s-2.

A person who furnishes information to a consumer reporting agency[2] is known as a "furnisher" under the FCRA. A furnisher's obligations are set forth in 15 U.S.C. § 1681s-2. There are generally two components to a furnisher's duty under the FCRA. First, a furnisher is required to report information accurately, to investigate disputes by consumers and to provide updated information to the various CRAs when necessary. These obligations are set forth in FCRA § 1681s-2(a). Second, a furnisher who receives notice of a consumer dispute from a credit bureau regarding the completeness or accuracy of information that the furnisher provided

---

[2] Navy herein refers to consumer reporting agencies as "credit bureaus" or "CRAs."

4

to the credit bureau, must take certain steps to investigate the consumer's claim. This duty is set forth in FCRA § 1681s-2(b).[3]

Congress has explicitly stated that no private right of action exists in connection with a furnisher's violation of FCRA § 1681s-2(a). See 15 U.S.C. §§ 1681s-2(c) & 1681s-2(d);[4] see also Riley v. General Motors Acceptance Corp., 226 F. Supp. 2d 1316, 1319 (S.D. Ala. 2002) ("There is no private cause of action under 15 U.S.C. § 1681s-2(a)."). Thus, a furnisher can be sued under the FCRA only if: (1) it was timely notified of a consumer's dispute by a CRA, and (2) the furnisher subsequently failed to conduct an reasonable investigation of the consumer's dispute. See id. at 1320.

In Fino v. Key Bank of New York, 2001 WL 849700 (W.D. Pa. 2001) (attached hereto as Exhibit A), the court dismissed a § 1681s-2(b) claim against a furnisher who allegedly failed to investigate the plaintiff's disputed account. In Fino, Key Bank notified the CRAs that plaintiff's account information was incorrect, but subsequently re-reported the inaccurate information "despite its previously having detected and reported the error" to the CRAs. Id. at *5. The court found that plaintiff's claim fell under § 1681s-2(a), not § 1681s-2(b), because "Key Bank's duties

---

[3] Section 1681s-2(b) was amended after Plaintiff filed his complaint. See Pub. L. 108-159, § 3, Title III, § 312(b) (Dec. 4, 2003), 117 Stat. 1953, 1990. This new law imposes additional obligations on furnishers. Its provisions, however, are not relevant to this action.

[4] Section 1681s-2(c) states: "Sections 1681n and 1681o of this title [providing for civil liability for willful or negligent noncompliance with the FCRA] do not apply to any failure to comply with subsection (a) of this section, except as provided in section 1681s(c)(1)(B) of this title [providing for civil actions filed by the chief law enforcement officer of a State or other such official]." 15 U.S.C. § 1681s-2(c). Section 1681s-2(d) states "Subsection (a) of this section shall be enforced exclusively under section § 1681s of this title by Federal agencies and officials and the State officials identified in that section." 15 U.S.C. § 1681s-2(d).

5

to correct information it determined to be inaccurate, and to refrain from continuing to report such known, inaccurate information, are expressly addressed by [§ 1681s-2(a)]." Id. at *6. The court further observed, "[r]ecognizing that a private claim under Section 1681s-2(a) fails, the Plaintiff attempt[ed] to 'shoehorn' her claims against [the furnisher] into Section 1681s-2(b)." Id. The court acknowledged that Key Bank's procedures were not in full compliance with the FCRA, but also recognized that "the FCRA provisions addressing Key Bank's '[d]uty to *correct and update information*' and to '*not [continue] . . . furnish[ing] . . . information that remain[s] not complete or accurate*' fall under Section 1681s-2(a), a section for which there is no private right of action." Id. at *7 (emphasis and changes in original).

In a similar case, the court in Danielson v. Experian Information Solutions, Inc., 2004 WL 1729871, at *4 (D. Minn., July 30, 2004) (attached hereto as Exhibit B) dismissed plaintiff's FCRA claim because the plaintiff was attempting to "shoehorn" an alleged § 1681s-2(a) violation into a § 1681s-2(b) claim. In Danielson, the plaintiff brought an action against a number of creditors and credit bureaus under the FCRA. One of plaintiff's creditors was Aurora Loan Services, plaintiff's mortgagee. Plaintiff alleged that Aurora reported inaccurate information regarding his wife's Chapter 13 bankruptcy filing to the various CRAs. Plaintiff's claim under FCRA § 1681s-2(b) was that Aurora "failed to identify completely and accurately . . . that [he] was not the borrower in bankruptcy and that the [Aurora] account was not included in his or anyone's Chapter 13 plan." Id. at *4 (quoting plaintiff's complaint). The court concluded that the plaintiff was not challenging the quality of Aurora's investigation, but rather the accuracy of Aurora's information as reported to the CRAs. The court explained its holding thus:

6

> Mr. Danielson's arguments reveal that his FCRA claim is one that challenges the accuracy and completeness of the information provided by Aurora to the CRAs. The FCRA imposes a duty on those who furnish information to a consumer reporting agency to provide complete and accurate information. 15 U.S.C. § 1681s-2(a). Unfortunately for Mr. Danielson, the FCRA provides that section 1681s-2(a) "shall be enforced exclusively" by federal and state authorities.

