UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN HARRISON, | : | CASE NO. 3:03cv0873 (RNC) |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| VERIZON WIRELESS SERVICES, LLC | : | |
| | : | |
| Defendant | : | AUGUST 18, 2004 |

**FORD MOTOR CREDIT COMPANY'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

**I.      Harrison's Historical Analysis of the FCRA is Deficient.**

To reinforce his arguments, Harrison's brief contains a historical analysis of the Fair Credit Reporting Act ("FCRA"). The analysis, however, is significantly undermined by its absence of any recognition that the 1996 amendments enacted the second preemption provision, 15 U.S.C. § 1681t(b), at the same time that it imposed new duties on furnishers under 15 U.S.C. § 1681s-2. Rather than simply repeat the argument set forth by Verizon Wireless Services, LLC on this issue in its Reply dated July 8, 2004 ("Verizon's Reply") [Docket Entry No. 59], FMCC joins and adopts it in full as if fully set forth herein. (See id. at 5-7.)[1]

**II.     The FCRA Does Not Provide Harrison With a Private Cause of Action.**

Plaintiff John Harrison ("Harrison"), acknowledges that there is no private cause of action under the FCRA for a violation of the duties imposed on furnishers of information to credit reporting agencies ("furnishers") pursuant to § 1681s-2(a). He claims, however, that the Complaint states a private cause of action for a violation of the duties imposed by § 1681s-2(b)(1) because it contains an averment that Ford Motor Credit Company ("FMCC") allegedly

---

[1] FMCC joins in and adopts the arguments and authorities set forth by Verizon and Navy Federal Credit Union in each of their respective motions to dismiss and reply briefs, to the extent they are consistent with FMCC's position.

failed to perform a reasonable investigation of his dispute. (Memorandum of Law in Opposition to Ford Motor Credit Company's Motion to Dismiss ("Opp.") at 3-4.)

The FCRA Count indeed makes this conclusory allegation, unsupported by any facts, among its 30 other paragraphs. (Compl. at ¶¶ 27-28.) It is of no import, because the FCRA Count avers that Harrison informed FMCC of the fraud, and that FMCC knew of the fraud, but failed to remove the accounts from Harrison's credit reports and continued to publish them to credit reporting agencies. (Id. at ¶¶ 15, 18, 23.) Moreover, the FCRA Count seeks damages not related to FMCC's investigation, but for FMCC's alleged breach of its duties to report information and to correct inaccurate information. (Compl. at ¶ 28 ("FMCC's failure to correct the disputed information and its continued reports to third parties attributing the fraud accounts constitute willful or negligent violations of FCRA § 1681s-2(b); Id. at ¶ 29 ("As a result of FMCC's failure to correct the disputed information, Harrison was denied credit").[2]

As the district court in nearly identical circumstances recognized in Fino v. Key Bank, 2001 U.S. Dist. LEXIS 24358 (W.D. Pa. July 27, 2001), adopted at 2001 U.S. Dist. LEXIS 24357 (W.D. Pa. October 30, 2001), the "duties to correct information [a furnisher] determined to be inaccurate, and to refrain from continuing to report such known, inaccurate information, are expressly addressed by [§ 1681s-2(a)] . . . the enforcement of [which] is exclusively reserved to the FTC; there is no private right of action." Accord Aklagi v. NationsCredit Fin. Serv. Corp., 196 F. Supp. 2d 1186, 1194-95 (D. Kan. 2002). The court in Fino thus rejected the plaintiff's similar attempt to "shoehorn" a § 1681s-2(a) claim under § 1681s-2(b). 174 F. Supp. 2d at 18-

---

[2] See also Opp. at 4-5. To the extent Harrison seeks to incorporate ¶ 14 of the Factual Allegations of the Complaint into the FCRA account, which avers that FMCC caused Harrison damages by allegedly negligently enabling the imposter to open the fraud accounts, the FCRA is a reporting statute and imposes absolutely no duties on furnishers with respect to extending credit or accepting assignments of credit agreements. See 15 U.S.C. § 1681s-2.

20. It reached this holding on a motion to dismiss. Thus, Harrison's unsupported argument that the Court cannot examine the issue now is without merit. (See Opp. at 5.)