Id. (quoting 15 U.S.C. § 1681s-2(d)).

Like the plaintiffs in <u>Fino</u> and <u>Danielson</u>, Harrison has attempted to "shoehorn" his FCRA claims into § 1681s-2(b). In his first cause of action, Harrison alleges that "[p]ursuant to FCRA § 1681s-2(b), [Navy] has a duty to perform a reasonable investigation of consumer disputes, such as those Harrison filed with [Navy] and with Equifax and/or other credit reporting agencies." Complaint, ¶ 39. The Complaint then states that "[Navy] violated FCRA § 1681s-2(b) by failing to properly investigate Harrison's disputes when requested to do so by the credit reporting agencies and by failing to review all relevant information provided to it by Harrison." Complaint, ¶ 40.

A careful review of the Plaintiff's Complaint reveals that his FCRA claim is premised on the allegedly inaccurate information that Navy provided to the CRAs (i.e., a § 1681s-2(a) claim), rather than on the quality of Navy's investigation under § 1681s-2(b). For example, although the Complaint is replete with references to Harrison's own contacts with Navy concerning the fraudulent accounts; <u>see</u> Complaint, ¶¶ 16, 21-22, 26-28, 39; nowhere does he specifically allege that a CRA notified Navy of his dispute. Paragraph 40 insinuates that a CRA contacted Navy regarding Harrison's dispute, but the Complaint contains no specific allegations about this alleged contact. Although the Court must accept as true all well-pled allegations in the

7

complaint, "Rule 12(b)(6) does not permit the substitution of conclusory statements for minimally sufficient factual allegations." Whitaker v. Haynes Construction Co., Inc., 167 F. Supp. 2d 251, 254 (D. Conn. 2001) (citing Furlong v. Long Island Coll. Hosp., 710 F.2d 922, 927 (2d Cir. 1983)).

The touchstone of furnisher liability under the FCRA is that the furnisher received notice of a consumer's dispute *from a CRA*. See Riley, 226 F. Supp. 2d at 1319. Without this crucial allegation, Plaintiff's FCRA claim amounts to an attack on the completeness and accuracy of the information that Navy supplied to the CRAs – a matter regulated exclusively under FCRA § 1681s-2(a). As noted above, consumers cannot sue based on alleged violations of § 1681s-2(a).

Harrison's Complaint also fails to explain how or why Navy's investigation was deficient under FCRA § 1681s-2(b). On the contrary, the material allegations in the Complaint demonstrate that Plaintiff's true gripe lies in the fact that Navy reported the fraud accounts as a "derogatory credit item to Experian, Trans Union and Equifax;" Complaint, ¶ 13; and that "despite Harrison's multiple disputes, [Navy] failed to remove the fraud account(s) from Harrison's Equifax report and continued to publish one or more of the fraud accounts to third parties." Id. ¶ 22; see also id. ¶ 31(Despite its knowledge of the fraud accounts, Navy "continued to report the fraud accounts as part of Harrison's credit history.").

Thus, despite Plaintiff's perfunctory reference to Navy's duty to make a reasonable investigation under FCRA § 1681s-2(b), the material allegations in the Complaint reveal that his true claim amounts to an attack on Navy's alleged failure to report complete and accurate

8

information to the CRAs. As such, the conduct alleged in his first cause of action appropriately falls under FCRA § 1681s-2(a), and is therefore preempted. See 15 U.S.C. §§ 1681s-2(c) & 1681s-2(d). Accordingly, Plaintiff's first cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B.    Plaintiff's Claim Against Navy Regarding The Opening Of The Fraudulent Accounts Is Not a Cognizable Cause of Action**

Paragraph 12 of Plaintiff's Complaint states:

> [Navy] has a duty to employ reasonable procedures to prevent persons such as the impostor from obtaining an account using the name or personal identifiers of another. [Navy] breached this duty when it negligently enabled the impostor to open the fraud accounts using Harrison's Social Security number and other personal identifiers. [Navy] failed to employ reasonable procedures to accurately confirm the identity of the person requesting the extension of credit using Harrison's identity. [Navy] negligently enabled the impostor to use Harrison's identity and thereby caused Harrison damage.

Complaint, ¶ 12.