The district court in <u>Danielson v. Experian Info. Solutions, Inc.</u>, 2004 U.S. Dist. LEXIS 14975, at *13-*14 (D. Minn. July 30, 2004), very recently came to the same conclusion. There, as here, the plaintiff asserted that the furnisher failed to comply with § 1681s-2(b) because it allegedly did not perform a reasonable investigation. (*Compare* 2004 U.S. Dist. LEXIS 14975, at *13 *with* Compl. at ¶¶ 26, 27.) The <u>Danielson</u> court "dismissed" the plaintiff's FCRA claim on summary judgment, because it found: (1) the FCRA claim "challenge[d] the accuracy and completeness of the information provided by [the furnisher] to the CRAs"; (2) the duty of "those who furnish information to a consumer reporting agency to provide complete and accurate information [is found in] 15 U.S.C. § 1681s-2(a)"; and because (3) "the FCRA provides that section 1681-s2(a) 'shall be enforced exclusively' by federal and state authorities", there is no private cause of action. <u>Id</u> at *13-*14 (quoting 15 U.S.C. § 1681s-2(d)). Under the rationale of these authorities, Harrison's FCRA claim, which actually seeks to hold FMCC liable for conduct which is the subject matter of § 1681s-2(a), must be dismissed.

### III. The FCRA Preempts Harrison's State Law Claims.

#### A. The Complete Preemption Approach of § 1681t is Good Law.

Harrison claims that the complete preemption line of cases "was reversed almost as soon as it began." (Opp. at 16.)[3] He is correct that <u>Jaramillo v. Experian Info. Solutions, Inc.</u>, 155 F. Supp. 2d 356 (E.D. Pa. 2001), the decision that began this line of authority, did subsequently reinstate the defamation claim it had dismissed in a one sentence order. (Opp. at 17 (<u>citing</u>

---

[3] The complete preemption line construes § 1681t to completely preempt all state law claims that are based on any subject matter relating to the responsibilities of furnishers is regulated in § 1681s-2 without regard to when the furnisher receives notice.

Jaramillo II, 2001 U.S. Dist. LEXIS 10221 (E.D. Pa. June 20, 2001)). He is wrong, however, that this line of authority was thereby reversed.

Subsequent decisions have found the court's original decision remains persuasive. The district courts, including the Eastern District of Pennsylvania wherein Jaramillo was penned, still adhere to the court's original holding, and still cite to it to support the proposition that state law claims predicated on any subject matter regulated by § 1681s-2 are absolutely preempted. See, e.g., Purcell v. Univ. Bank, N.A., 2003 U.S. Dist. LEXIS 7061, at *16-*17 (E.D. Pa. Apr. 28, 2003) (finding that "although in Jaramillo, the court reinstated a defamation claim with a one sentence order an no other explanation, other courts have found the original opinion persuasive and have held that similar state law claims are in fact preempted. We likewise find that any state law claims based upon reports to credit agencies are preempted in light of precedent as well as the plain language of § 1681(b)(1)(F)."); Riley v. Gen. Motors Acceptance Corp., 226 F. Supp. 2d 1316, 1323 (S.D. Ala. 2002) (adopting the temporal approach, but remarking that the Jaramillo court's second decision, made without legal analysis or justification, "does not render the logic of the original opinion any less persuasive."). Under the complete preemption approach, all of Harrison's state law claims are preempted because they concern FMCC's reporting conduct; i.e., the same subject matter of furnisher responsibilities under § 1681s-2.

**B. Harrison's State Law Claims Are Preempted Under the Temporal Approach.**

FMCC and Harrison agree that the temporal approach provides § 1681h(e) qualified immunity to furnishers against state law claims concerning their credit reporting activities, from the moment of the identity theft to when the furnisher receives notice of the dispute. (See Opp. at 12.) FMCC and Harrison also agree that the temporal approach provides § 1681t(b)(1)(F)

-4-

absolute immunity to furnishers against state law claims concerning their credit reporting activities, after the receipt of such notice. (Id.)