Although Paragraph 12 is not stated as a specific cause of action, it is incorporated by reference into each of Plaintiff's four counts in his Complaint. See id. ¶¶ 37, 46, 52 & 57. Research discloses no authority supporting Plaintiff's alleged negligence claim. The FCRA supports no such claim because § 1681s-2, which sets forth a furnisher's duties under the FCRA, mentions nothing about a furnisher's obligation "to employ reasonable procedures" to avoid credit fraud. Nor does there appear to be any state law basis for his claim.[5] Thus, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's negligence claim against Navy should be dismissed.

---

[5] Of course, if there were such a claim, it too would be preempted under FCRA § 1681t(b)(1)(F). See Part IV.C., infra.

9

### C.    Plaintiff's State Law Claims Are Preempted By The FCRA

When Congress amended the FCRA in 1996, it imposed upon furnishers a number of duties and responsibilities concerning the reporting of credit information. See Pub. L. 104-208, § 2420, 110 Stat. 3009-444 (1996). As stated above, these duties are codified in FCRA § 1681s-2. Recognizing that the 1996 Amendments created obligations that furnishers never had before, Congress amended FCRA § 1681t to circumscribe the exposure to civil liability that furnishers may face for their failure to comply with the obligations imposed under § 1681s-2. Thus, Section 1681t(b) provides, in pertinent part, that:

No requirement or prohibition may be imposed under the laws of any State –

(1) with respect to any subject matter regulated under –

> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply –
>
>> (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
>>
>> (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996)[.]

15 U.S.C. § 1681t(b)(1)(F).

Section 1681s-2 contains the complete set of regulations applicable to furnishers under the FCRA. Thus, in enacting § 1681t(b)(1)(F), Congress clearly intended to preempt all state laws that affect the responsibilities of those who furnish credit information to the various CRAs.

10

There has been considerable debate regarding the breadth and applicability of the preemption afforded to furnishers under FCRA § 1681t(b)(1)(F). The focus of the debate is § 1681t(b)(1)(F)'s relationship with 15 U.S.C. § 1681h(e), yet another preemption provision in the FCRA. Section 1681h(e) provides:

> Except as provided in [§§ 1681n and 1681o] . . ., no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to [15 U.S.C. §§ 1681g, 1681h, or 1681m], or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

Because FCRA § 1681h(e) purports to qualifiedly preempt actions against furnishers, there appears to be a conflict between § 1681h(e) and § 1681t(b)(1)(F). The Second Circuit has not addressed this conflict,[6] nor has any other Circuit Court. See Carriere v. Proponent Fed. Credit Union, 2004 WL 1638250, at *4 (W.D. La., July 12, 2004) (attached hereto as Exhibit C); McCloud v. Homeside Lending, 309 F. Supp. 2d 1335, 1340 (N.D. Ala. 2004). However, a number of district courts have addressed the issue, resulting in three distinct approaches to resolve the conflict between § 1681t(b)(1)(F) and § 1681h(e). Each approach is discussed below.

---

[6] Nor does it appears that any district court within the Second Circuit has addressed this issue.

1.     The Complete Preemption Approach

The first approach regards § 1681t(b)(1)(F) as completely subsuming § 1681h(e),

recognizing that the preemption in § 1681t was added after § 1681h.  A number of courts have

adopted this approach.  See, e.g., Purcell v. Universal Bank, N.A., 2003 WL 1962376 (E.D. Pa.

2003) (attached hereto as Exhibit D); Hasvold v. First USA Bank, N.A., 194 F. Supp. 2d 1228

(D. Wyo. 2002); Davis v. Md. Bank, N.A., 2002 U.S. Dist. LEXIS 26468, at *41 (N.D. Cal. June

18, 2002) (attached hereto as Exhibit E); Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp.

2d 356 (E.D. Pa. 2001);[7] Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496 (W.D.

Tenn. 1999).

The district court in Jaramillo described the complete preemption approach as follows:

> While Congress did not specifically provide in the 1997 [sic] amendments that
> section 1681t supercedes 1681h, it is clear from the face of section
> 1681t(b)(1)(F) that Congress wanted to eliminate all state causes of action
> "relating to the responsibilities of persons who furnish information to consumer
> reporting agencies." Any other interpretation would fly in the face of the plain
> meaning of the statute.
> . . . .
>
> The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes
> of action against furnishers of information, not just ones that stem from statutes
> that relate specifically to credit reporting.  To allow causes of action under state
> statutes that do not specifically refer to credit reporting, but to bar those that do,
> would defy the Congressional rationale for the elimination of state causes of

---

[7] The Jaramillo court subsequently reversed itself in a one sentence order.  See Jaramillo
v. Experian Info. Solutions, Inc., 2001 WL 1762626, *1 (E.D. Pa. 2001) (attached hereto as
Exhibit F).  As a number of courts have stated, however, "the Jaramillo court's decision to
reverse itself without explanation does not render the logic of the original opinion any less
persuasive." Riley v. General Motors Acceptance Corp., 226 F. Supp. 2d 1316, 1323 (S.D. Ala.
2002); see also Hasvold, 149 F. Supp. 2d at 1238 (relying on Jaramillo while acknowledging the
reconsideration ruling).