FMCC and Harrison disagree, however, on what event constitutes notice of the dispute for purposes of transitioning from § 1681h(e) to § 1681(b)(1)(F) preemption. Harrison argues that the triggering event under the temporal view for the start of § 1681t(b)(1)(F) preemption is when "a § 1681i dispute from a consumer to a consumer reporting agency is made and *relayed by the consumer reporting agency* to the furnisher of the disputed information." (Opp. at 15.) (emphasis added). Harrison reasons that, under the temporal approach, the furnisher's receipt of notice from a credit reporting agency must constitute the triggering event because "a claim under § 1681s-2 does not exist until" such notice is received. (Id.)

FMCC agrees with the latter proposition. See Young v. Equifax Credit Info. Svcs., Inc., 294 F.3d 631, 640 (5th Cir. 2002) (holding receipt of notice from a consumer reporting agency triggers the duties under § 1681s-2(b)). But the § 1681h(e)/1681t(b)(1)(F) transition does not depend, as Harrison contends, on when a *consumer* obtains the right to assert a private cause of action under § 1681s-2(b) through receipt of notice from a credit reporting agency. Rather, the transition is, as it must be, governed by the express language of § 1681t(b)(1)(F), which preempts "*any subject matter regulated under . . . [§ 1681s-2]*, relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . ." 15 U.S.C. § 1681t(b)(1)(F) (emphasis added; brackets in the original). Thus, the § 1681h(e)/1681t(b)(1)(F) transition is governed by the subject matter at issue, not when a private cause of action accrues, and the distinction Harrison seeks to draw is irrelevant.

Section 1681s-2 is in two subparts. Subsection (a), whose enforcement is reserved exclusively to certain federal and state authorities, and subsection (b) which affords a private

cause of action to a consumer for the violation of its provisions. As noted above, subsection (b) responsibilities begin only after notice from a consumer reporting agency. But the section 1681s-2(a) duties are not so limited. The responsibility in § 1681s-2(a)(1)(A) not to "furnish any information relating to a consumer to a consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate" exists from the time the furnisher has actual knowledge or willfully turns a blind eye. The duty in § 1681s-2(a)(1)(B) not to "furnish information relating to a consumer to any consumer reporting agency if (i) the person has been notified by the consumer . . . that specific information is inaccurate; and (ii) the information is in fact inaccurate" exists from the time the furnisher is "notified *by the consumer.*" (emphasis added.) And, the duty of § 1681s-2(a)(2) of a furnisher to "correct and update information" that it "determines is not complete or accurate" exists from the time that determination is made by the furnisher.

Thus, in Aklagi v. NationsCredit Fin. Serv. Corp., 196 F. Supp. 2d 1186 (D. Kan. 2002), the district court held that § 1681t(b)(1)(F) acted to completely preempt any state law claim predicated on furnishing inaccurate information to a consumer reporting agency, after the furnisher received notice of the dispute from the consumer and thereby knew the information was inaccurate.[4] Furnishing inaccurate information after such notice implicates the above subject matter regulated under § 1681s-2(a). See id. at 1194-95. Accord Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 787-88 (W.D. Ky. 2003); see also Malm v. Household Bank (SB), N.A., 2004 U.S. Dist. LEXIS 12981, at *21 (D. Minn. 2004) ("find[ing] the temporal approach the most convincing of these three options because it follows the 'whole statute' analysis and does not render either section [1681h(e) or 1681t(b)(1)(F)] superfluous.")

Since all of Harrison's claims against FMCC fall within the penumbra of the subject matter of the above § 1681s-2(a) duties, and post-date his averment that he notified FMCC of the information he alleges is inaccurate, they are preempted under the temporal approach.

### C. Harrison Asks the Court to Adopt the Least Persuasive Line of Authority.

Proclaiming without foundation that six district court decisions represent "the most widely adopted interpretation of 15 U.S.C. § 1681t", Harrison asks the Court to follow the line of authority which has read § 1681h(e) to preempt common law claims, and § 1681t(b)(1)(F) to preempt statutory claims. (See Opp. at 6.) The temporal approach, however, is the majority view. See Carriere v. Proponent Federal Credit Union, 2004 U.S. Dist. LEXIS 14095, at *13 (W.D. Lou. July 12, 2004) ("the temporal approach, has been applied by the majority of courts").