12

action.

Jaramillo, 155 F. Supp. 2d at 361-62.

Complete preemption makes sense in light of the legislative intent of the 1996

Amendments to the FCRA. "Central to determining questions of preemption is divining

Congress' intent." Kemp v. Medtronic, Inc., 231 F.3d 216, 222 (6th Cir. 2000). Prior to 1996,

furnishers were not regulated by the FCRA and, accordingly, were not subject to liability for acts

or omissions in connection with the furnishing of credit information to credit bureaus. See

DiGianni v. Stern's, 26 F.3d 346 (2d Cir. 1994). The 1996 Amendments sought to capture

furnishers under the federal regulatory umbrella of the FCRA. See S. REP. 104-185, S. REP. NO.

185, 104th Cong., 1st Sess. 1995, available at, 1995 WL 747809, at 49 ("bringing furnishers of

information under the provisions of the FCRA is an essential step in ensuring the accuracy of the

consumer report information.").

The 1996 Amendments provide a comprehensive scheme for regulating furnishers of

credit information. They firmly establish a furnisher's obligations in providing credit

information and set forth the mechanisms by which those obligations can be enforced. See, e.g.,

15 U.S.C. §§ 1681s(a), (b) (vesting a number of federal agencies with FCRA enforcement power

over furnishers); 15 U.S.C. § 1681s(c) (allowing states to enforce the provision of the FCRA

against furnishers, and specifically including, "in the case of a violation of section 1681s-2(a) . . .

damages for which the [furnisher] would, but for section 1681s-2(c) . . . be liable . . . ."").

Recognizing that the post-1996 FCRA created a pervasive regulatory scheme for the credit

reporting industry, Congress added several state law preemption provisions to the FCRA,

13

codified under § 1681t. Thus, as the Committee on Banking, Housing and Urban Affairs

explained:

> By preempting state and local provisions relating to the subject mater
> regulated by these provisions of the FCRA, section [1681t] establishes the
> FCRA as the *national uniform standard* in these areas. This section
> recognizes the fact that credit reporting and credit granting are, in many
> aspects, national in scope, and that *a single set of federal rules promotes
> operational efficiency for industry, and competitive prices for consumers.*

S. Rep. No. 185, at 55 (emphasis added).

Given that Congress intended the FCRA to be the "national uniform standard," it would

be nonsensical for Congress to have carefully crafted the types of actions for which a furnisher

would be liable under the FCRA, while leaving the door open to collateral state law actions that

could be based on the very same claims that are preempted under the Act. Thus, the only

reasonable reading of § 1681t(b)(1)(F) is that all state law actions against furnishers are

preempted to the extent that such actions are based on subject matter regulated under FCRA

§ 1681s-2. Complete preemption is the only approach that makes sense when the entire Act, and

especially the 1996 Amendments, are taken as a whole.

All of Plaintiff's state law claims are clearly premised on Navy's actions as a furnisher,

i.e., actions that are governed under FCRA § 1681s-2.[8] Thus, under the complete preemption

---

[8] In support of his defamation claim, Plaintiff alleges that Navy "maliciously defamed
Harrison by *publishing inaccurate derogatory account information regarding the fraud accounts
to consumer reporting agencies.*" Complaint, ¶ 47 (emphasis added). Plaintiff's intentional
infliction of emotional distress claim is based on allegations that Navy "fail[ed] to cooperate with
[Harrison's] efforts to clear the fraud accounts from his credit history and *failure to comply with
the laws regulating creditors' reports to consumer reporting agencies*" and that Navy
"willful[ly] and wanton[ly] . . . *failed to comply with the laws regulating the consumer reporting
industry.*" Complaint, ¶¶ 54, 56 (emphasis added). Finally, Plaintiff's CUTPA claim is premised

14

approach, as explained in <u>Jaramillo,</u> all of Plaintiff's state law claims are preempted under FCRA

§ 1681t(b)(1)(F) and should be dismissed.

    2.    <u>The Temporal Approach</u>

    A second line of cases delineates between § 1681t(b)(1)(F) and § 1681h(e) based on

when the furnisher received notice of a consumer's dispute.  Under the temporal approach,

"§ 1681t(b)(1)(F) preempts any state law claims based on a furnisher's actions after receiving

notice of a dispute, because furnishers then have a duty to investigate under § 1681s-2 . . . .