This line, which is actually the minority view,[5] is not persuasive. The courts which have adopted it have had to construe the "[n]o requirement or prohibition" language of § 1681t(b) to mean that Congress intended § 1681t(b)(1)(F) to apply only to statutory causes of action which concern subject matter regulated under § 1681s-2. See, e.g., Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000).

Harrison cites generally to Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996) and Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992), as compelling the conclusion reached by these courts. (See Opp. at 9, 20-21.) The Supreme Court's decisions in Medtronic and Cipollone, however, actually support the opposite conclusion, that "requirement or prohibition" language should be

---

[4] Indeed, in the Aklagi case, the court determined that the furnisher never received notice of the dispute from a consumer reporting agency. Id. at 1193.

[5] The clear majority view is the combined views of the complete and temporal preemption rationales, which both hold that, when it applies, § 1681t completely preempts both common law and statutory claims. Indeed, this view is the only one that draws any distinction between statutory and common law claims.

read to encompass both statutory and common law claims. Rather than repeat the arguments of Verizon's Reply [Docket Entry No. 59], FMCC adopts them in full and incorporates them as if fully set forth herein. See also Malm, 2004 U.S. Dist. LEXIS 12981, at *19-*20 (statutory/common law approach is "somewhat strained . . . because § 1681t(b)(1)(F) does not specify that it relates to statutes only" and it "greatly minimize[s] § 1681t(b)(1)(F)'s applicability, . . . running afoul of the 'whole statute' approach [to statutory interpretation].").

Harrison also asserts a novel theory under this section of his Brief that § 1681h(e) does not apply to his common law claims, because, he argues, "FMCC's disclosures . . . were not required pursuant to § 1681g, 1681h, or 1681m, and therefore, just as in [McAnly v. Middleton Reutlinger, 77 F. Supp. 2d 810 (W.D. Ky. 1999)], do not qualify for the *quid pro quo* grant of immunity." (Opp. at 11 (emphasis in the original).) McAnly is distinguishable in that it did not concern the actions of a furnisher. Rather, in that case, the plaintiff claimed that the party who improperly obtained a copy of the plaintiff's credit report violated the FCRA by obtaining the report under false pretenses. The district court held that § 1681h(e) does not shield a person from liability for obtaining someone's credit report under false pretenses, because "section 1681h(e) is in no way implicated" by such conduct. Id. at 815. Conversely, even the line of authority favored by Harrison would find that the type of common law claims he raises are preempted by § 1681h(e), unless they properly allege malice. See Carlson, 259 F. Supp. 2d at 522; Jeffrey v. Trans Union, LLC, 2003 U.S. Dist. LEXIS 12904, at *10 (July 24, 2003); Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007, 1013 (S.D. Iowa 2003); Dornhecker, 99 F. Supp. 2d at 931; Yutesler v. Sears Roebuck & Co., 263 F. Supp. 2d 1209, 1212 (D. Minn. 2003).[6]

---

[6] This argument also pertains to the language § 1681h(e) and has no relation to § 1681t(b)(1)(F) preemption.

### D. Whether Harrison's State Law Claims are Inconsistent with or Provide Greater Protection Than the FCRA is Irrelevant.

Harrison argues that "[t]he FCRA does not preempt state laws as long as the state law is not inconsistent with the FCRA," citing Credit Data of Az., Inc. v. State of Az., 602 F.2d 195, 197 (9th Cir. 1979), Hughes v. Fidelity Bank, 709 F. Supp. 639, 640-41 (E.D. Pa. 1989), and FTC Commentary. (Opp. at 18-19.) These cases and the FTC Commentary, however, predate the 1996 amendments and concern the general inconsistency preemption provision of § 1681t(a).

FMCC has not asserted that Harrison's state law claims are preempted by § 1681t(a). Rather, Harrison's state law claims are preempted by § 1681t(b), which sets forth an exception to the subsection (a) preemption standard and provides explicitly for complete preemption:

> (a) In general. Except as provided in subsections (b) and (c), this title does not annul, alter, affect, or exempt any person . . . from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent those laws are inconsistent with any provision of this title, *and then only to the extent of the inconsistency.*
> (b) General exceptions. *No requirement or prohibition may be imposed* under the laws of any State –
>    (1) with respect to *any subject matter regulated under*—
> \*\*\*\*
>    (F) section 623 [15 U.S.C. § 1681s-2], relating to the responsibilities of person who furnish information to consumer reporting agencies. . . .