However, § 1681h(e) governs preemption of state law claims premised on a furnisher's behavior

before receipt of notice, because at that point § 1681s-2 is not implicated . . . ." <u>Malm v.</u>

<u>Household Bank (SB), N.A.,</u> 2004 WL 1559370, at *6 (D. Minn. 2004) (attached hereto as

Exhibit G); <u>see also</u> <u>Bank One v. Colley</u>, 294 F. Supp. 2d 864, 869 (M.D. La. 2003); <u>Vazquez-</u>

<u>Garcia v. Trans Union De Puerto Rico</u>, 222 F. Supp. 2d 150, 161-62 (D.P.R. 2002); <u>Aklagi v.</u>

<u>Nationscredit Financial</u>, 196 F. Supp. 2d 1186, 1194-96 (D. Kan. 2002); <u>Larobina v. First Union</u>

<u>National Bank</u>, Docket No. CV 99 0170845 S, 2004 WL 1664230, at *6 (Conn. Super., June 28,

2004) (D'Andrea, J.T.R.) (attached hereto as Exhibit H).

    Navy disagrees with the temporal approach insofar as it ignores the Legislature's clear

intent to consolidate a furnisher's duties and obligations under the FCRA.  Allowing plaintiffs to

bring state law claims, even those based on a furnisher's behavior before it received notice of a

--------------------

on provisions of the Connecticut Creditors Collection Practices Act and regulations adopted
thereunder, which provisions directly overlap with the duties imposed on furnishers under the
FCRA.  <u>See</u> Complaint, ¶¶ 60-62.

bring state law claims, even those based on a furnisher's behavior before it received notice of a

on provisions of the Connecticut Creditors Collection Practices Act and regulations adopted thereunder, which provisions directly overlap with the duties imposed on furnishers under the FCRA. See Complaint, ¶¶ 60-62.

15

dispute, has the potential to expose furnishers to extra-statutory obligations that were specifically preempted by Congress in adopting the 1996 Amendments to the FCRA.  See Part IV.C.1, supra.

Even assuming, however, that this Court applies the temporal approach, Plaintiff's state law claims must be dismissed.  First, the overwhelming majority of Navy's alleged actions upon which Plaintiff's state law claims are based occurred *after* Navy received notice of the dispute. The Complaint alleges that the imposter applied for credit at Navy using Harrison's stolen identity in September of 2001.  See Complaint, ¶ 8.  It then states that Harrison discovered the fraudulent accounts "on or about November 5, 2001" and on the same date he "contacted [Navy] and disputed the accounts."  Complaint, ¶ ¶ 15 & 16.  Thus, to the extent that Plaintiff bases his state law claims on Navy's actions after November 5, 2001, "the Bank's conduct falls squarely within § 1681s-2 . . . .  As such, § 1681t(b)(1)(F) completely preempts any state [common law] . . . . claims predicated on the Bank furnishing inaccurate information to a consumer reporting agency *after* the Bank received notice of, or had reason to know about the dispute."  Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 787-88 (W.D. Ken. 2003).

Almost all of Plaintiff's state law claims are based on actions that occurred after November 5, 2001.  In fact, the Complaint contains only one allegation regarding Navy's publication of the fraudulent account information prior to November 5, 2001 – an allegations that is pleaded solely "[u]pon information and belief."  Paragraph 13 of the Complaint states that "[u]pon information and belief, in or around October, 2001, [Navy] began reporting at least one of the fraud accounts as a derogatory credit item to Experian, Trans Union and Equifax . . . as being opened by Harrison."  Complaint, ¶ 13.

Under the temporal approach, the allegations in Paragraph 13 of Plaintiff's Complaint, if true, may allow him to escape preemption under § 1681t(b)(1)(F). He cannot, however, escape preemption altogether because his claim remains subject to the qualified preemption in § 1681h(e). Under this section, in order to make out a valid state law claim for defamation, invasion of privacy or negligence, Plaintiff must show that Navy acted "with malice or willful intent to injure."

In Stafford, the court, applying the temporal approach, addressed preemption in the context of "inaccurate information [supplied by the furnisher] to a [CRA] *before* it received notice or had reason to know of the [plaintiff's] dispute." 262 F. Supp. 2d at 788 (emphasis in original). The court held that, because the furnisher provided inaccurate information before it received notice of the dispute, preemption was governed by § 1681h(e). See id. In addressing § 1681h(e) preemption, the court determined that it was immaterial whether the furnisher's acted with malice or willful intent to injure. Id. Specifically, the court held:

> Even if [plaintiffs] met the higher standard to pursue the defamation and slander claims, those claims would, nevertheless, be preempted by § 1681t(b)(1)(F). This is because § 1681s-2 regulates the furnishing of information if done knowingly or if the furnisher "consciously avoids knowing that the information is inaccurate." In other words, the remaining parts of the defamation and slander claims would then involve a subject-matter regulated under § 1681s-2, which § 1681t(b)(1)(F) preempts.