14 U.S.C. § 1681t(a) and (b) (emphasis added). As quoted above, subsection (a) excepts (b) from its inconsistency requirement. Plaintiff's entire argument, therefore, is meaningless.

Next, selectively quoting from § 1681t(d)(2)(C), Harrison similarly asserts that "Section 1681t limitations do not apply to 'any provisions of State law . . . that . . . gives greater protection to consumers than is provided under' the FCRA." (Opp. at 21, quoting 15 U.S.C. § 1681t(d)(2)(C), in part). Section 1681t(d)(2)(C) actually reads in full:

> (d) Limitations. Subsections (b) and (c)—
>    (1) do not affect any settlement, agreement, or consent judgment between any State Attorney General and any consumer reporting agency in effect on the date

of enactment of the Consumer Credit Reporting Reform Act of 1996 [enacted Sept. 30, 1996]; and

(2) do not apply to any provision of State law (including any provision of a State Constitution) that—

(A) is enacted after January 1, 2004;

(B) states explicitly that the provision is intended to supplement this title; *and*

(C) gives greater protection to consumers than is provided under this title.

15 U.S.C. § 1681t(d) (emphasis added).

The word "and" clearly denotes that § 1681t(b) complete preemption applies unless the law was enacted after January 1, 2004, states explicitly that it is intended to supplement the FCRA, and gives greater protection to consumers. *A fortiori*, CUTPA was not enacted after January 1, 2004, a date well after the Complaint was brought, nor did (or does) it explicitly state that it is intended to supplement the FCRA. Consequently, this argument likewise is inapposite.

### E.   Plaintiff's CUTPA Claim is Preempted.

Harrison argues his CUTPA claim is not preempted because, he alleges, FMCC's "failure to remove the fraudulently opened accounts from his credit history was an unfair and deceptive attempt to collect on the accounts. . . ." (Opp. at 22.) The CUTPA Count, however, incorporates all of the conduct that Harrison claims violated the FCRA. (See Compl., Fourth Cause of Action.) Harrison's stretch to contort FMCC's reporting activity into debt collection activity to save his CUTPA Count from preemption fails even the common law/statutory line of decisions on which he relies because it is a statutory cause of action which concerns conduct that is the subject matter of § 1681s-2. See Carlson v. Trans Union, LLC, 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003). Indeed, no amount of creative pleading can alter the fact that Harrison brings suit against FMCC for its activities as a furnisher of information to credit reporting agencies.

WHEREFORE and for the reasons set forth in FMCC's moving papers, FMCC respectfully requests that the Court dismiss the Complaint without leave to replead.

DEFENDANT, FORD MOTOR CREDIT COMPANY

By: _____
David M. Bizar (ct20444)
Mark M. Porto (ct24271)
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)
dmbizar@dbh.com
mmporto@dbh.com
Its Attorney

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was mailed on this 18th day of August, 2004, by first-class mail to all counsel and pro se parties as follows:

| | |
|---|---|
| Daniel S. Blinn, Esq.<br>Matthew T. Theriault, Esq.<br>Sarah Poriss, Esq.<br>Consumer Law Group, LLC<br>2138 Silas Deane Highway  P.O. Box 1039<br>Rocky Hill, CT  06067-9997 | Donald E. Frechette, Esq.<br>William E. Murray<br>Edwards & Angell, LLP<br>90 State House Square<br>Hartford, CT  06103 |
| Christopher E. Kittell, Esq.<br>Twiford Webster & Gresham<br>144 Sunflower Avenue<br>P.O. Drawer 760<br>Clarksdale, MS  38614 | Robert W. Allen, Esq.<br>Matthew A. Sokol, Esq.<br>Tyler, Cooper & Alcorn<br>205 Church Street, P.O. Box 1936<br>New Haven, CT  06509-1910 |

_____
David M. Bizar