Id.

In sum, Stafford held that it is impossible for a furnisher's action to be both willful and malicious *and* to be outside of the subject-matter regulated under § 1681s-2(b). The court's ruling is eminently sensible considering that no reasonable juror could find that a furnisher who provided information to a CRA without notice of a consumer's dispute somehow acted with

17

malice or a willful intent to injure. See Nelski v. Ameritech, 2004 WL 1460001, at *6 n. 2

(Mich. App., June 29, 2004) (attached hereto as Exhibit I) ("it seems illogical to hold a furnisher

of information liable for furnishing inaccurate information before it had knowledge, or a reason

to know, that the information was inaccurate.").

Applying the reasoning in Stafford to this case, it is clear that the allegations in Paragraph

13 of the Complaint, although purportedly involving pre-notice action by Navy, do not give rise

to a cognizable state law claim.   If Navy in fact reported the fraudulent loans to the CRAs in

October of 2001, it did so, according to the Complaint, without knowledge of Harrison's dispute.

It could not, therefore, have acted with malice or a willful intent to injure Harrison.  Moreover, if

Navy had knowledge of Harrison's dispute prior to October, 2001, then Plaintiff's state law

claims involve activity regulated under § 1681s-2, which is therefore preempted by FCRA

§ 1681t(b)(1)(F).  See Stafford, 262 F. Supp. 2d at 788.  Thus, under the temporal approach, all

of Plaintiff's state law claims are preempted and must be dismissed.


3.    The Common Law/Statutory Approach

A third set of decisions address the preemption issue by distinguishing between state

common law actions versus state statutory causes of action.  These cases essentially read

§ 1681h(e) as applying to state tort actions and § 1681t(b)(1)(F) as applying to state statutory

regulation.  See, e.g., McCloud v. Homeside Lending, 309 F. Supp. 2d 1335, 1341 (N.D. Ala.

2004); Jeffery v. Trans Union, LLC, 273 F. Supp. 2d 725, 727-28 (E.D. Va. 2003);  Nelski v.

Ameritech, 2004 WL 1460001, at *5.

In <u>McCloud</u>, the court discussed the theory behind the statutory/common law approach:

> The courts adopting this approach first look to the language of § 1681h(e), which specifically references "any action or proceeding in the nature of defamation, invasion of privacy, or negligence." 15 U.S.C. 1681h(e). As the specified causes of action comprise a non-exclusive list of torts that might arise from false or inaccurate credit reports, § 1681h(e) is deemed by these courts as applying to any state-law causes of action that may be classified as "torts." Contrastingly, § 1681t(b)(1)(F) appears to deal only with state statutory regulation of credit reporting. This is evidenced by the fact that the two state statutory schemes specifically excluded from the ambit of § 1681t(b)(1)(F) . . . address inaccurate or incomplete information in a credit report. Thus, under the [common law/statutory approach], § 1681h(e) applies only to torts, while § 1681t(b)(1)(F) applies only to state statutory regulations of credit reporting practices and procedures.

<u>McCloud</u>, 309 F. Supp. 2d at 1341.[9]

Navy submits that the statutory/common law approach is flawed for several reasons. First, as with the temporal approach, the statutory/common law approach is contrary to Congress' clear intent to preempt lawsuits against furnishers other than those expressly permitted under FCRA § 1681s-2. Second, there is simply no basis to find that Congress intended § 1681t(b)(1)(F) to preempt only state *statutory* law. See <u>Malm</u>, 2004 WL 1559370, at *6 (the logic behind statutory/common law approach is "somewhat strained . . . because § 1681t(b)(1)(F) does not specify that it relates to statutes only.").

Finally, the plain language of § 1681t(b)(1)(F) clearly contemplates that all state law

---

[9] In <u>Gordon v. Greenpoint Credit</u>, 266 F. Supp. 2d 1007 (S.D. Iowa 2003), the court reached the same conclusion as <u>McCloud</u>, but for a different reason. Citing principles of statutory construction, <u>Gordon</u> held that the general preemption in § 1681t(b)(1)(F) had to yield to the specific preemption in § 1681h(e), which, according to <u>Gordon</u>, allows furnishers to be sued for defamation, invasion of privacy and negligence subject to qualified preemption. See <u>id.</u> at 1012-13; <u>see also</u> <u>Yutesler v. Sears Roebuck & Co.</u>, 263 F. Supp. 2d 1209 (D. Minn. 2003).

actions against furnishers – whether based on statute or common law – are preempted by the

FCRA. Section 1681t(b)(1)(F) states that "[n]o *requirement or prohibition* may be imposed

under the *laws of any state* . . . with respect to any subject matter regulated . . . under § 1681s-2 .

. . ." 15 U.S.C. § 1681t(b)(1)(F). It is untenable to read the phrase "requirement of prohibition"

as pertaining solely to state statutory actions.[10]  It does not strain the imagination to conceive of a

string of tort claims that would undoubtedly affect a creditor's practice of furnishing information

to the CRAs.

In his concurring opinion in <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470 (1996)[11] Justice Breyer

explained why the term "requirement" in federal preemption statutes should include state tort

laws:

> [A] contrary holding would have anomalous consequences. Imagine
> that, in respect to a particular hearing aid component, a federal MDA
> regulation requires a 2-inch wire, but a state agency regulation requires
> a 1-inch wire. If the federal law, embodied in the '2-inch' MDA
> regulation, pre-empts the state '1-inch' agency regulation, why would it

---

[10] Indeed, if Congress intended § 1681t(b)(1)(F) to apply solely to state statutes, it would
have drafted that section much differently. For example, had Congress intended to preempt state
statutory law alone, it could have said: "No requirement or prohibition shall be *enacted* under any
*state statute or regulation* with respect to any subject matter regulated under § 1681s-2."

[11] In <u>Medtronic</u>, four Members of the five Justice plurality held that the term
"requirement" in the preemption provision of the Medical Device Amendments ("MDA"), 21
U.S.C. § 360k(a), did not apply to state common law actions. 518 U.S. at 488-91. Justice Breyer
joined in the judgment issued by the plurality, but did not join in the plurality's holding. In fact,
Justice Breyer found that there are circumstances in which both common law and statutory
claims could be preempted by federal law, although he happened to find that such circumstances
did not exist under the facts in <u>Medtronic</u>. <u>See</u> <u>id.</u> at 504-05; <u>see also</u> <u>Marks v. United States</u>,
430 U.S. 188, 193 (1977) (when "no single rationale . . . enjoys the assent of five Justices, the
holding of the Court may be viewed as that position taken by those Members who concurred in
the judgment on the narrowest grounds . . . .").

20

not similarly pre-empt a state-law tort action that premises liability
upon the defendant manufacturer's failure to use a 1-inch wire (say, an
award by a jury persuaded by expert testimony that use of a more than
1-inch wire is negligent)? The effects of the state agency regulation and
the state tort suit are identical. To distinguish between them for pre-
emption purposes would grant greater power (to set state standards
'different from, or in addition to,' federal standards) to a single state
jury than to state officials acting through state administrative or
legislative lawmaking processes.

Id. at 504 (Breyer, J., concurring).

Thus, Justice Breyer found that "[o]ne can reasonably read the word 'requirement' as

including the legal requirements that grow out of the application, in particular circumstances, of a

State's tort law." Id.

It is easy to imagine a similar example in the FCRA context. Suppose, for example, that

Connecticut adopted a law that required furnishers to report errors or inaccuracies regarding

consumer accounts to CRAs within 30 days of discovering such errors. Because FCRA § 1681s-

2 does not impose such a 30 day time limitation on a furnisher's reporting of inaccurate

information to the CRAs; see 15 U.S.C. § 1681s-2(a)(2); this law would clearly be preempted by

FCRA § 1681t(b)(1)(F). Why, then, should FCRA § 1681t(b)(1)(F) not preempt a common law

tort claim based on a furisher's failure to notify the CRAs within 30 days? To be sure, a jury

award against a furnisher based on this claim would lead all furnishers in a given district to

change their reporting policies. Thus, as Justice Breyer stated, "[t]he effects of the state agency

regulation and the state tort suit are identical." Medtronic, 518 U.S. at 504 (Breyer, J.,

concurring).

In Vanderzanden Farms, LLC v. Dow Agrosciences, LLC, 2004 WL 1465689 (D. Or.

2004) (attached hereto as Exhibit J), plaintiff sued the defendant, a fertilizer manufacturer, in

21

connection with damage to plaintiff's commercial crop.  Defendant moved for summary

judgment, alleging that the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")

preempted plaintiff's state law claims.  The preemption provision in FIFRA expressly prohibited

states from imposing "any requirements for labeling or packaging in addition to or different from

those required" under FIFRA.  Id. at *2 (quoting 7 U.S.C. § 136v(b)).

The Vanderzanden court held that FIFRA preempted common law as well as statutory

claims.  Id.  It reasoned that "[s]tate law tort claims based on inadequate or defective labeling of

pesticides are preempted because otherwise success on such claims would necessarily induce the

manufacturer to alter its product label to comply with state law."  Id. (citing Taylor AG Indus. v.

Pure-Gro, 54 F.3d 555, 559-61 (9th Cir. 1995)).

As Justice Breyer's opinion in Medtronic and the Vanderzanden opinion demonstrate, it

is exceedingly myopic to ignore the effect that tort claim verdicts can have on furnishers and to

consider state tort claims as any less of a "requirement or prohibition" on furnishers than state

statutory law.  Accordingly, Navy urges this Court to reject the statutory/common law approach

in its entirety.


### D.    Plaintiff's CUTPA Claim Is Preempted Under All Three Approaches Outlined Above

No matter which preemption approach this Court chooses to adopt, Plaintiff's CUTPA

claim is clearly preempted by the FCRA.  First, under the complete preemption approach,

§ 1681t(b)(1)(F) preempts Plaintiff's CUTPA claim because it is based on subject matter

regulated under § 1681s-2(b).  See Complaint, ¶¶ 60-62 (CUPTA claim based on provisions of

22

the Connecticut Creditors Collection Practices Act and corresponding regulations, which

provisions directly overlap with the duties imposed on furnishers under the FCRA).

Under the temporal approach, Plaintiff's CUPTA claim is preempted because it is based

entirely on Navy's alleged actions *after* it received notice of Harrison's dispute. See id. Thus,

the preemption in FCRA § 1681t(b)(1)(F) applies, which, as stated above, precludes Plaintiff's

CUTPA claim.

Lastly, Plaintiff's CUTPA claim is preempted under the statutory/common law approach.

Under this approach, FCRA § 1681t(b)(1)(F) preempts all state statutory actions, such as

CUTPA, that impose requirements or prohibitions on furnishers. See McCloud, 309 F. Supp. 2d

at 1341; Jeffery, 273 F. Supp. 2d at 728.

Because there is no conceivable theory under which Plaintiff's CUTPA claim can avoid

preemption, it must be dismissed. See Riley v. General Motors Acceptance Corp., 226 F. Supp.

2d 1316, 1322 (S.D. Ala. 2002) (claims under Alabama consumer protection laws preempted

under FCRA § 1681t(b)(1)(F)); Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496,

502-03 (W.D. Tenn. 1999) (FCRA § 1681t(b)(1)(F) preempted action under the Tennessee

Consumer Protection Act).


**E.    Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress**

In order to support a claim for intentional infliction of emotional distress under

Connecticut law, plaintiff must show: (1) that the defendant intended to inflict emotional distress

or that he knew or should have known that emotional distress was likely; (2) that defendant's

conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. See Carrol v. Allstate Ins. Co., 262 Conn. 433, 443 (2002) (citations omitted); Gregory v. Southern New England Telephone Co., 896 F. Supp. 78, 84-85 (D. Conn. 1994).  A defendant's conduct is "extreme and outrageous" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Carrol, 262 Conn. at 443.  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Id.

Even in a light most favorable to the Plaintiff, his cause of action for intentional infliction of emotional distress must fail.  His Complaint contains not a scintilla of facts to establish that Navy engaged in the type of "extreme and outrageous" conduct necessary to support his emotional distress claim.   Accordingly, Plaintiff's third cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**V.     CONCLUSION**

Based on the foregoing reasons, Navy respectfully requests that this Court grant its Motion to Dismiss.

THE DEFENDANT,
NAVY FEDERAL CREDIT UNION

By: _____

Robert W. Allen (ct04188)
Matthew A. Sokol (ct21268)
Tyler Cooper & Alcorn, LLP
205 Church Street
P.O. Box 1936
New Haven, CT 06510-1910
(203) 784-8200
(203) 789-8069 - fax
sokol@tylercooper.com

-Its attorneys-

25

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via first class mail, postage prepaid to the following counsel and pro se parties of record in this action, on this 18th day of August, 2004:

Daniel S. Blinn, Esq.
Consumer Law Group, LLC
2138 Silas Deane Highway
P.O. Box 1039
Rocky Hill, CT 06067-9997
*(Counsel for Plaintiff)*

Donald E. Frechette, Esq.
William E. Murray, Esq.
Edwards & Angell
90 State House Sq., 9th Floor
Hartford, CT 06103
*(Counsel for Verizon Wireless Svc., LLC)*

Christopher E. Kittell, Esq.
Webster, Gresham & Kittell
144 Sunflower Avenue
P.O. Drawer 760
Clarksdale, MS 38614-0760q
*(Counsel for Plaintiff)*

David M. Bizar, Esq.
Mark M. Porto, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499
*(Counsel for Ford Motor Credit Co.)*

_____
Matthew A. Sokol (ct21268)

26